| | |
|---|---|
| **HAYDEN SCOTT ROSE,** <br><br> **Plaintiff** <br><br> **v.** <br><br> **PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., BOARD OF DIRECTORS, COMMUNITY ASSOCIATION MANAGEMENT, Ltd., and BAGWELL HOLT SMITH, P. A.,** <br><br> **Defendants** | **AMENDED COMPLAINT** <br><br> **WITH DEMAND FOR TRIAL BY JURY** |

**COMES NOW** the Plaintiff, Hayden Scott Rose, by and through counsel, and brings this complaint, in support of which he respectfully shows this Court the following:

## I. PRELIMINARY STATEMENT

1. This is an action for damages pursuant to 15 U.S.C. §1692 *et seq.*, N.C. Gen. Stat. § 58-70-90, *et seq.*, N.C. Gen. Stat. 75-50, *et. seq.*, breach of fiduciary duty, constructive fraud, and equitable accounting.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§1331 and 1367, and 15 U.S.C. § 1692k(d).

3. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b)(2).

## III. PARTIES

4. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

5. At all times relevant to this action, the Plaintiff, Hayden Rose:

   a. was a "consumer" as that term is defined by 15 U.S.C. § 1692a(3);

   b. was a "consumer" as that term is defined by N.C. Gen. Stat. § 75-50(1);

   c. was a "consumer" as that term is defined by N.C. Gen. Stat. § 58-70-90(2);

   d. was the object of collection activity arising from consumer debt; and,

   e. was a resident of Chapel Hill, North Carolina.

6. At all times relevant to this action, the Defendant Presque Isle Villas Condominium Homeowners Association, Inc. (Presque):

   a. was and is a company doing business in North Carolina;

   b. was and is a "debt collector" pursuant to N.C. Gen. Stat. § 75-50(3);

   c. is subject to and governed by N.C. Gen. Stat. § 47C; and,

   d. is subject to and governed by the covenants, conditions, restrictions, and requirements of the Declaration of Condominium filed with the Orange County Register of Deeds on April 9, 2001, Book 2233, Page 287;

7. Presque can be served through its registered agent, Community Association Management, Limited, and its president Derek Greene, at PO Box 79032, Charlotte, NC 28271-0030.

8. At all times relevant to this action, the Defendant Presque Isle Villas Condominium Homeowners Association, Inc., Board of Directors (the Board):

   a. was comprised of the following members at various times during the relevant facts of this complaint: Carl Foster, Tom Zola, Jan Jesse, David Cook, Sylvia Gazdzinska, Caroline Klompmaker, Jennifer Bean, and April Kensington;

b. was and is a "debt collector" pursuant to N.C. Gen. Stat. § 75-50(3);

c. is subject to and governed by N.C. Gen. Stat. § 47C; and,

d. is subject to and governed by the covenants, conditions, restrictions, and requirements of the Declaration of Condominium filed with the Orange County Register of Deeds on April 9, 2001, Book 2233, Page 287;

9. The Board can be served through Presque's registered agent, Community Association Management, Limited, and its president Derek Greene, at PO Box 79032, Charlotte, NC 28271-0030.

10. At all times relevant to this action, the Defendant Community Association Management, Limited, (CAM):

a. was and is a company doing business in North Carolina;

b. was a "collection agency" pursuant to N.C. Gen. Stat. § 58-70-90;

c. was and is, in the alternative, a "debt collector" pursuant to N.C. Gen. Stat. § 75-50(3);

d. regularly attempts to collect debts that are owed to another; and,

e. has not secured a permit pursuant to N.C. Gen. Stat. § 58-70-1.

11. CAM can be served through its registered agent and president, Derek Greene, at PO Box 79032, Charlotte, NC 28271-0030.

12. At all times relevant to this action, the Defendant Bagwell Holt Smith, P.A. (BHS):

a. was and is a company doing business in North Carolina;

b. was a "debt collector" pursuant to 15 U.S.C. § 1692a(6); and,

c. regularly attempts to collect debts that are owed to another.

13. BHS can be served through its registered agent, Thomas R. Holt, at 111 Cloister Court, Suite 200, Chapel Hill, NC, 27514.

14. At all times relevant to this complaint, the debt alleged by the Defendants to be due and owing by the Plaintiff was a "debt" pursuant to:

   a. N.C. Gen. Stat. § 58-70-90(3);

   b. N.C. Gen. Stat. § 75-50(2); and,

   c. 15 U.S. Code § 1692a(5).

## IV. <u>FACTUAL ALLEGATIONS</u>

15. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

16. Presque is the condominium homeowner's association for Mr. Rose's condominium in Chapel Hill, North Carolina.

17. In late 2020 Presque undertook a renovation project which would affect the deck which was attached to Mr. Rose's condominium, the condominium building's gutter system, and portions of the building's exterior wall.

18. In a letter dated October 20, 2020, CAM, on behalf of Presque, instructed Mr. Rose to hire a contractor to perform the renovations (the Work), suggested a company called The Pro Fixer (TPF), and explained the work that needed to be done.

19. The letter stated: "We recommend that owners use the contractor below who knows the issue very well, but the board is open to owners hiring their own licensed and insured contactor via the ARC request approval process."

20. The "contractor below" was TPF.

21. Upon information and belief, TPF is not licensed as a North Carolina General Contractor.

22. The letter made it clear that the Defendants were instructing Mr. Rose to contract with TPF, who would perform the Work.

23. Such a contract would not include CAM or Presque as parties to the contract.

24. On November 30, 2020, CAM, on behalf of Presque, emailed Mr. Rose explaining that that day was the deadline for Mr. Rose to either accept the estimate from TPF (dated November 19, 2020) or "or submit an ARC request based on your own estimate you received from a licensed, insured vendor"

25. The email stated: "The association has the authority to have the work done and bill the owner. $4900 estimate provided."

26. Neither CAM nor Presque had such authority in contract or law.

27. On November 30, 2020, Mr. Rose notified Presque by email that he would not accept Presque's proposal for the Work because he was contacting his attorney to learn whether he was responsible for the Work.

28. It was not and is not the Plaintiff's contractual or legal responsibility to pay for the Work.

29. The cost of the renovation was not included in Presque's 2020 or 2021 budgets or ratified by the condominium owners.

30. On March 7, 2019, BHS informed the other Defendants by letter that Presque was responsible for paying for any work on the building's gutter and exterior walls.

31. N.C. Gen Stat. § 47C-3-115(c) states that Mr. Rose would only be responsible for the deck if "required by the Declaration".

32. Presque's Declaration does not require Mr. Rose to pay for renovations on the deck attached to his unit.

33. Presque's Declaration explicitly states that "responsibility for maintenance, painting, repair and replacement" of the decks "shall be and remain with the Association."

34. Despite the fact that Mr. Rose was not required under contract or law to pay for the Work, on December 15, 2020, Presque notified Mr. Rose by email that its attorney had verified that Mr. Rose was responsible for paying for the Work and that Presque could assess Mr. Rose for the Work.

35. This was incorrect.

36. The email also requested that Mr. Rose "confirm the work."

37. By letter dated December 17, 2020, Mr. Rose's attorney, Gregory Tomchin, advised Presque that Mr. Rose was neither legally nor contractually obligated to pay for the Work.

38. In this way, Presque knew that Mr. Rose was represented by a lawyer regarding this debt.

39. By letter dated December 28, 2020, BHS attorney Michael Ganley notified Mr. Tomchin that BHS and Presque interpreted the law and Presque's Declaration to hold that Presque could assess Mr. Rose for the Work.

40. This was inaccurate.

41. After this interaction, Presque authorized TPF to perform the Work, and then Presque, CAM and, eventually, BHS began a collections campaign which violated various collection laws, as demonstrated *infra*.

42. On April 21, 2021, the Presque Board of Directors held a meeting which discussed Mr. Rose.

43. The notes of the meeting state that if Mr. Rose did not promptly pay for the Work, his non-payment would trigger late fees and, if late fees were not paid, the account being "put out for collections."

44. These notes were displayed in the Presque clubhouse.

45. The notes verify that a person who was not a member of the Board of Directors was present at the meeting.

46. This demonstrates that Presque made a third party aware of the debt collection against Mr. Rose and divulged collection information to a third party.

47. This notebook was left for public viewing.

48. The meeting notes described the collection process against the owner of "Unit 308" who was and is Mr. Rose.

49. The collection process was to be initiated for the Work as described herein.

50. Mr. Rose discovered these notes on December 21, 2021.

51. On May 17, 2021, CAM, on behalf of Presque, noticed Mr. Rose by letter than it would be "dispatching The Pro Fixer to perform deck repairs in the amount of $5200.00."

52. The letter further stated that "An estimate and other requested information was already shared with your attorney. The cost will be added to your account."

53. This letter confirmed that CAM and Presque were aware that Mr. Rose was represented by an attorney on the alleged debt.

54. This letter did not disclose that it was an attempt to collect a debt.

55. Throughout May and into June Mr. Rose communicated with Presque by email and explained that he would pay his normal association fees, but that he would not pay for the Work.

56. In an email dated June 17, 2021, Mr. Rose explained in great detail why he was not liable for the cost of the Work that Presque was attempting to collect from him.

57. In this email he asked to be billed his normal COA dues separately from the special assessment for the Work.

58. In a letter dated June 22, 2021, BHS contacted Mr. Rose directly about the Work.

59. The letter restated Presque's and CAM's position concerning the Debt.

60. The letter explained that Presque could place a lien and foreclose on Mr. Rose's property.

61. This threat was unfounded because Presque did not have the right under law or contract to place a lien or foreclose on Mr. Rose's property.

62. In a statement dated July 1, 2021, CAM, on behalf of Presque, attempted to collect $2,600 for "Deck Repairs 2021" dated "06/02/2021."

63. Mr. Rose did not owe this amount.

64. The statement threatened late charges.

65. The statement threatened to report "late payments, missed payments, or other defaults" to "credit bureaus."

66. Neither CAM nor Presque had a right to report to any credit reporting agency or any other person that Mr. Rose was delinquent because of non-payment of the Work.

67. In a letter dated July 2, 2021, CAM attempted on behalf of Presque to collect a past due amount of $2,944.89 from Mr. Rose.

68. Mr. Rose did not owe this amount to Presque or CAM.

69. Throughout the month of July, Mr. Rose and Presque communicated by email about the Work and the assessment by Presque and CAM.

70. Mr. Rose stated that he would pay the assessment under protest and ask Presque to put in writing that the payment was not voluntary, and that CAM would return the assessment if it was determined that Mr. Rose did not owe the assessment.

71. Presque would not agree that it would return the payment if it was determined that Mr. Rose did not owe the assessment.

72. This action demonstrates that Presque was intentionally collecting a debt that it knew Mr. Rose did not owe.

73. In a collection letter dated August 2, 2021, CAM, on behalf of Presque, attempted to collect from Mr. Rose "an outstanding balance of $2642.16, which contains additional late charges or fees."

74. None of the Work had been performed at this point.

75. The statement threatened to report "late payments, missed payments, or other defaults" to "credit bureaus."

76. Neither CAM nor Presque had any right to report to any credit reporting agency or any other person that Mr. Rose was delinquent because of non-payment of the assessment for the Work.

77. Mr. Rose did not owe the outstanding balance or late charges or fees.

78. In an email dated August 18, 2021, CAM, on behalf of Presque, notified Mr. Rose that the Work would continue for the next two days and that once the repair work was completed, "the balance of the invoice will be added to your account."

79. Mr. Rose was not obligated to pay for this Work.

80. On August 30, 2021, CAM forwarded a TPF invoice dated August 25, 2021, by email to Mr. Rose dunning him for $2,600 from before the Work and $2,600 after TPF had performed the Work.

81. The dunning letter was noted with the following: "Automatically Processed and Printed on 08/26/2021 16:33:26.

82. Mr. Rose did not owe this debt.

83. In a letter dated August 30, 2021, CAM, on behalf of Presque, attempted to collect an alleged debt of $2,600.

84. This letter did not disclose that it was from a debt collector.

85. This letter did not disclose that it was an attempt to collect a debt.

86. The dunning letter was sent by email.

87. This collection letter stated that the repairs had already been made.

88. This collection letter threatened to file a lien and foreclose on Mr. Rose's property.

89. Mr. Rose did not owe this debt.

90. Neither CAM nor Presque had a right under contract or law to place a lien or foreclose on Mr. Rose's property.

91. On September 1, 2021, CAM, on behalf of Presque, sent a collection letter by mail to Mr. Rose.

92. The letter stated that Mr. Rose was 90 days past due and he owed $5,552.72 including "all Assessments, fees and fines currently due on this account."

93. Mr. Rose did not owe that amount.

94. The dunning letter threatened that if Mr. Rose did not pay the invoice:

> the Association may pursue alternative collection methods, including legal action*
> in order to recover the delinquent balance.
> *Legal action to collect the delinquent balance may include filing a Claim of Lien
> upon your property to secure the amount owed, and if the debt remains unpaid,
> Foreclose on the Claim of Lien. If the Association incurs attorney fees to collect
> this debt, you will be charged the attorney fees and costs of collection.

95. Neither CAM nor Presque had the right to collect this alleged debt, nor to pursue any of the "legal action" that was threatened in the collection letter.

96. The letter also threatened:

> We may report information about your account to credit bureaus. Late payments,
> missed payments, or other defaults on your account may be reflected in your credit
> report.

97. Mr. Rose did not owe this alleged debt.

98. Neither CAM nor Presque had any right to report to any credit reporting agency or any other person that Mr. Rose was delinquent because of non-payment of the assessment for the Work.

99. None of the Defendants intended to publish any information to any credit reporting agency regarding Mr. Rose when this threat was made.

100.   In an email dated September 8, 2021, Mr. Rose communicated the problems with his account with Presque and CAM to Cam and members of the Presque Board of Directors.

101.   In this email Mr. Rose attempted to resolve the issue by inviting a colloquy with the other parties to discuss the matter.

102.   In an email dated the same day, one member of the Presque Board of Directors, Sylvia Gazdzinska, responded to Mr. Rose and basically dismissed his complaints.

103.   Mr. Rose responded the same day to Ms. Gazdzinska. He explained that the Defendants were leaving him with the choices of paying the assessment for the Work or suing, and that he did not want to sue.

104.   On the same day Ms. Gazdzinska responded and in effect said that Presque spends a lot of money on maintenance and that Mr. Rose's "help and understanding" was appreciated.

105.   This did not resolve the issue.

106.   In a statement dated October 5, 2021, CAM, on behalf of Presque, billed Mr. Rose for an alleged delinquent debt of $5,335.00.

107.   The statement listed the due date as October 1, 2021.

108.   Mr. Rose did not owe this amount.

109.   In a collection letter dated October 5, 2021, CAM, on behalf of Presque, attempted to collect $5,335.00 from Mr. Rose.

110.   Mr. Rose did not owe this alleged debt.

111.   The letter stated, "This amount includes all Assessments, fines, and fees currently due on this account."

112.    The collection letter also threatened that Mr. Rose would have to pay attorney fees and collection costs if he did not pay the stated balance within 15 days of the date of the dunning letter.

113.    Neither CAM nor Presque had a right to attorney fees or collection costs.

114.    The letter threatened to report "late payments, missed payments, or other defaults" to "credit bureaus."

115.    Neither CAM nor Presque had any right to report to any credit reporting agency or any other person that Mr. Rose was delinquent because of non-payment of the repair fees.

116.    None of the Defendants intended to publish any information to any credit reporting agency regarding Mr. Rose when this threat was made.

117.    The collection letter warned that Mr. Rose would receive no further notices before "the institution of formal action to collect the outstanding balance, including attorney's fees."

118.    The letter further stated that "Your account will be turned over to the Association attorney if payment is not received within 15 days."

119.    In an email dated October 20, 2021, Mr. Rose disputed the validity of the debt with CAM.

120.    Mr. Rose also asked CAM not to report the alleged debt with any credit reporting agency.

121.    Mr. Rose also requested all correspondence to be sent to his email address because he was frequently out of town.

122.    In an email October 21, 2022, CAM, on behalf of Presque, noticed Mr. Rose that "The account has been referred to the Attorney who you have corresponded with before." and that he should contact Michael Ganley (the BHS attorney) directly.

123.    The email did not respond to Mr. Rose's dispute of the alleged debt.

124. In a letter dated October 22, 2021, BHS mailed a copy of a lien filed against Mr. Rose by Presque.

125. This letter was sent by BHS on behalf of CAM and Presque.

126. The letter threatened that, "this claim of lien will remain on file against your property in the Orange County Clerk of Court and become part of the public record until the full balance is paid. In addition to the past due assessments, you are responsible for paying attorney's fees and related costs."

127. The total balance was listed as $5,523.45, which included an assessment of $1,162.24.

128. Mr. Rose did not owe this amount.

129. Neither Presque, nor CAM nor BHS had a right to claim attorney fees and costs against Mr. Rose.

130. CAM was copied on this letter.

131. An alleged claim of lien was attached to the collection letter.

132. This letter stated that it was an attempt to collect a debt.

133. In an email dated October 27, 2021, Mr. Rose contacted BHS and informed it that he was no longer able to access his portal the Presque website to view his account information.

134. Mr. Rose also asked BHS to contact him by email because he was frequently out of town.

135. In an email dated October 27, 2021, BHS informed Mr. Rose that his account portal was de-activated because of delinquency.

136. In an email dated October 28, 2021, BHS informed Mr. Rose that because Presque referred Mr. Rose's account to BHS, Mr. Rose could only pay Presque by sending payment in "certified form" to BHS.

137.    In an email dated October 30, 2021, Mr. Rose informed BHS that the assessment that he had received from CAM/Presque included fees for the Work that he did not owe and that he disputed those assessments.

138.    Mr. Rose further informed BHS that he wanted to pay the proper monthly assessments, but not the improper repair assessments.

139.    He further stated that since Presque's monthly charges fluctuate and he could not access the portal to see what the proper assessment amount would be, he needed BHS to tell him the amount of the assessments so that he could pay the monthly assessments.

140.    In an email dated November 3, 2021, BHS informed Mr. Rose that Presque would apply any payment he made to attorney fees, late fees, interest, potential additional legal fees and collection costs and "lastly to outstanding assessments."

141.    None of the Defendants had the right to collect attorney fees, late fees, interest, potential additional legal fees and collection costs.

142.    None of the Defendants had the right to make this threat.

143.    In an email dated November 3, 2021, BHS attempted to dun Mr. Rose for $5,889.37.

144.    Mr. Rose did not owe that amount to any Defendant.

145.    None of the Defendants had the right to collect that amount from Mr. Rose.

146.    In an email dated November 3, 2021, Mr. Rose requested whether BHS would tell him the undisputed amount of assessments that he had to pay.

147.    Mr. Rose did not receive a response to that request with information responsive to the request.

148.    Later that same day, Mr. Rose noticed BHS that he was represented by counsel on this matter.

149. In a letter dated December 10, 2021, CAM, on behalf of Presque, sent a "Final foreclosure Warning" to Mr. Rose.

150. The envelope was sent from CAM, the letter was captioned with Presque's name and address, and signed by the Board.

151. This dunning letter told Mr. Rose that he owed a delinquent balance of $6,242.89.

152. This was not true.

153. The letter threatened, "foreclosure will be filed within 15 days unless the balance is paid in full."

154. This 15-day deadline fell on Christmas Day.

155. None of the Defendants filed a foreclosure against Mr. Rose or his condominium on that deadline.

156. The letter also threatened to "report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report."

157. None of the Defendants published any information to any credit reporting agency regarding Mr. Rose.

158. None of the Defendants intended to publish any information to any credit reporting agency regarding Mr. Rose when this threat was made.

159. In a letter dated January 5, 2022, BHS, on behalf of all Defendants, sent a collection letter to Mr. Rose again threatening foreclosure.

160. The letter stated, "Please note that this law firm has been instructed to institute foreclosure proceedings against your property. You will be receiving a Notice of Hearing for the foreclosure action within thirty (30) days of this letter.

161.    The letter was copied to CAM.

162.    Mr. Rose did not receive a Notice of Hearing for a foreclosure action within thirty (30) days of the January 5 letter or on any other day as of the date of this Complaint.

163.    None of the Defendants filed a foreclosure against Mr. Rose or his condominium at that time.

164.    On Friday, January 28, 2022, Mr. Rose paid $1,479.17 to Presque for assessment fees other than the $5,200 assessed for the Work.

165.    This payment required the added expense of a $20.00 fee to his bank for a certified check, which was required per the foreclosure notice of January 5, 2022.

166.    In a letter dated January 29, 2022, Mr. Rose's attorney Tina Pace alerted BHS to law which demonstrates that Mr. Rose never owed the assessment for the Work.

167.    This letter also gave instructions for how Mr. Rose's payment was to be applied; to his proper assessment fees and not for the Work assessment.

168.    This letter informed BHS of the provisions of the Declaration of Condominium which made the replacement of the deck the responsibility of Presque, not Mr. Rose.

169.    This letter further explained that there was no provision in the Declaration of Condominium that would shift the cost of the replacement of the limited common element to the condominium owner.

170.    Attorney Pace's letter then informed BHS of the specific, relevant provisions of the Declaration of Condominium and of N.C. Gen. Stat. § 47C.

171.    On March 11, 2022, Mr. Rose informed BHS, Presque, and CAM by email that he had moved out of the unit and had rented out his condominium because he was unable to sell the unit with Defendants' lien and threatened foreclosure.

172.    In his March 11, 2022, email Mr. Rose included his new mailing address and provided contact information for the new tenant and property management company.

173.    Besides any notices which needed to be mailed to Mr. Rose, Mr. Rose requested that all communications from Defendants to Mr. Rose continue to be addressed to Mr. Rose's lawyer

174.    On March 14, 2022, BHS emailed Mr. Rose directly to say that if Mr. Rose wanted Defendants to communicate with Mr. Rose's lawyer, "it would have to be for all communications," including general communications sent to everyone in the community.

175.    BHS' March 14, 2022, email was copied to Mr. Rose's attorney, showing that BHS knew how to contact Mr. Rose's attorney.

176.    On March 29, 2022, Mr. Rose responded by email to reiterate that "[a]nything from [BHS] and anything regarding the alleged debt or any other legal or collections matter should be sent to my attorney."

177.    Despite Mr. Rose's clear instructions, BHS continued to contact Mr. Rose directly.

178.    On March 29, 2022, BHS emailed Mr. Rose an attachment from CAM that claimed Mr. Rose was "In Foreclosure".

179.    None of the Defendants had filed for foreclosure against Mr. Rose on March 29, 2022 or on any other date.

180.    On or about March 29, 2022, Mr. Rose posted a review of CAM on Google Reviews. He did not disclose account information.

181.    In response to Mr. Rose's review, CAM disclosed Mr. Rose's account information and engaged in debt collection by publicly humiliating Mr. Rose and posting for public view the fact that Mr. Rose was in collections and that he was not current.

182.    At the time of filing this complaint, CAM has not removed this post.

183.    On March 30, 2022, Mr. Rose paid his bank $20 to send BHS a certified check for $235.89 for monthly dues payments.

184.    This payment required the added expense of a $20.00 fee to his bank for a certified check, which was required per the foreclosure notice of January 5, 2022.

185.    On April 4, 2022, despite Mr. Rose's instruction to only contact Mr. Rose's lawyer, BHS emailed Mr. Rose to say that BHS would return the payment to Mr. Rose because Defendants were unwilling and unable to comply with Mr. Rose's instructions about which debt to apply the payment to.

186.    The April 4, 2022, email indicated that Defendants intended to apply any payment from Mr. Rose to debts that Defendants knew that Mr. Rose disputed, instead of the debts Mr. Rose instructed Defendants to apply Mr. Rose's payments towards.

187.    The April 4, 2022, email offered to put Mr. Rose on "a payment plan for the balance owed."

188.    On April 13, 2022, Mr. Rose contacted Rocket Mortgage to secure financing.

189.    Rocket Mortgage informed Mr. Rose that he could not be approved for a loan because of the Defendants' threatened foreclosure action against him and the lien the Defendants placed on his condominium.

190.    Mr. Rose communicated with Rocket Mortgage again on April 20, 2022.

191.    Again, the Rocket Mortgage agent confirmed that Mr. Rose would be rejected for any credit extension as a result of the threatened foreclosure and the lien that the Defendants placed on his condominium.

192.    This denial caused Mr. Rose economic harm because he was unable to secure financing at all, and especially before interest rates increased.

193.    N.C. Gen. Sta. § 47C-3-116(h) states in relevant part "an association shall not levy, charge, or attempt to collect a service, collection, consulting, or administration fee from any unit owner unless the fee is expressly allowed in the declaration, and any claim of lien securing a debt consisting solely of these fees may only be enforced by judicial foreclosure, as provided in Article 29A of Chapter 1 of the General Statutes."

194.    The Defendants added collection and service fees which were not expressly allowed in the Declaration of Condominium.

195.    On May 18, 2022, Mr. Rose paid $675 to be applied to his Presque account for normal dues.

196.    This payment required the added expense of a $20.00 fee to his bank for a certified check, which was required per the foreclosure notice of January 5, 2022.

197.    At all times relevant to the facts of this case, the Defendants' actions were willful and wanton, and the Defendants acted with malice and careless disregard for the effects of their actions on Mr. Rose.

## V. VIOLATIONS of N.C. GEN. STAT. § 75-50, *et seq*. as to PRESQUE and the BOARD

198.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

199.    Defendants, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-51(3) (making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt) by its actions as alleged herein. See, e.g., ¶¶ 65, 75, 96, 114, 156, 181.

200.    Defendants, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-51(6) (representing that nonpayment of an alleged debt may result in the seizure,

garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law) by its actions as alleged herein. See, e.g., ¶¶ 60, 88, 94, 126, 131, 149.

201.     Defendants, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-51(8) (threatening to take any action not permitted by law) by its actions as alleged herein. See, e.g., ¶¶ 25, 60, 72, 75, 90, 93, 96, 100, 109, 112, 114, 126, 128, 138, 139, 140, 142, 149.

202.     Defendants, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-53(2) (using any form of communication which ordinarily would be seen or heard by any person other than the consumer that displays or conveys any information about the alleged debt other than the name, address and phone number of the debt collector) by its actions as alleged herein. See, e.g., ¶¶ 43, 45.

203.     Defendants, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-54(2) (failing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt, unless the communication is made to a third-party pursuant to G.S. 75-53 for the purpose of obtaining location information about the debtor) by its actions as alleged herein. See, e.g., ¶¶ 54, 84, 85.

204.     Defendants, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-54(4) (falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely representing that the collector is in any way connected with any agency of the federal, State or local government; or falsely representing the creditor's rights or intentions) by its actions as alleged herein. See, e.g., ¶¶ 51, 62, 67, 73, 80, 83, 92, 106, 109, 127. 143, 149.

205. Defendants, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-54(6) (falsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges) by its actions as alleged herein. See, e.g., ¶¶ 73, 92, 94, 112, 117, 126, 140, 194.

206. Defendants, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-55(2) (collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge) by its actions as alleged herein. See, e.g., ¶¶ 73, 94, 111, 126, 140, 194.

## VI. <u>VIOLATIONS of N.C. GEN. STAT. § 58-70-90</u>, *et seq*. as to CAM

207. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

208. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 58-70-1 by its collection actions as alleged herein without securing a permit to collect debt.

209. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat § 58-70-50 when it did not, in all correspondence with Mr. Rose, use stationery or forms which contain a permit number.

210. CAM, individually and/or by and through its agent, has violated N.C. Gen. Stat. § 58-70-95(3) (making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt) by its actions as alleged herein. See, e.g., ¶¶ 65, 75, 96, 114, 149, 156, 181.

211. CAM, individually and/or by and through its agent, has violated N.C. Gen. Stat. § 58-70-95(6) (representing that nonpayment of an alleged debt may result in the seizure, garnishment,

attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law) by its actions as alleged herein. See, e.g., ¶¶ 88, 94, 126, 131, 149.

212. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 58-70-95(8) (threatening to take any action not permitted by law) by its actions as alleged herein. See, e.g., ¶¶ 25, 60, 72, 75, 90, 93, 96, 100, 109, 112, 114, 126, 128, 138, 139, 140, 142, 149.

213. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 58-70-105(2) (using any form of communication which ordinarily would be seen or heard by any person other than the consumer that displays or conveys any information about the alleged debt other than the name, address and phone number of the collection agency) by its actions as alleged herein. See, e.g., ¶ 181.

214. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 58-70-110(2) (failing to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector) by its actions as alleged herein. See, e.g., ¶¶ 54, 84, 85

215. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 58-70-110(4) (falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely representing that the collection agency is in any way connected with any agency of the federal, State or local government; or falsely representing

the creditor's rights or intentions) by its actions as alleged herein. See, e.g., ¶¶ 51, 62, 67, 73, 80, 83, 92, 106, 109, 127. 143.

216.     CAM, individually and/or by and through their agent, has violated N.C. Gen Stat. § 58-70-110(6) (falsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges) by its actions as alleged herein. See, e.g., ¶¶ 73, 92, 94, 112, 117, 126, 140, 194.

217.     CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 58-70-115(2) (collecting or attempting to collect from the consumer all or any part of the collection agency's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge) by its actions as alleged herein. See, e.g., ¶¶ 73, 94, 111, 126, 140, 194.

218.     CAM has violated N.C. Gen Stat. § 58-70-115(7) by failing to comply with N.C. Gen Stat. § 58-70-1.

### VII. VIOLATIONS of N.C. GEN. STAT. § 75-50, *et seq*. as to CAM (in the alternative)

219.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

220.     In the alternative, Mr. Rose pleads the following:

221.     CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 75-51(3) (Making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt) by its actions as alleged herein. See, e.g., ¶¶ 65, 75, 96, 114, 156, 181.

222.     CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 75-51(6) (representing that nonpayment of an alleged debt may result in the seizure, garnishment,

attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law) by its actions as alleged herein. See, e.g., ¶¶ 88, 94, 126, 131, 149.

223. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 75-51(8) (threatening to take any action not permitted by law) by its actions as alleged herein. See, e.g., ¶¶ 25, 60, 72, 75, 90, 93, 96, 100, 109, 112, 114, 126, 128, 138, 139, 140, 142, 149.

224. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 75-53(2) (using any form of communication which ordinarily would be seen or heard by any person other than the consumer that displays or conveys any information about the alleged debt other than the name, address and phone number of the debt collector) by its actions as alleged herein. See, e.g., ¶ 181.

225. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 75-54(2) (failing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt, unless the communication is made to a third-party pursuant to G.S. 75-53 for the purpose of obtaining location information about the debtor) by its actions as alleged herein. See, e.g., ¶¶ 54, 84, 85

226. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 75-54(4) (falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely representing that the collector is in any way connected with any agency of the federal, State or local government; or falsely representing the creditor's rights or intentions) by its actions as alleged herein. See, e.g., ¶¶ 51, 62, 67, 73, 80, 83, 92, 106, 109, 127. 143, 149.

227. CAM, individually and/or by and through their agent, has violated N.C. Gen Stat. § 75-54(6) (falsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges) by its actions as alleged herein. See, e.g., ¶¶ 73, 92, 94, 112, 117, 126, 140, 149, 194.

228. CAM, individually and/or by and through its agent, has violated N.C. Gen Stat. § 75-55(2) (collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge) by its actions as alleged herein. See, e.g., ¶¶ 73, 94, 111, 126, 140, 149, 194.

## VIII. VIOLATIONS of the FAIR DEBT COLLECTIONS PRACTICES ACT as to BHS

229. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

230. BHS, individually and/or by and through its agent, has violated 15 U.S. Code § 1692c(a)(2) (after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, communicating with any person other than that attorney) by its actions as alleged herein. See, e.g., ¶¶ 159, 174, 178, 185.

231. BHS, individually and/or by and through its agent, has violated 15 U.S. Code § 1692e(2) (by false representation of the character, amount, or legal status of any debt) by its actions as alleged herein. See, e.g., ¶¶ 126, 140, 143, 159, 178.

232. BHS, individually and/or by and through its agent, has violated 15 U.S. Code § 1692e(4) (the representation or implication that nonpayment of any debt will result in the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is

lawful and the debt collector or creditor intends to take such action) by its actions as alleged herein. See, e.g., ¶¶ 60, 124, 160, 178.

233.    BHS, individually and/or by and through its agent, has violated 15 U.S. Code § 1692e(5) (the threat to take any action that cannot legally be taken or that is not intended to be taken) by its actions as alleged herein. See, e.g., ¶¶ 60, 126, 140, 143, 160, 194.

234.    BHS, individually and/or by and through its agent, has violated 15 U.S. Code § 1692e(8) (communicating or threatening to communicate to any person credit information which is known or which should be known to be false) by its actions as alleged herein. See, e.g., ¶ 126.

235.    BHS, individually and/or by and through its agent, has violated 15 U.S. Code § 1692f(1) the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law) by its actions as alleged herein. See, e.g., ¶ 140, 194.

236.    BHS, individually and/or by and through its agent, has violated 15 U.S. Code § 1692f(6) (threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest) by its actions as alleged herein. See, e.g., ¶¶ 60, 126.

237.    BHS, individually and/or by and through its agent, has violated 15 U.S. Code § 1692g by its actions as alleged herein by failing to provide a validation letter pursuant to this statute.

## IX. BREACH OF FIDUCIARY DUTY as to PRESQUE and the BOARD

238.    The foregoing paragraphs are incorporated as though the same were set forth at length herein.

239.    For a breach of fiduciary duty to exist:

[T]here must first be a fiduciary relationship between the parties. Such a relationship has been broadly defined by this Court as one in which there has been

a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence and it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

*Dalton v. Camp*, 353 N.C. 647, 651-52 (2001) (emphasis supplied).

240.   The Defendants should have, in equity and good conscience, acted in good faith and due regard to Mr. Rose's interests which included (but are not limited to) protection from unethical assessment practices.

241.   A fiduciary relationship existed in fact between Mr. Rose and the Defendants.

242.   Pursuant to N.C. Gen. Stat. § 47C-3-103 "the officers and members of the executive board shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent persons would exercise under similar circumstances in like positions."

243.   Mr. Rose is a member of the Presque condominium owners association by virtue of his ownership of the condominium.

244.   Mr. Rose is not responsible for the repair of the deck.

245.   Pursuant to N.C. Gen. Stat. § 47C-1-103(16) "'Limited common element' means a portion of the common elements allocated by the declaration ... for the exclusive use of one or more but fewer than all of the units."

246.   N.C. Gen. Stat. § 47C-3-107 states in relevant part, "the cost of maintenance, repair or replacement of a limited common element shall be assessed as provided in G.S. 47C-3-115(b)."

247.   N.C. Gen. Stat. § 47C-3-115(b) provides that "all common expenses must be assessed against all the units in accordance with the allocations set forth in the declaration."

248.     N.C. Gen. Stat. § 47C-3-115(c) provides that the expense of the maintenance or repair of a Limited Common Element can be assessed against the owner so benefited only "to the extent required by the declaration."

249.     Presque's Declaration of Condominium is recorded in Book 2233 at Page 287 with the Orange County North Carolina Register of Deeds.

250.     Pursuant to § 6 of Presque's Declaration, the Limited Common Areas and Facilities is defined as "those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, including any deck, porch, patio, courtyard, balcony… etc.".

251.     The Declaration further states that "the cleanliness and orderliness of the Limited Common Areas and Facilities shall be the responsibility of the individual Unit Owner, but the responsibility for maintenance, painting repair and replacement thereof, together with control over the exterior decoration of same, shall be and remain with the Association, but each Unit Owner shall be responsible for repair and maintenance of that Unit's HVAC unit". *Id.*

252.     This statement expressly states that the decks are the "maintenance, painting, repair and replacement" responsibility of the Association.

253.     The Declaration provides that the only cost of limited common expenses that Unit Owners are to individually bear is for the repair and maintenance of their HV AC unit.

254.     Despite its lack of authority to assess expenses against Mr. Rose, it did so anyway.

255.     Despite its fiduciary duty to Mr. Rose, Presque and the Board did not seek to protect Mr. Rose's interests.

256.     In so doing, the Defendant Presque and the Board breached their fiduciary duty to Mr. Rose.

257. Defendants collected fees they were not expressly allowed to collect, pursuant to N.C. Gen. Sta. § 47C-3-116(h).

258. In so doing, the Defendant Presque and the Board breached their fiduciary duty to Mr. Rose.

259. The Defendants are liable to Mr. Rose for the breach of their fiduciary duty.

260. The Defendants' acts that lead to this breach were intentional, careless, reckless and without regard for the effects they would have on Mr. Rose.

## X. <u>CONSTRUCTIVE FRAUD as to PRESQUE and the BOARD</u>

261. The foregoing paragraphs are incorporated as though the same were set forth at length herein.

262. Pursuant to N.C. Gen. Stat. § 47C-3-103 "the officers and members of the executive board shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent persons would exercise under similar circumstances in like positions."

263. As demonstrated herein have Presque and the Board have breached that fiduciary duty with Mr. Rose.

264. As a consequence of the collection of unlawful fees, the Defendants have taken advantage of their positions of trust with Mr. Rose to their own financial advantage.

265. The Defendants sought to benefit themselves during the transaction in which they took advantage or Mr. Rose's trust.

266. The Defendants are liable to Mr. Rose for this constructive fraud.

267. The Defendants' acts that lead to this constructive fraud were intentional, careless, reckless and without regard for the effects they would have on Mr. Rose.

## XI. EQUITABLE ACCOUNTING as to PRESQUE and the BOARD

268.    The foregoing paragraphs are incorporated as though the same were set forth at length herein.

269.    Mr. Rose has asserted a valid claim for relief in equity, specifically a breach of fiduciary duty.

270.    An accounting is necessary to compel discovery of information regarding accounts held exclusively by the Defendants.

271.    Mr. Rose cannot be fully and completely compensated by claims at law because the claims available to Mr. Rose at law do not compensate him for the Defendants' breach of fiduciary duty.

272.    Wherefore, Mr. Rose requests an equitable accounting.

## XII. DAMAGES

273.    The foregoing paragraphs are incorporated as though the same were set forth at length herein.

274.    Mr. Rose was damaged by the proximate and legal cause of all of the Defendants' intentional, willful, reckless and negligent actions as described herein.

275.    Mr. Rose's damages can be calculated as the following:

a.   Economic losses:

 i.   loss of credit extension, which led to higher interest rate, and other penalties and interests

 ii.   certified check fees

 iii.   improper late fees

 iv.   legal fees and costs

v.   lost time from work

b.   Emotional distress and humiliation

## XIII. <u>JURY TRIAL DEMAND</u>

276.   Plaintiff demands trial by jury on all issues so triable.

## XIV. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants,

based on the following requested relief:

a)   Actual damages pursuant to N. C. Gen. Stat. § 58-70-130(a);
b)   Civil penalties of $4,000 per violation pursuant to N. C. Gen. Stat. § 58-70-130(b);
c)   Actual damages pursuant to N. C. Gen. Stat. § 75-56(a);
d)   Civil penalties of $4,000 per violation pursuant to N. C. Gen. Stat. § 75-56(b);
e)   A determination that continuous, ongoing violations are separate weekly violations, pursuant to N.C. Gen. Stat.  § 75-8.
f)   Actual or statutory damages pursuant to 15 U.S.C. §1692k(1);
g)   Reasonable attorney fees and costs pursuant to 15 U.S.C. §1692k(3);
h)   An equitable accounting;
i)   Actual and compensatory damages based on common law negligence;
j)   Punitive Damages, pursuant to N.C. Gen. Stat. § 1D; and,
k)   Such other and further relief as may be necessary, just and proper.

**TODAY** is July 13, 2022.

**COLLUM & PERRY**

By:      <u>*/s/ M. Shane Perry*</u>
         Attorney for Plaintiffs
         NC Bar No. 35498
         109 W. Statesville Ave.
         Mooresville, NC 28115
         Telephone: 704-663-4187
         Fax:  704-663-4178
         shane@collumperry.com