NORTH CAROLINA

*9890-50-0795.114*

DECLARATION OF CONDOMINIUM

WAKE COUNTY

*9890-50-0795.101 thru .113*
*9890-50-0795.501 thru .508*
*9890-50-0795.501 thru .508*

THIS DECLARATION OF CONDOMINIUM is made and entered into the 9ᵗʰ day of _____*April*_____, 2001, by ARD GROUP, INC., a North Carolina Corporation, ("Declarant"), pursuant to the provisions of Chapter 47C of the North Carolina General Statutes.

### 1. ESTABLISHMENT.

Declarant is the owner of real property in Orange County, North Carolina, more particularly described in Paragraph 2 below; and

Declarant intends to construct up to five multi-story buildings in two phases on said real property containing a maximum of forty-two (42) units for sale as individual units and to sell and convey the same to various purchasers subject to the covenants, conditions and restrictions hereinafter set forth, which shall run with the land and shall be binding on Declarant, its successors and assigns, and any person or entity owning an interest in the Property (hereinafter defined), and their successors, heirs and assigns; and

Declarant intends and desires by the filing of this Declaration of Condominium to submit the property described in Paragraph 2 below and improvements to be constructed thereon together with all of the appurtenances thereto to the provisions of Chapter 47C of the North Carolina General Statutes, (NORTH CAROLINA CONDOMINIUM ACT), and hereby declares the same to be known and identified as "**Presque Isle Villas, a condominium.**"

### 2. PROPERTY DESCRIPTION.

All that certain property situated, lying and being in Orange County, North Carolina, and being more particularly described on the schedule marked Exhibit "A" attached hereto and incorporated herein by reference (the "Property"), together with the improvements to be constructed thereon as referenced in Exhibit "B", including complete descriptions and plans of the units with their respective locations and dimensions, which plans are filed in Condominium ~~File No.~~ *Book 87 page 768-786* Orange County Registry, which is incorporated by reference as if fully set forth herein.

### 3. FORM OF ADMINISTRATION.

The property of the condominium and its business shall be managed, controlled, directed and administered by the **Presque Isle Villas** Condominium Homeowners Association, Inc. (herein the "Association") as provided in the Articles of Incorporation and By-Laws of the Association, which Articles of Incorporation and By-Laws are attached hereto as Exhibits "C" and "D" and made a part hereof. Each Unit Owner shall be member of the Association.

Return to:
( ARD Group, Inc.
P.O. Box 31431
Raleigh, NC 27622 )

EXHIBIT
*C*
ALL-STATE LEGAL

All powers granted in this Declaration or the By-Laws to the Association shall be exercisable by the Board of Directors, except as expressly provided in the Declaration, the By-Laws, or Chapter 47C of the North Carolina General Statutes.

Declarant shall transfer control of the Association to the Unit Owners on or before 120 days after conveyance of seventy-five percent (75%) of the units in later phases or five years from the date of the conveyance of the first unit, whichever is earlier.

4.    UNIT DESIGNATION.

Declarant does hereby establish within the Property eighteen (18) units, and does hereby designate all such units for separate ownership. Each unit is identified by a specific numerical designation with a separate street address as shown on Exhibit "B". Each unit is bounded both as to horizontal and vertical boundaries by the interior surface of its perimeter walls, ceilings, and floors, which are shown on the aforesaid plans filed in the Orange County Registry. Mechanical equipment, stairways, and appurtenances located within any unit and designed to serve only that unit shall be a part of the unit.

Each Unit Owner has an unrestricted right of ingress and egress to his or her unit. This right shall be perpetual and it shall pass with the unit estate as transfers of unit ownership might occur. Any conveyance, encumbrance, judicial sale or other transfer (voluntary or involuntary) of an individual interest in the common elements will be void unless the unit to which that interest is allocated is also transferred.

In the case of any walls, flooring and ceilings that are herein described as boundaries, all lath, furring, wallboard, plasterboard, plaster, paneling, tiles, wallpaper, paint, finished flooring and any other materials constituting any part of the finished flooring, and any other materials constituting any part of the finished surfaces thereof are a part of the unit and all other portions of such walls, floors or ceilings are a part of the common elements, pursuant to GS 47C-2-102(l).

The cost of reasonable repair and maintenance of a boundary wall shall be shared by the owners who make use of the wall in proportion to such use. Notwithstanding any other provisions of this Declaration, a Unit Owner who by his negligent or willful act causes a boundary wall to be exposed to the elements shall bear the whole cost of furnishing the necessary protection against such elements.

5.    COMMON AREAS AND FACILITIES.

The common areas and facilities consist of all parts of the multi-unit buildings situated on the land described above other than individual units therein as described in Paragraph 2 above, including without limitation the following:

-2-

(a)     The land on which the building is erected and all land described in Paragraph 2 above.

(b)     All foundations, columns, girders, beams, supports and other structural members.

(c)     The roof and all exterior walls and interior walls except those partition walls and all ceilings, floors, and stairways wholly within a unit.

(d)     All central appurtenant installments for operations and for services such as power, lights, telephone, security system, cable TV, elevator, cold water for common building usage, heat and air conditioning for common building usage, including pipes, ducts, wiring, cables and conduits, whether located in common areas or in units and all other central mechanical equipment spaces.

(e)     All waterlines, sewer pipes and sewer system.

(f)     All of the parts of the property and all apparatus installations existing in the building or upon the property for common use necessary or convenient to the existence, maintenance, or safety of the property.

(g)     All landscaping, other site improvements including the community center, swimming pool and bocca ball court, trash collection areas and equipment related thereto, parking areas if not a part of the Limited Common Areas and Facilities as outlined in Paragraph 6 herein, equipment rooms, lobbies and lobby closets, privacy wall, fountain and permanent signage.

6.     LIMITED COMMON AREAS AND FACILITIES.

Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, including any deck, porch, patio, courtyard, balcony, foyer of carriage units, rear yard, driveway, HVAC unit and/or storage room appurtenant to such of the Units as are shown on the Plans, or any assigned garage or assigned storage room. Each Unit Owner is hereby granted an exclusive and irrevocable license to use and occupy such Limited Common Areas and Facilities as are associated with such Unit Owner's Unit. Storage units, garages (including those attached to each building and those that are detached) are more particularly identified on Exhibit "B1", attached hereto. No garage can be conveyed separate and independent of the unit to which it is assigned. The cleanliness and orderliness of the Limited Common Areas and Facilities shall be the responsibility of the individual Unit Owner, but the responsibility for maintenance, painting, repair and replacement thereof, together with control over the exterior decoration of same, shall be and remain with the Association, but each Unit Owner shall be responsible for repair and maintenance of that Unit's HVAC unit. The Association may adopt a policy whereby owners of detached garages which are a part of the Limited Common Areas and Facilities of the project will pay a supplemental monthly assessment in excess of the standard monthly assessment to

-3-

cover additional ownership costs related to the detached garages which are not available to or owned by all unit owners. There are no Limited Common Areas and Facilities except as provided in this Paragraph 6.

### 7. PERCENTAGE OF OWNERSHIP IN COMMON AREAS.

Each unit shall have an undivided ownership interest in the common areas as shown on the attached Exhibit "B2". Except as provided in Paragraph 8, the percentage of common area per unit shall not be changed without the unanimous consent of the owners herein. As additional buildings are constructed, the percentage of common area ownership per unit will be changed pursuant to amendments to this Declaration of Condominium filed by Declarant.

Every owner of a Unit shall be a member of the Association. Membership shall be appurtenant to and may not be separated from ownership of any Unit which is subject to assessment.

Each Unit together with its undivided interests in the common areas and facilities, shall, for all purposes be, and is hereby declared to be, and to constitute a separate parcel of real property and the Unit Owner thereof shall be entitled to the exclusive ownership and possession of his unit subject only to the covenants, restrictions, and easements herein and by the By-Laws, rules, regulations and resolutions adopted pursuant thereto.

### 8. RESERVATION OF DECLARANT RIGHTS.

Declarant reserves the following special declarant rights for the Property:

(a) To complete, within five years of the date of recordation of this Declaration of Condominium, any and all improvements indicated on the plats and plans, up to a maximum of 42 Units.

(b) To file amended or supplemental instruments to make this Declaration of Condominium applicable to the additional buildings and units to be constructed on the Property.

(c) To change the percentage interest in the common areas and facilities allocated to each unit based upon the pro rata share of each unit's portion of the total square footage of the buildings containing units, which will be reflected on Exhibits attached to the Amendments or Supplements to this Declaration of Condominium.

(d) To control the use of the community center for a period of three (3) years, from the date of the conveyance of the first unit or until one hundred percent (100%) of all units constructed on the Property are conveyed, whichever occurs first.

-4-

Declarant shall be entitled to use the community center as a sales office during this period of Declarant control.

9.    CREATION OF THE LIEN AND PERSONAL OBLIGATION OF ASSESSMENTS.

The Declarant, for each unit owned within the property, hereby covenants, and each owner of any unit by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association the annual assessments or common charges to be established and collected as hereinafter provided. For each phase, all units will be allocated full assessments no later than sixty days after the first unit is conveyed, except for unsold or unoccupied units owned by the Declarant, which shall be assessed at a rate of 25% of a full assessment until such time that they shall be either sold or occupied.

The annual and special assessments, together with the interest, and costs and reasonable attorney's fees incurred in the collection thereof, shall be a charge on the unit and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest and costs and reasonable attorney's fees incurred in the collection thereof, shall also be the personal obligation of the person (or persons) who was the owner of such property at the time when the assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.

The assessments levied by the Association shall be used exclusively to promote and protect the recreation, health, safety, and welfare of the residents, for the improvement and maintenance of the common area, and of the buildings and improvements situated upon the property, and to pay ad valorem taxes and public improvement assessments levied against the common areas. Assessments for water use shall be levied independent of other assessments. Each building shall have a separate meter, and each unit shall be charged for its share of the building's water bill based on the proportionate share of its square footage to the square footage of the entire building. The Association shall have the right to suspend the voting rights and right of use of any recreational facilities by an owner for any period during which any assessment against that owner's unit remains unpaid; and for a period not to exceed 60 days for any infraction of its published rules and regulations.

Any lien for delinquent common expense assessments or other charges that the Association has on a unit will be subordinate to a first mortgage on the unit, if the mortgage was recorded before the delinquent assessment was due. Any such lien for a common expense assessment will not be affected by the sale or transfer of the unit estate, unless a foreclosure of a first mortgage is involved, in which case the foreclosure will extinguish the lien for any assessments that were payable before the foreclosure sale, but will not relieve any subsequent unit owner from paying further assessments.

-5-

10. WORKING CAPITAL FUND.

A working capital fund shall be established by the Declarant in order to meet unforeseen expenditures or to purchase any additional equipment or services. The working capital fund shall be initially funded by the Declarant in an amount equal to two months of the estimated common charges for each unit. The Declarant is expressly prohibited from using the working capital funds to defray any of its expenses, reserve contributions or construction costs or to make up any budget deficits while it is in control of the Association. Each unit's share of the working capital fund shall be collected at the time the sale of the unit is closed. Any amounts paid into this fund shall not be considered as advance payments of regular assessments. At such time that each unit's share of the working capital fund is paid in by a Unit Owner as provided herein, the Declarant shall be reimbursed out of the working capital fund for that amount previously paid by the Declarant to the working capital fund on behalf of the unit. The working capital fund shall be transferred to the Association for deposit to a segregated fund when control of the Association is transferred to the Unit Owners by the Declarant.

11. AMOUNT OF LIEN.

The lien for each unit as described in Paragraph 9 above shall be based on the percentage share in common areas as described in Paragraph 7 and 8 above. Said lien shall be perfected upon filing in the Office of the Clerk of Superior Court, Orange County, North Carolina.

The Grantee of a unit shall be jointly and severally liable with the Grantor for all unpaid assessments against the latter for his proportionate share of the common expenses up to the time of the grant or conveyance, without prejudice to the Grantee's right to recover from the Grantor the amounts paid by the Grantee therefore. However, any such Grantee shall be entitled to a statement from the manager or Board of Directors, as the case may be, setting forth the amount of the unpaid assessments against the Grantor and such Grantee shall not be liable for, nor shall the unit conveyed be subject to a lien for, any unpaid assessment in excess of the amount therein set forth.

12. USE OF BUILDINGS.

(a) The building and each of the units shall be used for residential purposes only. The use of the building and units are further restricted by the By-Laws of the Association. No unit may be subdivided into smaller units or any portions thereof sold or otherwise transferred without first amending the By-Laws to show the changes in the units to be effected thereby.

(b) No more than three persons over the age of eighteen unrelated by blood or marriage shall reside in any single unit for more than thirty consecutive days in any one calendar year.

-6-

(c)     The common areas and facilities shall be used only for the purposes for which they are intended and the furnishing of services for the enjoyment of the units.

(d)     No noxious or offensive activity shall be conducted upon any unit nor shall anything be done thereon which may be or may become an annoyance or nuisance or shall interfere with the peaceful possession of property by Unit Owners.

(e)     No animals, livestock or poultry of any kind shall be kept or maintained on any unit or in any dwelling except that dogs, cats or other household pets may be kept or maintained provided that they are not kept or maintained for commercial purposes. All household pets shall be kept on a leash at all times when outside the units.

(f)     No outside radio or television antennas, including satellite dishes or receivers, shall be erected on any common area or element unless and until permission for the same has been granted by the Association.

(g)     No signs or other advertising devices shall be displayed on or about the exterior of any Unit, or in the common areas or facilities without first receiving permission from the Association. Any owner shall have the right to display a "For Sale" or "For Rent" sign, not in excess of 2 square feet in the window of the Unit. Notwithstanding the foregoing, Declarant shall have the right to maintain upon the Property advertising signs until all units have been sold to initial purchasers.

(h)     All window coverings (i.e., curtains, blinds, draperies, shades, etc.) shall be installed and maintained in accordance with provisions of the Association.

(i)     Unit Owners shall not park or store any camper, trailer, trailer vehicle, or similar vehicle anywhere on the premises. No trucks shall be permitted except for standard 2-ton or less pickup trucks or smaller sized trucks. No vehicle shall display any commercial advertising.

(j)     Any lease or rental agreements involving the units shall be in writing and shall be subject to the requirements of the Association documents and Association rules and regulations governing same.

(k)     Each Unit Owner shall be responsible for repair and replacement of windows and doors.

13.     PERSON TO RECEIVE SERVICE OF PROCESS.

    Emad Fakhoury is hereby designated to receive service of process in any action which may be brought against or in relation to this condominium. The address of such person is:

-7-

100 Presque Isle, Chapel Hill, North Carolina, 27514, which is located within Orange County, North Carolina. The person so designated to receive service of process may be changed by the Board of Directors.

14. EASEMENTS.

Each Unit Owner shall have an easement in common with all other owners over all other units to use all pipes, wires, ducts, cables, conduits, public utilities and other common facilities located in any of the other units and serving each unit. Furthermore, the Declarant hereby conveys to each Unit Owner an easement and right of access to any and all common areas, open spaces, yards and parking areas for the common use of all owners. The Association shall have the right to establish the rules and regulations pursuant to which the owner of any unit, and family, guests and invitees may be entitled to use the common areas.

Each unit shall be subject to an easement in favor of the other owners of all other units to use the pipes, ducts, cables, wires, conduits, public utility lines and other common facilities serving other units located in such unit. The Board of Directors shall have the right of access to each unit to inspect the same, to remove violations therefrom and to repair or replace facilities contained therein or which serve other units in the building. Each Unit Owner shall specifically have an easement to maintain all components of the heating and air conditioning system serving his unit in their present location as shown in the plan attached hereto.

The Board of Directors may hereafter agree that easements for utility purposes for the benefit of the Property, including the right to install, lay, maintain, repair, and replace water lines, pipes, sewer lines, telephone wires and electrical conduits, wires over, under and along any portion of the common areas in each unit are necessary. Each Unit Owner hereby grants the Board of Directors irrevocable power of attorney to execute, acknowledge, and record for and in the name of each Unit Owner such instruments as may be necessary to effectuate the foregoing. An easement is hereby established over all common areas for the benefit of applicable governmental agencies for the setting, removing, and reading of water meters, maintaining and replacing water, drainage and drainage facilities, fire fighting, law enforcement, garbage collection and the delivering of mail.

15. DISCLAIMER BY TOWN OF CHAPEL HILL.

Pursuant to the code of the Town of Chapel Hill, the Town of Chapel Hill refuses to be responsible for failing to provide any emergency or regular public service to this project or its occupants when such failure is due to the lack of access to certain roads or streets that are not public due to inadequate design or construction, blocking of access routes or any other factor within the control of the Declarant, Association, or occupants.

Accordingly, the Board of Directors is hereby empowered to make all efforts to assure that there is adequate access to all units and shall not allow any blocking of access or defects in access to remain uncorrected.

-8-

16. PARTITIONING.

The common areas and facilities shall not be divided nor shall any right to a partition thereof exist. Nothing herein contained ever shall be deemed to prevent ownership of a condominium unit by the entireties, jointly or in common or in other form permitted by law.

17. DAMAGE, DESTRUCTION AND CONDEMNATION.

In the event of damage to or destruction of any Building as a result of fire or other casualty, the Board of Directors shall arrange for the prompt restoration and replacement of the damaged or destroyed Building unless (1) the Condominium is terminated in accordance with the provisions of North Carolina law, or (2) repair or replacement would be illegal under any state or local health or safety statute or ordinance, or (3) the Unit Owners decide not to rebuild by an eighty percent (80%) vote, including one hundred percent (100%) of Owners of Units not to be rebuilt and one hundred percent (100%) of Owners of Units to which are assigned Limited Common Elements not to be rebuilt. Unless one of the preceding conditions occurs, the Board of Directors shall arrange for the prompt repair and restoration of the damaged or destroyed Building, not including any decoration or covering for walls, ceilings, or floors, windows, doors, or furniture, furnishings, fixtures or equipment (unless the subject insurance policy covers a portion or all of such loss, in which event the Board of Directors shall repair or replace such damaged property), and the Board of Directors shall disburse the proceeds of all insurance policies to the contractors engaged in such repair and restoration in appropriate progress payments and in accordance with the provisions of Paragraph 18 of this Declaration. Any payment for repair and restoration in excess of the insurance proceeds shall constitute a Common Expense. Any reconstruction or repair shall be in accordance with the Plans. If the Unit Owners vote not to rebuild any Unit, that Unit's allocated interests are automatically reallocated upon the vote as if the Unit had been condemned under N.C.G.S. §47C-1-107(a). Any distribution of funds in connection with the termination of the project shall be made based on the relative value of each unit and in accordance with the formula that is used to determine the Unit Owner's individual interest in the common elements.

18. INSURANCE.

The insurance which shall be carried upon the property shall be governed by the following provisions:

(i) Casualty or physical damage insurance shall be carried in an amount equal to the full replacement value (i.e., 100% of full "replacement cost") of all buildings and all improvements on the Property owned either by the Association or unit owners and all personal property included within the Property described in Exhibit "A" attached hereto, except such personal property as may be owned by the unit owners with a replacement cost endorsement and an inflation guard endorsement, without deduction or allowance for depreciation (as determined annually by the Board of Directors with the assistance of the insurance company affording such coverage), such coverage to afford protection against at least the following:

-9-

a) loss or damage by fire or other hazards covered by the standard coverage endorsement together with coverage for common expenses with respect to condominium units during any period of repair or reconstruction; and

b) such other risks as from time to time customarily shall be covered with respect to buildings similar to the building in construction, location and use, including, but not limited to, vandalism, malicious mischief, windstorm and water damage, subject to such deductible amounts not in excess of One Thousand Dollars ($1,000.00) as the Board of Directors shall determine. All Casualty Insurance policies shall be purchased by the Association for the benefit of the Association, the Unit Owners and their respective mortgagees, as their interests may appear and shall provide (a) for the issuance of certificates of insurance with mortgagee endorsements to the holders of mortgages on the Units, if any, and (b) that the insurer waives its rights of subrogation against the Unit Owners, Occupants and the Unit Owners Association. All casualty insurance policies shall provide that all proceeds payable as a result of casualty losses shall be paid to the Board of Directors as trustees, for each of the Unit Owners in the percentages established in this Declaration for the purposes elsewhere stated herein, and for the benefit of the Association, the Unit Owners, and their respective mortgagees as their interests may appear.

(ii)   The Association shall insure itself, the members of the Board, the Unit Owners, and the Occupants against liability for personal injury or death and for injury to or destruction of property occurring upon, in or about, or arising from or relating to the Condominium Project or any portion thereof, including, without limitation, water damage, legal liability, hired automobile, non-owned automobile and off-premises employee coverage, such insurance to afford protection in such amount and with such coverage as shall be deemed necessary by the Association. All liability insurance shall contain cross-liability endorsements to cover liabilities of the Unit Owners as a group to a Unit Owner. In the event the insurance effected by the Association on behalf of the Unit Owners and Occupants against liability for personal injury or property damage arising from or relating to this Condominium Project shall, for any reason, not fully cover any such liability, the amount of any deficit shall be a Common expense to the Unit Owners, and any Unit Owners who shall have paid all or any portion of such deficiency in an amount exceeding his proportionate share thereof based on his percentage of interest in the common areas shall have a right of contribution from the other Unit Owners according to their respective percentage of interest in the common areas.

(iii)   The Board shall be required to obtain a policy of commercial general liability insurance in such limits as the Board may, from time to time, determine, covering each member of the Board, the managing agent, if any, and each Owner with respect to liability arising out of the use, ownership, maintenance, or repair of the Common Areas; provided, however, that in no event shall the limits of such policy ever be less than $1,000,000 per occurrence. The liability insurance policy shall include endorsements covering cross liability claims of one

-10-

insured against another, including the liability of the Owners as a group to a single Owner, and shall provide that it may not be canceled or substantially modified without at least thirty (30) days' prior written notice to the Association and to all insureds. The Board shall review such limits annually.

(iv)    The Board shall obtain such fidelity coverage against dishonest acts on the part of all persons responsible for handling funds belonging to or administered by the Association as it may deem necessary. Any such fidelity insurance policy must name the Association as the named insured and shall be written in an amount as may be determined by the Board, but in no event less than one-half the annual budgeted amount of Common Expenses, or the amount required by any Mortgagee, whichever is greater.

(v)    Premiums upon insurance policies purchased by the Association shall be paid by the Association at least thirty (30) days prior to the expiration date of such policies and shall be assessed as Common expenses.

(vi)    All insurance policies shall be written with a company or Companies licensed to do business in the State of North Carolina and holding a rating of "A+" or better in Best's Insurance Guide.

(vii)    Exclusive authority to negotiate losses under said policies shall be vested in the Board of Directors or its authorized representative.

(viii)    In no event shall the insurance coverage obtained and maintained pursuant to the requirements hereof be brought into contribution with insurance purchased by the Owners of the condominium units or their mortgagees, as herein permitted, and any "no other insurance" or similar clause in any policy obtained by the Unit Owners Association pursuant to the requirements hereof shall exclude such policies from consideration.

(ix)    All policies shall provide that such policies may not be canceled or substantially modified without at least thirty (30) days prior written notice to any and all insureds named thereon, including any and all mortgagees of the condominium units.

(x)    All policies of casualty insurance shall provide that, notwithstanding any provisions thereof which give the carrier the right to elect to restore damage in lieu of making a cash settlement, such option shall not be exercisable without the prior written approval of the Board of Directors (or any Insurance Trustee) or when in conflict with the provisions of this Declaration or the provisions of the North Carolina Unit Condominium Act as the same may be in force from time to time.

(xi)    All policies of insurance shall contain a waiver of subrogation by the insurer as to any and all claims against the Association, the Board of Directors thereof, the Owners of any condominium unit and/or their respective agents, employees or invitees, and any defenses based upon co-insurance or invalidity arising from the acts of the insureds.

-11-

19.    UNIT OWNERS POLICIES OF INSURANCE.

The Owner of any Condominium Unit (including the holder of any mortgage thereon) may obtain additional insurance (including a "Condominium Unit Owner's Endorsement" for improvements and betterments to the condominium unit made or acquired at the expense of the owner) at the owner's expense.

20.    UNITS SUBJECT TO DECLARATION.

All present and future owners, tenants, occupants of units and employees of owners and tenants shall be subject to, benefited by and shall comply with the provisions of this Declaration, by the By-Laws and any rules and regulations as may be adopted in accordance with the By-Laws. In accordance herewith, the Declaration, By-Laws and rules and regulations may be amended from time to time. The acceptance of a deed of conveyance or the entering into of a lease or the entering into occupancy of any unit shall constitute an agreement that the provisions of this Declaration, By-Laws, and any rules and regulations which may be adopted are accepted and ratified by such owner, tenant, or occupant and all of such provisions shall be deemed and taken to be covenants running with the land and shall bind any person having at any time any interest or estate in such unit as though provisions were made a part of each and every deed, conveyance or lease. When there are unsold units in the project, the Declarant also shall enjoy the same rights and assume the same duties under this Declaration as they relate to each unsold unit but for the payment of assessments on unsold or unoccupied units (see Paragraph 9).

21.    CONSTRUCTION.

In interpreting any and all provisions of this instrument, the Exhibits attached hereto and subsequent deeds and deeds of trust covering individual units, the actual location of the unit shall be deemed conclusively to be the property intended to be conveyed, reserved or encumbered notwithstanding any minor deviations, either horizontally or vertically, from the locations indicated in Condominium File No. _____, Orange County Registry or in minor variations in the description of the unit contained herein. To the extent that such minor deviations in location do or shall exist, a valid easement therefor and for the maintenance thereof does and shall exist.

22.    AMENDMENT.

The covenants and restrictions of this Declaration shall run with and bind the land, for a term of twenty (20) years from the date this Declaration is recorded, after which time they shall be automatically extended for successive periods of ten (10) years. For a period no longer than twenty-four (24) months after the initial filing of this Declaration in the Orange County Registry, the Declarant may unilaterally amend this Declaration without the consent or approval of other Unit Owners or eligible mortgage holders provided such amendments shall be exclusively for the purpose of (1.) correcting clerical errors, (2.) making changes in order to comply with Federal National Mortgage Association requirements, (3.) making permanent assignments of garages or parking spaces (if any), or (4.) making permanent assignments of

-12-

storage closets (if any) or (5) changing the percentages of common area ownership per unit when construction of additional buildings is completed (up to a maximum of 42 units). Otherwise, this Declaration may be amended during the first twenty-year period by an instrument signed by not less than sixty-seven percent (67%) of the Unit Owners. Any amendment must be recorded.

Amendments of a material nature shall be agreed to by Unit Owners who represent at least 67% of the total allocated votes in the Association and by eligible mortgage holders who represent at least 51% of the votes of unit estates that are subject to mortgages held by eligible holders. Unit Owner votes may be cast in person or by proxy at a meeting held in accordance with the provisions of the By-Laws. No such amendment shall be effective until set forth in an amended declaration and duly recorded in the Office of the Register of Deeds in Orange County, North Carolina. Upon recording, all the Unit Owners and their successors and assigns, shall be bound by said amendments.

A material change shall be considered as one which changes any of the following:

- voting rights;

- increases in assessments that raise the previously assessed amount by more than 25%, assessment liens, or the priority of assessment liens;

- reductions in reserves for maintenance, repair, and replacement of common elements;

- responsibility for maintenance and repairs;

- reallocation of interests in the general or limited common elements or rights to their use (except as provided in Paragraph 8 herein);

- redefinition of any unit boundaries;

- convertibility of units into common elements or vice versa;

- expansion or contraction of the project, or the addition, annexations, or withdrawal of property to or from the project;

- hazard or fidelity insurance requirements;

- imposition of any additional restrictions on the leasing of units;

- imposition of any restrictions on a Unit Owner's right to sell or transfer his or her unit;

- a decision by the Association to establish self-management if professional management had been required previously by Association documents or by an eligible mortgage holder;

-13-

- restoration or repair of the project (after damage or partial destruction) in a manner other than that specified in the documents; or

- any provisions that expressly benefit mortgage holders, insurers or guarantors.

Implied approval by an eligible mortgage holder shall be assumed when an eligible mortgage holder fails to submit a response to any written proposal for an amendment within thirty (30) days after it receives proper notice of the proposal, provided the notice was delivered by certified mail or registered mail with a "return receipt" requested.

This Declaration may further be unilaterally amended by the Declarant for the purpose of recording (1) a verified statement of a registered architect or licensed professional engineer certifying that the plans heretofore filed or being filed simultaneously with such amendment fully depicting the layout, ceiling and floor elevations, unit numbers and dimensions of the units as built; and (2) a certificate by a registered land surveyor stating that the plats or plans accurately depict the legal boundaries and the physical of the units and other improvements relative to those boundaries.

23. RIGHTS OF CONDOMINIUM MORTGAGE HOLDERS, INSURERS or GUARANTORS

Upon receipt of written request by a holder, insurer or guarantor of a mortgage on any unit in the project, the Association shall furnish timely written notice regarding the following:

- any condemnation or casualty loss that affects either a material portion of the project or the unit securing its mortgage;

- any 60-day delinquency in the payment of assessments or charges owed by the Unit Owner of any unit on which it holds the mortgage;

- a lapse, cancellation or material modification of any insurance policy maintained by the Association; and

- any proposed action that requires the consent of a specified percentage of eligible mortgage holders.

Any interested mortgage holder, insurer, or guarantor shall send a written request to the Association stating both its name and address and the unit number or address of the unit on which it has (or insurers or guarantees) the mortgage.

24. SEVERABILITY.

The invalidity of any provisions of the Declaration shall not be deemed to impair or affect in any manner the validity and enforceability or effect the remainder of this Declaration,

-14-

and in such event, all of the other provisions of this Declaration shall continue in full force and effect as if such invalid provisions had never been included herein.

### 25. WAIVER.

No provision contained in this Declaration shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur.

### 26. GOVERNING LAW.

This Declaration and the By-Laws attached hereto shall be construed and controlled by and under the laws of the State of North Carolina.

### 27. DEFINITION.

Any terms used herein which are defined in the North Carolina Condominium Act shall have the meaning specified in the Act unless a contrary intention fairly appears.

IN WITNESS WHEREOF, the Declarant has hereunto set its hand and seal this the day and year first above written.

ARD GROUP, INC. a North Carolina Corporation

By: _____
　　　　　　　　President

(CORPORATE SEAL)

Attest:
By: _____
　　　　　　Secretary

-15-

NORTH CAROLINA

WAKE COUNTY                    BOOK 2233 PAGE 302

I, a Notary Public of the County and State aforesaid, certify that *Emad Fakhoury* personally came before me this day and acknowledged that _he_ is the Secretary of ARD GROUP, INC., a North Carolina Corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its President sealed with its corporate seal and attested by *Emad Fakhoury*, as its Secretary.

WITNESS my hand and seal, this _6th_ day of _April_, 2001.

*Robin Hennessey Butler*
NOTARY PUBLIC

My commission expires:

_2-2-2004_

ROBIN HENNESSEY BUTLER
NOTARY PUBLIC
STATE OF NORTH CAROLINA
DURHAM COUNTY
MY COMMISSION EXPIRES
2-2-2004

g:\closings\presque\declarat.doc

State of North Carolina-Orange County
The foregoing certificate(s) of _____
_____ Robin Hennessey Butler _____

A Notary (Notaries) Public for the Designated Governmental units is(are) certified to be correct. See filing certificates herein.
This the _____ 9th day of _April_ A.D. 2001.
Joyce H. Pearson
Register of Deeds By: *Priscilla D. M*
_____/ Deputy

FILED
09 APR 2001,   at   01:59:26pm
Book 2233, Page 287 - 326
Joyce H. Pearson
Register of Deeds,
Orange County, N. C.

-16-

BOOK 2233 PAGE 303

### EXHIBIT "A"

BEGINNING at control point, said point being the intersection of the western right-of-way line of Sage Road, Chapel Hill Township, Orange County, North Carolina and the northern right-of-way line of Coleridge Drive, Chapel Hill Township, Orange County, North Carolina; running thence S 76 deg. 33 min. 51 sec. W 20.96 feet to an existing iron pipe; running thence along the northern right-of-way line of the said Coleridge Drive along a curve having a radius of 280 feet and a length of 346.17 feet to an existing iron pipe in the northern right-of-way line of Coleridge Drive; running thence N 84 deg. 09 min. 01 sec. W 48.64 feet to an existing iron pipe in the common property line with the eastern line of the property now or formerly owned by Advent Luthern Church, Inc. as described in the Deed recorded in Book 1349, Page 33, Orange County Registry; running thence with the said Advent Lutheran Church, Inc. line N 33 deg. 15 min. 14 sec. W 466.40 feet to an existing iron pipe in the southern right-of-way line of Erwin Road, Chapel Hill Township, Orange County, North Carolina; running thence along the right-of-way line of the said Erwin Road N 42 deg. 53 min. 24 sec. E 434.62 feet to an existing iron pipe; running thence N 51 deg. 06 min. 05 sec. E 40.42 feet to an existing iron pipe; running thence S 88 deg. 02 min. 38 sec. E 29.43 feet to an existing iron pipe; running thence S 45 deg. 39 min. 13 sec. E 40.98 feet to an existing iron pipe; running thence along the western right-of-way line of the said Sage Road along a curve having a radius of 655.00 feet and a length of 324.06 feet to a control point in the western right-of-way line of Sage Road; running thence along the right-of-way line of Sage Road, S 13 deg. 02 min. 01 sec. E 239.04 feet to a control point, said point being the point and place of beginning; all as shown on the map entitled "Presque Isle", prepared by The John R. McAdams Company, Inc., dated September 1, 1998 and recorded in Plat Book 83, Page 162, Orange County Registry.

Declaration of Condominium
Exhibit **B**

Description of Building and Units

Initially, there will be 2 two-story buildings consisting of four (4) residential condominium units of approximately 2156 square feet each, ten (10) units consisting of approximately 1740 square feet each and four (4) units consisting of approximately 1160 square feet, for a total of 18 units. Construction is wood-frame on crawl space with foundation  The exterior will be fiber cement, cultured stone veneer, brick and wood. The roof will be fiber glass shingle. Each unit includes a one-car garage attached to the Building.

Unit Designation and Address

101 Presque Isle Lane, Chapel Hill, North Carolina 27514
102 Presque Isle Lane, Chapel Hill, North Carolina 27514
103 Presque Isle Lane, Chapel Hill, North Carolina 27514
104 Presque Isle Lane, Chapel Hill, North Carolina 27514
105 Presque Isle Lane, Chapel Hill, North Carolina 27514
106 Presque Isle Lane, Chapel Hill, North Carolina 27514
107 Presque Isle Lane, Chapel Hill, North Carolina 27514
108 Presque Isle Lane, Chapel Hill, North Carolina 27514
109 Presque Isle Lane, Chapel Hill, North Carolina 27514
110 Presque Isle Lane, Chapel Hill, North Carolina 27514
501 Presque Isle Lane, Chapel Hill, North Carolina 27514
502 Presque Isle Lane, Chapel Hill, North Carolina 27514
503 Presque Isle Lane, Chapel Hill, North Carolina 27514
504 Presque Isle Lane, Chapel Hill, North Carolina 27514
505 Presque Isle Lane, Chapel Hill, North Carolina 27514
506 Presque Isle Lane, Chapel Hill, North Carolina 27514
507 Presque Isle Lane, Chapel Hill, North Carolina 27514
508 Presque Isle Lane, Chapel Hill, North Carolina 27514

g:\closings\presque\exh-B.CLN



- Additional detached garages/storage units will be assigned
  at a later date.

Declaration of Condominium
Exhibit B2

| Unit Address | Ownersip Interest in Common Areas & Facilities | Estimated Monthly Assessment |
|---|---|---|
| 101 Presque Isle Lane | 3.7829% | $125.00 |
| 102 Presque Isle Lane | 7.0310% | $175.00 |
| 103 Presque Isle Lane | 5.6744% | $150.00 |
| 104 Presque Isle Lane | 5.6744% | $150.00 |
| 105 Presque Isle Lane | 5.6744% | $150.00 |
| 106 Presque Isle Lane | 5.6744% | $150.00 |
| 107 Presque Isle Lane | 5.6744% | $150.00 |
| 108 Presque Isle Lane | 5.6744% | $150.00 |
| 109 Presque Isle Lane | 7.0310% | $175.00 |
| 110 Presque Isle Lane | 3.7829% | $125.00 |
| | | |
| 501 Presque Isle Lane | 3.7829% | $125.00 |
| 502 Presque Isle Lane | 7.0310% | $175.00 |
| 503 Presque Isle Lane | 5.6744% | $150.00 |
| 504 Presque Isle Lane | 5.6744% | $150.00 |
| 505 Presque Isle Lane | 5.6744% | $150.00 |
| 506 Presque Isle Lane | 5.6744% | $150.00 |
| 507 Presque Isle Lane | 7.0310% | $175.00 |
| 508 Presque Isle Lane | 3.7829% | $125.00 |

FILED
08 AUG 2002, at 11:51:32am
Book 2670, Page 258 - 266
Joyce H. Pearson
Register of Deeds,
Orange County, N. C.

BOOK 2670 PAGE 258

Return to: ( ARD Group, Inc.
P.O. Box 31431
Raleigh, NC 27622 )

FIRST AMENDMENT TO
DECLARATION OF CONDOMINIUM
FOR PRESQUE ISLE VILLAS

THIS DECLARATION AMENDMENT, made this 7th day of August, 2002, by ARD GROUP, INC., hereinafter defined as "Declarant", acting pursuant to the provisions of Chapter 47C of the North Carolina General Statutes, as amended (North Carolina Condominium Act); and

WHEREAS, Declarant has previously filed a Declaration of Condominium (the "Declaration") on April 9, 2001, in the Office of the Register of Deeds of Orange County, North Carolina and recorded in Book 2233, Page 287, and in Condominium Book No. 87, Pages 168-186; and

WHEREAS, as reserved and authorized by Sections 1, 8 and 22 of the Declaration, Declarant desires to amend the Declaration as hereinafter set forth so as to (1) add three buildings containing 24 units to the condominium (2) assign an identifying number to each new Unit created; and (3) reallocate the allocated interests among the Units;

NOW, THEREFORE, the Declarant hereby declares that the Declaration be and hereby is amended as follows:

1. Twenty-four (24) new Units are hereby created, and are located as shown on map in Condominium Book No. 87, Pages 168-186 and Book 90, Page(s) 186, Orange County Registry.

2. Attached hereto and by this reference made a part hereof are Supplements to Exhibits B and B2, said Supplements consisting of an amendment to the Description of Building and Units and Unit Designation and Address (Exhibit B), an amendment to page 1 of Exhibit B1 showing additional garages and an amendment to the allocated ownership interest in the common areas and facilities (Exhibit B2). Any reference in the Declaration to Exhibits B, B1 and B2 shall be deemed to refer to Exhibits B, B1 and B2 as amended herein.

FOR MULTIPLE PIN SHEET
SEE BOOK 2670 PAGE 262-268

IN WITNESS WHEREOF, Declarant has executed this instrument the day and year first above written.

ARD GROUP, INC., a North Carolina Corporation

By: Alan Fakhoury

as President

STATE OF NORTH CAROLINA
COUNTY OF WAKE

I, the undersigned, a Notary Public in and for the County and State aforesaid, hereby certify that Alan Fakhoury, did personally appear before me this day and acknowledged that he is President of ARD GROUP, INC., a North Carolina Corporation, and that he, as President, being authorized to do so, executed the foregoing on behalf of the corporation.

Witness my hand and official stamp or seal, this 7th day of August, 2002.

Carla Finley
Notary Public

My Commission Expires: 10|4|02

CARLA FINLEY
NOTARY
PUBLIC
WAKE COUNTY, N.C.

g:\closings\presque\amenddec.doc



Joyce H. Pearson
Register of Deeds
Orange County
North Carolina

State of North Carolina, County of Orange

The foregoing certificate/s of  Carla Finley, Notary/Notaries Public for the Designated
Governmental units is/are certified to be correct.  See filing certificate herein.
This day      August 8, 2002

JOYCE H. PEARSON, REGISTER OF DEEDS By: _Hewitt Benadum_____

Deputy/Assistant Register of Deeds

## Supplement to Exhibit B of Original Declaration of Condominium for Presque Isle Villas (1st Amendment)

### Description of Building and Units

Three new two-story buildings will be added to the initial 2 two-story buildings as described in the original Declaration of Condominiums. As such, there will be a total of 5 two-story buildings consisting of: two (2) residential condominium units of approximately 1,320 square feet each; two (2) units consisting of approximately 1,275 square feet each; four (4) units consisting of approximately 2,156 square feet each; four (4) units consisting of approximately 1,704 square feet each; four (4) units consisting of approximately 1,740 square feet each; six (6) units consisting of approximately 1,343 square feet each; six (6) units consisting of approximately 2,308 square feet each; six (6) units consisting of approximately 1,789 square feet each; and, six (6) units consisting of approximately 1,813 square feet each; for a total of 42 units. Construction is wood-frame on crawl space with foundation. The exterior will be fiber cement, cultured stone veneer, brick and wood. The roof will be fiber glass shingle. Each unit includes a one-car garage attached to the building.

### Unit Designation and Address

101 Presque Isle Lane, Chapel Hill, North Carolina 27514
102 Presque Isle Lane, Chapel Hill, North Carolina 27514
103 Presque Isle Lane, Chapel Hill, North Carolina 27514
104 Presque Isle Lane, Chapel Hill, North Carolina 27514
105 Presque Isle Lane, Chapel Hill, North Carolina 27514
106 Presque Isle Lane, Chapel Hill, North Carolina 27514
107 Presque Isle Lane, Chapel Hill, North Carolina 27514
108 Presque Isle Lane, Chapel Hill, North Carolina 27514
109 Presque Isle Lane, Chapel Hill, North Carolina 27514
110 Presque Isle Lane, Chapel Hill, North Carolina 27514
201 Presque Isle Lane, Chapel Hill, North Carolina 27514
202 Presque Isle Lane, Chapel Hill, North Carolina 27514
203 Presque Isle Lane, Chapel Hill, North Carolina 27514
204 Presque Isle Lane, Chapel Hill, North Carolina 27514
205 Presque Isle Lane, Chapel Hill, North Carolina 27514
206 Presque Isle Lane, Chapel Hill, North Carolina 27514
207 Presque Isle Lane, Chapel Hill, North Carolina 27514
208 Presque Isle Lane, Chapel Hill, North Carolina 27514
301 Presque Isle Lane, Chapel Hill, North Carolina 27514
302 Presque Isle Lane, Chapel Hill, North Carolina 27514
303 Presque Isle Lane, Chapel Hill, North Carolina 27514

(continued on next page)

304 Presque Isle Lane, Chapel Hill, North Carolina 27514
305 Presque Isle Lane, Chapel Hill, North Carolina 27514
306 Presque Isle Lane, Chapel Hill, North Carolina 27514
307 Presque Isle Lane, Chapel Hill, North Carolina 27514
308 Presque Isle Lane, Chapel Hill, North Carolina 27514
401 Presque Isle Lane, Chapel Hill, North Carolina 27514
402 Presque Isle Lane, Chapel Hill, North Carolina 27514
403 Presque Isle Lane, Chapel Hill, North Carolina 27514
404 Presque Isle Lane, Chapel Hill, North Carolina 27514
405 Presque Isle Lane, Chapel Hill, North Carolina 27514
406 Presque Isle Lane, Chapel Hill, North Carolina 27514
407 Presque Isle Lane, Chapel Hill, North Carolina 27514
408 Presque Isle Lane, Chapel Hill, North Carolina 27514
501 Presque Isle Lane, Chapel Hill, North Carolina 27514
502 Presque Isle Lane, Chapel Hill, North Carolina 27514
503 Presque Isle Lane, Chapel Hill, North Carolina 27514
504 Presque Isle Lane, Chapel Hill, North Carolina 27514
505 Presque Isle Lane, Chapel Hill, North Carolina 27514
506 Presque Isle Lane, Chapel Hill, North Carolina 27514
507 Presque Isle Lane, Chapel Hill, North Carolina 27514
508 Presque Isle Lane, Chapel Hill, North Carolina 27514



Amendment to
Declaration of Condominium
Exhibit B1
(Page 1 of 2)

Amendment to
Declaration of Condominium
Exhibit B1
(Page 1 of 2)



**Supplement to Exhibit B2 of Original Declaration of Condominium for Presque Isle Villas (1st Amendment)**

| Unit Address | Ownership Interest in Common Areas & Facilities |
|---|---|
| 101 Presque Isle Lane | 1.7686% |
| 102 Presque Isle Lane | 2.8888% |
| 103 Presque Isle Lane | 2.2832% |
| 104 Presque Isle Lane | 2.3314% |
| 105 Presque Isle Lane | 2.3314% |
| 106 Presque Isle Lane | 2.3314% |
| 107 Presque Isle Lane | 2.3314% |
| 108 Presque Isle Lane | 2.2832% |
| 109 Presque Isle Lane | 2.8888% |
| 110 Presque Isle Lane | 1.7083% |
| | |
| 201 Presque Isle Lane | 1.7995% |
| 202 Presque Isle Lane | 3.0925% |
| 203 Presque Isle Lane | 2.3971% |
| 204 Presque Isle Lane | 2.4292% |
| 205 Presque Isle Lane | 2.4292% |
| 206 Presque Isle Lane | 2.3971% |
| 207 Presque Isle Lane | 3.0925% |
| 208 Presque Isle Lane | 1.7995% |
| | |
| 301 Presque Isle Lane | 1.7995% |
| 302 Presque Isle Lane | 3.0925% |
| 303 Presque Isle Lane | 2.3971% |
| 304 Presque Isle Lane | 2.4292% |
| 305 Presque Isle Lane | 2.4292% |
| 306 Presque Isle Lane | 2.3971% |
| 307 Presque Isle Lane | 3.0925% |
| 308 Presque Isle Lane | 1.7995% |
| | |
| 401 Presque Isle Lane | 1.8598% |
| 402 Presque Isle Lane | 3.0925% |
| 403 Presque Isle Lane | 2.3971% |
| 404 Presque Isle Lane | 2.4292% |
| 405 Presque Isle Lane | 2.4292% |
| 406 Presque Isle Lane | 2.3971% |
| 407 Presque Isle Lane | 3.0925% |
| 408 Presque Isle Lane | 1.7995% |

(continued on next page)

| Unit Address | Ownership Interest in Common Areas & Facilities |
|---|---|
| 501 Presque Isle Lane | 1.7686% |
| 502 Presque Isle Lane | 2.8888% |
| 503 Presque Isle Lane | 2.2832% |
| 504 Presque Isle Lane | 2.3314% |
| 505 Presque Isle Lane | 2.3314% |
| 506 Presque Isle Lane | 2.2832% |
| 507 Presque Isle Lane | 2.8888% |
| 508 Presque Isle Lane | 1.7083% |