From: **Hayden Rose** <hayden.rose@yahoo.com>
Date: Wed, Sep 8, 2021, 3:39 AM
Subject: Re: Re:[## 214060 ##] Re: Presque-deck access-URGENT-Please reply
To: Emma Chapman <csr@communityassociationmanagement.com>, mganley@bhspa.com <mganley@bhspa.com>, tomasz.zola@yahoo.com <tomasz.zola@yahoo.com>, zmijka2001@yahoo.com <zmijka2001@yahoo.com>, difoltz1958@gmail.com <difoltz1958@gmail.com>, dgreene@communityassociationmanagement.com <dgreene@communityassociationmanagement.com>

Dear Community Association Management, Michael Ganley, and Presque Isle Villas Board of Directors,

I hate to continue to create difficulties, but I need to address two issues about this project. Since I have had a hard time getting a meaningful response in the past, I am going to cast a wide net here in case anyone can help. Apologies to anyone who did not need to be included.

The first issue is damages that occurred after the management company provided workers unauthorized access to my unit.

Even though I have been out of town for the last few months, I wanted to meet my obligations to give the HOA access for repair work. I gave the management company the lockbox code to my unit with the belief the HOA would take responsibility for their agents, as is required by North Carolina's Condominium Act (see i.e § 47C-3-107(c)). After I provided the entry code, the management company told me the workers would be unsupervised and that the HOA would not take responsibility for their actions. They asked me to agree to this in writing. They repeatedly told me that if I did not agree in writing, they would not give the workers the access code and that I could instead have someone meet the workers at the property. I did not agree to these terms and was working with the management company on a time for someone to meet the workers at the property.

I found out later that, while it was coordinating with me on a time, the management company had already given the workers unauthorized access to my home. Even after the work was completed, the management company did not tell me they had given the workers the code to my home and instead continued to negotiate a time with me for our house-sitter to come to the property.
During the workers' unauthorized, unsupervised access, the power to our aquarium filters was cut. I understand from our house-sitter that a breaker was tripped and not reset. Without the filters, our fish were killed by an ammonia buildup that burnt their gills until they could not breathe. We lost numerous fish that we had kept for several years, including three endangered fish.
The house-sitter reported possible additional damage to the unit. I did not give anyone the code to the lockbox other than the house-sitter and the management company. Those fish were our pets, and my girlfriend is very upset about the manner of their deaths.
Once we are back in town, we will survey for any additional damage. At a minimum, I expect to be reimbursed for the replacement cost of the fish and the cost of the house-sitter (who my girlfriend hired solely to keep the fish alive).
The second issue is the validity of the assessment against my unit and the lack of any meaningful efforts to resolve this situation by either the management company or their attorney.
Presque's declaration defines the decks as a limited common element. The declaration makes the HOA responsible "for maintenance, painting, repair and replacement" of the limited common elements. As a general rule, North Carolina's Condominium Act also makes the Association financially responsible for the cost of repairing and maintaining limited common elements.
In his only correspondence about this issue, the HOA's attorney, Michael Ganley, justified the assessment by quoting from an exception to the general rule that is found in § 47C-3-115(c)(1). Mr. Ganley's letter partially quoted this subsection in a way that misrepresented this narrow and inapplicable exception as the controlling rule. The text of this subsection is below. Mr. Ganley's letter quoted only the bolded parts and omitted the key parts of this subsection that are struck through.
~~To the extent required by the declaration:~~

**(1) Any common expense associated with the maintenance, repair, or replacement of a limited common element must be assessed against the units to which that limited common element is assigned**, ~~equally, or in any other proportion that the declaration provides;~~

EXHIBIT N

When the area of the subsection Mr. Ganley quoted is read together with the omitted section, as opposed to in isolation, it is clear that an assessment against an individual unit owner under § 47C-3-115(c) is only valid if it is explicitly required by the condo's declaration. Otherwise, any expense associated with a limited common element is a common expense to be assessed against all unit owners as provided in § 47C-3-115(b).

Presque's declaration assigns responsibility for limited common elements to the HOA. It does not require individual owners to pay.

As we previously shared with Mr. Ganley and the management company, every authority we reviewed disagreed with Mr. Ganley and supported the plain reading of this subsection. These authorities include the author of the North Carolina Bar Association's publication *Common Interest Communities in North Carolina*, Official Comment 1 to N.C.G.S. § 47C-2-108, and all three appellate court opinions that interpreted the language of this subsection.

As one court summarized, "[f]or the exceptions [Mr. Ganley cited] to apply, a condominium's declaration must explicitly provide for them. As a result, if a condominium's declaration does not provide for limited common assessments, it may not impose assessments for limited common areas against individual homeowners."

I am sure Mr. Ganley's omission was an honest mistake. However, we never received any additional communication from him after pointing this out and the management company has refused each of my efforts to resolve this dispute without litigation.

They have refused to have Mr. Ganley review this issue again. They have declined to provide any valid justification for the assessment. They have not removed the assessment from my account. They have refused to accept payment with the agreement that they will return the assessment if it is later determined to be invalid, which would have allowed this issue to be resolved in Small Claims Court.

There will be no circumstance where I am willing to pay an invalid assessment. If the management company cannot provide a valid justification for the assessment and is unwilling to otherwise resolve this issue, my only remaining option will be to hire a local attorney to litigate this issue once I am back in town.

Because the management company threatened to file a lien against my property over this matter and because there are violations of both the statute and the condo's declaration, I believe I (and any other similarly situated owner that wanted to join me) would likely recover attorney fees if this goes to litigation. This was the result for the prevailing owners in the cases about this issue that I previously shared with Mr. Ganley and the management company.

However, I would strongly prefer to avoid a scenario where the HOA incurs significant legal expenses that will be passed on to all unit owners, which is why I wanted to make everyone aware of this situation before anything escalates any further.

If anyone is willing to work with me on either of these issues, please contact me as soon as you can.
Thank you.

Hayden Rose
Unit 308