EXHIBIT "D"
~~TO PUBLIC OFFERING STATEMENT~~

# BY-LAWS
# OF

## PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, INC.

### ARTICLE I

#### Offices

Article 1. Plan of Unit Ownership. The property located in Orange County, North Carolina, and more particularly described in the Declaration to which By-Laws are attached (hereinafter "Declaration") has been submitted to the provisions of Chapter 47C of the North Carolina General Statutes entitled "North Carolina Condominium Act." The Declaration is being recorded in the Office of the Register of Deeds of Orange County, North Carolina.

Section 2. Applicability of By-Laws. The provisions of these By-Laws are applicable to the property of the condominium and to the use and occupancy thereof. The term "property" as herein used shall include the land, the building and all other improvements and structures thereon and all easements, rights and appurtenances belonging thereto, all of which are intended to be submitted to the provisions of Chapter 47C of the North Carolina General Statutes.

Section 3. Application. All present and future owners, mortgagees, lessees, occupants of units and employees of owners and tenants and their families and any other persons who may use the facilities of the property in any manner are subject to the Declaration, these By-Laws and rules and regulations made pursuant hereto and any amendment to these By-Laws upon same being passed and duly set forth in Amended Declaration, duly recorded.

The acceptance of a deed of conveyance or the entering into of a lease or the act of occupancy of a unit shall constitute an agreement that these By-Laws and provisions of the Declaration as they may be amended from time to time, are accepted, ratified, and will be complied with.

### ARTICLE II

#### Unit Owners

Section 1. Organizational Meeting. The initial meeting of the Association shall be held on the date and time designated by Declarant.

Section 2. Annual Meetings. The annual meeting of the Unit Owners for the election of directors and for the transaction of such other business as may properly come before the meeting shall be held in December in each year, commencing with the year 2001. Unless otherwise scheduled, the Unit Owners shall vote at each annual meeting to ratify the proposed annual budget for the Association for the following year.



EXHIBIT 1

Section 3. Substitute Annual Meeting. If the annual meeting shall not be held when designated by these By-Laws, a substitute annual meeting may be called in the manner provided for the call of a special meeting in accordance with the provisions of Section 4 of this Article II and a substitute annual meeting so called shall be designated as and shall be treated, for all purposes, as the annual meeting.

Section 4. Special Meetings. Special meetings of the Unit Owners may be called at any time by the President, a majority of the members of the Board of Directors, or upon the written request of Unit Owners having at least 30% of the votes in the Association.

Section 5. Place of Meetings. All meetings of Unit Owners shall be held at Chapel Hill, North Carolina at such place within the Town of Chapel Hill as may be designated in the Notice of Meeting.

Section 6. Notice of Meetings. Written or printed notices stating the time and place of a meeting of Unit Owners and the items on the agenda shall be delivered or mailed not less than ten (10) or more than thirty (30) days prior to the date of such meeting to each person entitled to vote at such meeting.

In case of a substitute annual meeting, notice of the meeting need not specifically state the business to be transacted thereat unless it is a matter other than the election of the Board of Directors on which the vote of the Unit Owners is expressly required by the provisions of the North Carolina Condominium Act. In the case of a special meeting, the notice of meeting shall specifically state the purpose or purposes for which the meeting is called.

Section 7. Quorum. A quorum shall be deemed present throughout any meeting of the Unit Owners until adjourned if the Unit Owners, in person or by proxy, entitled to cast more than one-quarter of the votes are present at the beginning of such meeting.

Section 8. Voting Rights. There shall be one person with respect of each Unit who shall be entitled to vote at any meeting of the Unit Owners. Such person shall be known and hereafter referred to as a "Voting Member". Such Voting Member may be the Unit Owner or some other person designated by such Unit Owner to act as proxy on his or their behalf and who need not be a Unit Owner. Such designation shall be made in writing to the Board and shall be revocable at any time by actual notice to the Board of the death or judicially declared incompetence of any designator, or by written notice to the Board by the Unit Owner or Owners. The total number of votes of all Voting Members shall be equal to the total number of units completed at the date of such meeting and the Unit Owner of each Unit shall possess one vote. An owner of more than one Unit shall possess one vote for each Unit owned.

Section 9. Unit Owners. "Unit Owners" shall mean and refer to those persons who own units in the property subject to the Declaration and are entitled to membership as provided in the Declaration.

-2-

Section 10. Voting. In all elections for members of the Board of Directors, each Voting Member shall be entitled to vote on a non-cumulative voting basis and the candidates receiving the highest number of votes with respect to the offices to be filled shall be deemed to be elected.

Section 11. Proxies. The votes pertaining to any condominium unit may (and shall in the case of any Unit Owner not a natural person or persons) be cast pursuant to a proxy or proxies duly executed by or on behalf of the Unit Owner, or in cases where the Unit Owner is more than one person, by or on behalf of all such persons. No such proxy shall be revocable except as written notice delivered to the Association by the Unit Owner or by any other such person. Any proxy shall be void if it is not dated or if it purports to be revocable without notice as aforesaid.

Section 12. Presiding Officer. The President, or in his absence, the Vice-President, shall serve as a chairman of every Unit Owner's meeting unless some other person is elected to serve as Chairman by a majority vote of the votes represented at the meeting. The Chairman shall appoint such persons as he deems required to assist with the meeting.

Section 13. Adjournments. Any meeting of the Unit owners, whether or not a quorum is present, may be adjourned by the holders of a majority of the votes represented at the meeting to reconvene at a specified time or place. It shall not be necessary to give any notice of the reconvened meeting or of the business to be transacted, if the time and place of the reconvened meeting are announced at the meeting which was adjourned. At any such reconvened meeting at which a quorum is represented or present, any business may be transacted which could have been transacted at the meeting which was adjourned.

Section 14. Action of Unit Owners Without a Meeting. Any action which may be taken at a meeting of the Unit Owners may be taken without a meeting if written approval and consent, setting forth the action authorized, shall be signed by a majority of the Unit Owners entitled to vote on the date on which the last Unit Owners signed such approval and upon the filing of such approval and consent with the Secretary of the Association. Such approval and consent so filed shall have the same effect as a unanimous vote of the Unit Owners at a special meeting called for the purpose of considering the action authorized, except in those specific matters for which a vote greater than a majority vote is required by the North Carolina Condominium Act.

Section 15. Availability of Project Documents. The Association shall assure that current copies of the Declaration, Articles of Incorporation, By-Laws, and other rules concerning the project as well as its own books, records, and financial statements are readily available for inspection by Unit Owners or by holders, insurers, and guarantors of first mortgages that are secured by units in the project. These documents will be available during normal business hours.

Section 16. Availability of Audited Financial Statements. Once the Association has been established for a minimum of one full fiscal year, the Association shall provide for the

Case 1:22-cv-00478-WO-JEP   Document 9-20   Filed 08/02/22   Page 3 of 13

availability of an audited statement for the preceding fiscal year to the holder, insurer, or guarantor of any first mortgage that is secured by a unit in the project on submission of a written request for it, at the expense of the entity making the request.

Section 17. Termination of Legal Status. Following substantial destruction or condemnation of the property, any action by the Association to terminate the legal status of the project shall be agreed to by Unit Owners who represent at least 80% of the total allocated votes in the Association and by eligible mortgage holders who represent at least 51% of the votes of unit estates that are subject to mortgages held by eligible holders.

Any action by the Association to terminate the legal status of the project for reasons other than substantial destruction or condemnation of the property shall be agreed to by Unit Owners who represent at least 80% of the total allocated votes in the Association and by eligible mortgage holders who represent at least 51% of the votes of unit estates that are subject to mortgages held by eligible holders.

Implied approval by an eligible mortgage holder shall be assumed when an eligible mortgage holder fails to submit a response to any written proposal for an amendment within thirty (30) days after it receives proper notice of the proposal, provided the notice was delivered by certified mail or registered mail with a "return receipt" requested.

Section 18. Rights of Action. The Association, and any aggrieved Unit Owner, shall have the right of action against Unit Owners who fail to comply with the provisions of the project Declaration, By-Laws, Articles of Incorporation and other rules properly enacted by the Association. Unit estate owners shall also be granted similar rights of action against the Association.

Section 19. Rights of Condominium Mortgage Holders, Insurers or Guarantors. Upon receipt of written request by a holder, insurer or guarantor of a mortgage on any unit in the project, the Association shall furnish timely written notice regarding the following:

- any condemnation or casualty loss that affects either a material portion of the project or the unit securing its mortgage;

- any 60-day delinquency in the payment of assessments or charges owed by the Unit Owner of any unit on which it holds the mortgage;

- a lapse, cancellation or material modification of any insurance policy maintained by the Association; and

- any proposed action that requires the consent of a specified percentage of eligible mortgage holders.

-4-

Any interested mortgage holder, insurer, or guarantor shall send a written request to the Association stating both its name and address and the unit number or address of the unit on which it has (or insurers or guarantees) the mortgage.

## ARTICLE III

### Board of Directors

Section 1. General Powers. The property, affairs and business of the Association shall be managed by the Board of Directors.

Section 2. Number, Term of Office and Qualifications. The number of directors shall be no more than five (5) nor less than three (3), to be elected by the Unit Owners at their initial meeting. Each director shall hold office for one year or until his death, resignation, retirement, removal or disqualification or his successor is elected and qualifies.

Section 3. Election of Directors. Except as provided in Section 2 of this Article, the directors shall be elected at the annual meeting of Unit Owners and the persons who shall receive the highest number of votes shall be the elected directors.

Section 4. Removal of Directors. The Board of Directors or any individual director may be removed from office with or without cause by a vote of 67% of the Unit Owners present and entitled to vote at a meeting in which a quorum is present. If any such directors are so removed, new directors may be elected at the same meeting.

Section 5. Vacancies. A vacancy in the Board of Directors created by reason of the removal of a director may be filled for the unexpired term, and until the Unit Owners shall have elected a successor, by affirmative vote of a majority of the directors remaining in office.

Section 6. Compensation of Directors. Directors shall not receive compensation for their services as directors. A director may serve the Association in a capacity other than that of director and receive compensation as determined by the Board of Directors for services rendered in that other capacity.

Section 7. Powers and Duties. The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the condominium and may do all such acts and things except such acts as by law or by the Declaration or by these By-Laws may not be delegated to the Board of Directors. The powers and duties shall include but not be limited to the following:

(a) Operation, care, upkeep and maintenance of the common areas and facilities.

Case 1:22-cv-00478-WO-JEP Document 9-20 Filed 08/02/22 Page 5 of 13

(b) Determination of the common expenses required for the affairs of the condominium, including without limitation, the operation and maintenance of the property.

(c) Levying and collection of the common charges from Unit Owners.

(d) Employment and dismissal of the personnel necessary for the maintenance and operation of the common areas and facilities.

(e) The adoption and amendment of such reasonable rules and regulations as it may deem advisable for the maintenance, conservation and beautification of the property, and for the health, comfort, safety and general welfare of the owners and occupants of the property. Written notice of such rules and regulations shall be given to all owners and occupants and the entire property shall at all times be maintained subject to such rules and regulations.

(f) Opening of bank accounts on behalf of the Association and designated signatories required therefore.

(g) Making of repairs, additions, improvements to or alterations to the property and repairs to and restoration of the property in accordance with the other provisions of these By-Laws and the Declaration, after damage or destruction by fire or other casualty, or as a result of condemnation or eminent domain proceedings.

(h) Procure insurance as required by the Declaration.

(i) Pay ad valorem taxes and public assessments levied against the common areas and facilities.

Section 8. Managing Agent. The Board of Directors for the Association may engage the services of any person, firm, or corporation to act as managing agent at compensation established by the Board, to perform such duties and services as the Board of Directors shall authorize. The Board may delegate to the Managing Agent all of the powers granted to the Board of Directors by these By-Laws other than the powers in Section 7(d) and Section 7(e) of this Article.

## ARTICLE IV

### Meetings of Directors

Section 1. Regular Meeting. A regular meeting of the Board of Directors may be held immediately after the annual meeting of Unit Owners and if not then shall be held within a reasonable time thereafter.

Case 1:22-cv-00478-WO-JEP Document 9-20 Filed 08/02/22 Page 6 of 13

Section 2. Special Meetings  Special meetings of the Board of Directors may be called by or at the request of the President or any two (2) directors.

Section 3. Place of Meetings.  All meetings of the Board of Directors shall be held at any place within Orange County, North Carolina as the Board of Directors may from time to time be established for regular meetings or as set forth in a duly executed waiver of notice of such meeting or as may be otherwise agreed upon in advance of the meeting by a majority of the directors.

Section 4. Notice of Meetings.  Regular meetings of the Board of Directors may be held without notice.  Special meetings shall be called on not less than five (5) days prior notice.  Notice of a special meeting need not state the purpose thereof and such notice shall be directed to each director at his residence or usual place of business by mail, cable, telegram, facsimile or may be delivered personally.  The presence of a director at a meeting shall constitute a waiver of notice of that meeting except only when such director attends the meeting solely for the purpose of objecting to the transaction of any business thereat, on the ground that the meeting has not been lawfully called, and does not otherwise participate in such meeting.

Section 5. Quorum and Manner of Acting.  A quorum shall be deemed present throughout any meeting of the Board of Directors if persons entitled to cast one-half of the votes in that body are present at the beginning of the meeting.

Section 6. Vote Required for Action.  Except as otherwise provided in this section, the act of a majority of the directors present at the meeting at which a quorum is present at the time shall be the act of the Board of Directors.  Vacancies in the Board of Directors may be filled as required in Article III, Section 5 of these By-Laws.

Section 7. Action by Directors Without Meeting.  Any action required or permitted to be taken at a meeting of the Board of Directors may be taken without a meeting if a written consent thereto shall be signed by all the directors and such written consent is filed with the minutes of the proceedings of the Board.  Such consent shall have the same force and effect as a unanimous vote of the Board of Directors.

Section 8. Adjournments.  A meeting of the Board of Directors without a quorum present may be adjourned by majority of the directors present to reconvene at a specific time and place.  It shall not be necessary to give notice of the reconvened meeting or of the business to be transacted, other than by announcement at the meeting which was adjourned.  At any such reconvened meeting at which a quorum is present, any business may be transacted which could have been transacted at the meeting which was adjourned.

Section 9. Minutes.  The Board shall keep written minutes of its proceedings.

Section 10. Liability.  The members of the Board of Directors shall not be liable to the Unit Owners for any mistake of judgment, negligence, or otherwise except for their own

-7-

individual willful misconduct or bad faith. It is intended that the members of the Board of Directors shall have no personal liability with respect to any contract made by them on behalf of the Association, except to the extent they are Unit Owners. It is also intended that the liability of any Unit Owner arising out of any contract made by the Board of Directors or out of the aforesaid indemnity in favor of the members of the Board shall be limited to such proportion of the total liability thereunder as his interest in the common areas and facilities. Every agreement made by the Board or by the managing agent on behalf of the Association shall incorporate by reference all of the terms and provisions of the said Declaration and these By-Laws. Each Unit Owner's liability thereunder shall be limited to such proportion of the total liability thereunder as his interest in the common areas and facilities bears to the interest of all Unit Owners in the common areas and facilities.

## ARTICLE V

### Officers

Section 1. Number of Officers. The Association's officers shall be a President, Vice-President, Secretary-Treasurer, and such other officers as may be appointed in accordance with the provisions of Section 3 of this Article V. Any two (2) offices or more may be held by one (1) person, except the offices of President and Secretary, but no officer shall sign or execute any document in more than one (1) capacity.

Section 2. Election, Term of Office and Qualifications. Each officer shall be chosen by the Board of Directors and shall hold office at the will of the Board of Directors until their successors have been elected and have been qualified or until their earlier death, resignation, removal, retirement or disqualification. The officers need not be Unit Owners.

Section 3. Removal. Any officer may be removed, either with or without cause, by vote of a majority of the whole Board of Directors at any meeting with respect to which notice of such purpose has been given to the members thereof.

Section 4. Resignations. Any officer may resign at any time by giving written notice to the Board of Directors or to the Association's President or Secretary. Any such resignation shall take effect upon its being accepted by the Board of Directors.

Section 5. Vacancies. A vacancy in any office because of death, resignation, removal or disqualification, or any other cause, shall be filled for the unexpired portion of the term in the manner prescribed by these By-Laws for regular appointments or elections to such offices.

Section 6. President. The President shall be the chief executive officer and subject to the instructions of the Board of Directors, shall have general charge of the Association's business, affairs and property and control over its other officers, agents and employees. He shall preside at all meetings of the Unit Owners and of the Board of Directors at which he may

be present. The President shall do and perform such other duties as from time to time may be assigned to him by the Board of Directors.

Section 7. Vice President. At the request of the President, or in his absence or disability, the Vice President shall perform all the duties of the President and when so acting shall have all the powers of and be subject to all restrictions upon the President. The Vice President shall perform such other duties and have such other authority as from time to time may be assigned to him by the Board of Directors.

Section 8. Secretary. The Secretary shall keep the minutes of the meetings of Unit Owners and the Board of Directors, and shall see that all notices are duly given in accordance with the provisions of these By-Laws or as required by the provisions of N.C. G. S. Chapter 47C. He shall be custodian of the Association's records, books, reports, statements, certificates and other documents and of the Association's seal, and see that the seal is affixed to all documents requiring such seal. He shall prepare, execute, certify, and record amendments to the Declaration on behalf of the Association. In general, he shall perform all duties and possess all authority incident to the office of Secretary, and he shall perform such other duties and have such other authority as from time to time may be assigned to him by the Board of Directors.

Section 9. Assistant Secretary. The Assistant Secretary, if such an officer is appointed by the Board of Directors, shall be authorized to attest to all documents on behalf of the Association and affix the Association's seal thereto. His duties shall be ministerial only and limited to executing all documents in proper corporate form as from time to time may be necessary.

Section 10. Treasurer. The Treasurer shall have supervision over the Association's funds, receipts and disbursements of the Association. He shall keep full and accurate accounts of the Association's finances in accordance with generally accepted accounting principles and in accordance with the provisions of N.C.G.S. Chapter 47C. The Treasurer shall make reports of same to the Board of Directors. The Treasurer shall perform all duties that may be assigned to him from time to time by the Board of Directors. The reports and records of the Association shall be available for inspection by the Unit Owners and duly authorized agents or attorneys of Unit Owners at convenient hours of working days. The Treasurer shall require that an outside audit be conducted at least once a year on the books and records of the Association.

Section 11. Duties of Officers May Be Delegated. In case of the absence of any officer of the Association or for any other reason that the Board may deem sufficient, the Board may delegate the powers or duties of such officer to any other officer or to any director for the time being provided a majority of the entire Board of Directors concurs therein.

Section 12. Salaries of Officers. Officers shall not be compensated on a regular basis for the usual and ordinary services rendered to the Association incident to the offices held by such officers.

-9-

Section 13. Indemnification. To the extent permitted by the North Carolina Nonprofit Corporation Act in effect at the applicable times, each officer is hereby indemnified by the Association with respect to any liability and expense of litigation arising out of activities as an officer.

## ARTICLE VI

### Fiscal Management

Section 1. Determination of Common Expenses and Fixing of Common Charges.
The Board of Directors shall, from time to time and at least annually, prepare a budget for the Association and determine the amount of the common charges payable by the Unit Owners to meet common expenses of the condominium and allocate and assess such common charges among the Unit Owners according to their respective common interests. A common expense shall include among other things, the cost of all insurance premiums and all policies of insurance required to be or which have been obtained by the Board of Directors, ad valorem taxes, sewer charges, and assessments for public improvements. The common expenses may also include such amounts as the Board of Directors may deem proper for the operation and maintenance of the property, for the condominium, and for a general operating reserve, for reserve fund replacements, and to make up any deficit in the common expenses for any prior year. Any increase in the monthly common charge that exceeds 10% per annum will require the consent of a majority of all Unit Owners, within thirty (30) days of the adoption thereof.

The Board of Directors shall advise all Unit Owners promptly in writing of the amount of common charges payable by each of them respectively as determined by the Board of Directors and shall furnish copies of each budget on which such common charges are based- to all Unit Owners.

Section 2. Payment of Common Charges. All Unit Owners shall be obligated to pay the common charges assessed by the Board of Directors pursuant to the provisions of Section 1 of Article VI at such time or times as the Board shall determine.

Section 3. Collection of Assessments. The Board of Directors shall assess the common charges against the Unit Owners from time to time and shall take prompt action to collect any common charge due for any Unit Owner which remains unpaid for more than thirty days from the date due.

Section 4. Default in Payment of Common Charges. In the event of default by any Unit Owner in paying to the Board of Directors the common charges as determined by the Board, each Unit Owner shall be obligated to pay interest at the legal rate on such common charges from the date due thereof together with all expenses, including attorney's fees incurred by the Board in any proceeding to collect such unpaid common charges.

-10-

<">BOOK 2233 PAGE 324

In any action brought by the Board to foreclose on a unit because of unpaid common charges, the Unit Owner shall be required to pay a reasonable rental for the use of such unit and the plaintiff in such foreclosure shall be entitled to the appointment of a receiver to collect the same. The Board acting on behalf of all Unit Owners, or on behalf of one or more individual owners, shall have the power to purchase such unit at the foreclosure sale and to acquire, hold, lease, mortgage, convey or otherwise deal with same, subject to applicable restrictions of record,

Section 5. Maintenance and Repair. All maintenance and repair to any unit, structural or nonstructural, ordinary or extraordinary, and maintenance of and repairs and replacements to the common areas and facilities contained therein shall be made by the Board and charged to all Unit Owners as a common expense.

Section 6. Utility Expense. The Board shall own and be responsible for the repair, maintenance, and upkeep of all equipment such as heating and air conditioning equipment which serve the common areas. Unit Owners shall be individually responsible for the repair, maintenance and upkeep of all equipment such as hot water heaters and heating and air conditioning equipment which exclusively serves their unit.

Section 7. Additions and Alterations. No Unit Owner shall make any structural addition, alteration or improvement in or to his unit without the prior written consent by the Board. The Board shall have the obligation to answer any written request by a Unit Owner for consideration of a proposed structural addition, alteration or improvement brought by a Unit Owner. Failure to do so within forty-five days from the day on which the written request shall first have been made to the Board shall constitute a consent by the Board to the proposed addition, alteration or improvement.

Section 8. Right of Access. All Unit Owners shall grant a right of access to his unit to the Board or their designee for the purpose of making inspections or for the purpose of correcting any condition originating in his unit and threatening another unit or common area or facility, or for the purpose of performing installations, alterations, replacement, or repairs to common areas and facilities in the unit or elsewhere in the building. In case of emergencies such right of entry shall be immediate whether the Unit Owner is present at the time or not.

Section 9. Rules of Conduct. Rules and regulations concerning the use of the units and the common areas and facilities may be promulgated by and amended by the Board from time to time. Copies of such rules and regulations shall be furnished by the Board to each Unit Owner on request.

Section 10. Working Capital Fund. The Association shall establish a working capital fund to meet unforeseen expenditures or to purchase any additional equipment or services. The working capital fund shall be funded initially by the payment by each Unit Owner of an initial payment to the Association of two months estimated monthly assessment for each unit. Any amounts paid into this fund shall not be considered advance payments of regular assessments.

-11-

Case 1:22-cv-00478-WO-JEP   Document 9-20   Filed 08/02/22   Page 11 of 13

## ARTICLE VII

### Amendment of By-Laws

Section 1. For a period no longer than twenty four (24) months after the initial filing of these By-laws in the Orange County Registry, the Declarant may unilaterally amend these By-Laws without the consent or approval of other Unit Owners or eligible mortgage holders provided such amendment shall be exclusively for the purpose of correcting clerical errors or making changes other than material changes, as defined below, to these By-Laws. Otherwise, these By-Laws may be amended by a vote of Unit Owners owning in the aggregate at least a 75% undivided interest in the Common areas and facilities cast in person or by proxy at a meeting held in accordance with the provisions of the By-Laws. No such amendment shall be effective until set forth in an amended declaration and duly recorded in the Office of the Register of Deeds in Orange County, North Carolina. Upon recording, all the Unit Owners and their successors and assigns, shall be bound by said amendments.

Section 2. Amendments of a Material Nature to By-Laws. Amendments of a material nature shall be agreed to by Unit Owners who represent at least two-thirds of the total allocated votes in the Association and by eligible mortgage holders who represent at least 51% of the votes of unit estates that are subject to mortgages held by eligible holders. Unit Owner votes may be cast in person or by proxy at a meeting held in accordance with the provisions of the By-Laws. No such amendment shall be effective until set forth in an amended declaration and duly recorded in the Office of the Register of Deeds in Orange County, North Carolina. Upon recording, all the Unit Owners and their successors and assigns, shall be bound by said amendments.

A material change shall be considered as one defined in Paragraph 21 of the Declaration:

Implied approval by an eligible mortgage holder shall be assumed when an eligible mortgage holder fails to submit a response to any written proposal for an amendment within thirty (30) days after it receives proper notice of the proposal, provided the notice was delivered by certified mail or registered mail with a "return receipt' requested.

## ARTICLE VIII

### Compliance

Section 1. These By-Laws are set forth to comply with the requirements of the Unit Ownership Act, Chapter 47C of the General Statutes of the State of North Carolina. In the event that any of these By-Laws conflict with the provisions of said statute, it is hereby agreed and accepted that the provisions of the statute will apply.

-12-

Case 1:22-cv-00478-WO-JEP   Document 9-20   Filed 08/02/22   Page 12 of 13

The foregoing were adopted as the By-Laws of PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION at the first meeting of the Board of Directors on ___April 9___, 2000.

## ARTICLE IX

### Miscellaneous

Section 1. Severability. Invalidation of any provision of these By-Laws shall not affect the validity of the remaining portions thereof, which shall remain in full force and effect.

APPROVED:

_____     _____
President                            Secretary

g.\closings\presque\bylaws.CLN

-13-