UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
File No. 1:22-CV-478

| | |
|---|---|
| HAYDEN SCOTT ROSE,<br><br>Plaintiff,<br><br>v.<br><br>PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., BOARD OF DIRECTORS, COMMUNITY ASSOCIATION MANAGEMENT, Ltd., and BAGWELL HOLT SMITH, P. A.,<br><br>Defendants. | MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS |

## MEMORANDUM IN SUPPORT

**I.  INTRODUCTION**

This case concerns certain assessments and fees that Plaintiff claims were improperly charged to him by the Presque Isle Villas Condominium Homeowners Association, Inc., (the "Association"), Presque Isle Villas Condominium Homeowners Association, Inc. Board of Directors ("the Board"), and Community Association Management, Limited ("CAM"), the Association's property management company, (collectively "Presque Defendants"), for repair and maintenance work performed on the deck of his condominium unit (the "Work").

Plaintiff alleges claims for 1) violation(s) of N.C. Gen. Stat. § 75-50, *et. al* (North Carolina's Debt Collections Act) ("NCDCA") against the Association, the Board and CAM; 2) violations of N.C. Gen. Stat. § 58-70-90, (Prohibited Acts by Collection Agencies) against CAM only; and 3) Breach of Fiduciary Duty, Constructive Fraud and Equitable Accounting against the

1

Association and the Board only. (*Amended Compl.*, [Doc. #4], generally). Presque Defendants filed an Answer and Affirmative Defenses, therein denying all liability, and also filed a Counterclaim seeking payment from Plaintiff for the Work performed, including attorney's fees and expenses incurred while attempting to collect the defaulted debt. (Answer and Counterclaim [Doc. # 9], *generally*).

Despite numerous purported causes of action alleging various statutory violations, Plaintiff's claims against Presque Defendants generally fall into three categories, including the following:

(1) Presque Defendants had no authority to assess the cost of the Work to Plaintiff;

(2) Presque Defendants had no authority to pursue, or "threaten" to pursue, collection of assessment arrearages, including the imposition of collection-related fees, attorney's fees, liens, foreclosure and/or credit bureau reporting; and

(3) Presque Defendants falsely represented the alleged assessment debt and failed to properly notify Plaintiff in various correspondence that [they] were debt collectors, seeking to recover a debt from Plaintiff.

Each of Plaintiff's claims, regardless of statute cited or cause of action pled, fail as a matter of law because:

* The Declaration of Condominium governing the Board and the Association ("Declaration," Exhibit 1), the Presque Villas Condominium Homeowners Association, Inc. By-Laws ("By-Laws," Exhibit 2), the Presque Villas Community Handbook ("Handbook," Exhibit 3), ("collectively "Governing Documents") in conjunction with N.C. Gen. Stat. §47(C)-3-115(c)(1) ("North Carolina Condominium Act") confirm that Plaintiff was, in fact, responsible for paying for the Work and further authorize Presque Defendants to assess Plaintiff for the cost of the Work;

* The Governing Documents and North Carolina's Condominium Act expressly authorize Presque Defendants to pursue collection of Plaintiff's defaulted debt, including imposition of collection-related costs, attorney's fees, and interest;

* Presque Defendants were up front, transparent and ethical with respect to the Work to be performed, the projected cost of the Work, the bases for billing Plaintiff for the cost of the Work, and in communications with Plaintiff

2

regarding the same, thus obviating any claim of "unfairness" or "fraud" with respect to the debt or collection thereof; and

* Plaintiff's factual allegations are refuted by documentary exhibits attached to Presque Defendants' Answer and Counterclaim, which are attached to this Motion for ease of reference. Plaintiff is either mistaken about the facts surrounding this dispute or he has otherwise caused a frivolous complaint to be filed in an attempt to relieve himself of his legally binding financial obligations to Presque Defendants; neither of which should be tolerated.

It is apparent on the face of the pleadings (with exhibits), that each of Plaintiff's claims suffer fatal legal defects, and dismissal, as a matter of law, should be granted for Presque Defendants.

## II. STATEMENT OF FACTS:

The Association is the homeowner's association for Plaintiff's condominium community, located in Chapel Hill, North Carolina. (*Amended Compl.,* [Doc. #4], at ¶ 16). In late 2020, the Association initiated plans to renovate the exterior decks attached to each unit within the Presque Villas community, including Plaintiff's unit, as well as the condominium building's gutter system and portions of the building's exterior wall (hereinafter "the Work"). (*Id*. at 17).

On October 20, 2020, CAM, on behalf of the Association, forwarded correspondence to all unit owners outlining the nature of the Work, projecting the cost of the Work, and suggesting a common contractor, The Pro Fixer ("TPF") to perform the Work. (*Amended Compl.,* [Doc. # 4], at ¶¶ 18, 19); (*See also* Exhibit 4, attached hereto). CAM further advised that the Board was "…open to owners hiring their own licensed and insured contractor via the ARC request approval process [to perform the Work]." (*Id*.). The deadline for owners to submit an ARC request was November 30, 2020. (*Id*.). The deadline for owners to complete the Work [if using their own contractor(s)] was December 31, 2020. (*Id*.) Despite the clearly stated deadlines within CAM's October 20, 2020 correspondence, Plaintiff neither accepted the Association's offer to arrange for

3

TPF to perform the Work, nor retained his own contractor to perform the Work. Subsequent correspondence to Plaintiff explained that the Association had authority to have the Work to be performed and bill the affected unit owners. (*See* attached as Composite Exhibit(s) 5A-5D).

On May 17, 2021, CAM notified Plaintiff that TPF would be dispatched to perform the deck repairs at a cost of $5,200.00, and that the balance would be added to Plaintiff's account for payment. (*Amended. Compl.*, [Doc. #4], at ¶¶ 51-52) (Exhibit 6).[1] On August 30, 2021, CAM forwarded Plaintiff an invoice for the balance of $2,600, following completion of the Work. (*Id.* at ¶ 80); (Exhibit 7). Despite numerous prior and subsequent emails, notices, invoices, statements, delinquency correspondence and collection efforts, including the placement of liens on Plaintiff's unit and foreclosure notices, Plaintiff has refused to pay for the cost of the Work performed by TPF (*See* attached as Composite 8A-8F). Plaintiff has also refused to pay various fees associated with the Association's efforts to collect Plaintiff's delinquent debt.

Plaintiff is liable for the cost of the Work and the costs incurred by the Association in their requests to collect Plaintiff's defaulted debt pursuant to §§ 47C-3-107, 47C-3-115(b), 47C-3-115(c), and the Governing Documents. Plaintiff is liable in the amount of $7,112.79 as itemized in the "Transaction History" attached hereto as Exhibit 9. The allegations of Plaintiff's Amended Complaint are frivolous, and as a result, the Association's reasonable attorney's fees should also be taxed as part of the court costs pursuant to N.C. Gen. Stat. § 75.16.1.

III.  **LEGAL ARGUMENT**

    A.  **Applicable Legal Standard**

---

[1] Per the documents, 50% of the cost of the Work was owed up front for purchase of materials, and the balance would be due and owing from the owner(s) upon completion of the Work. (*See* Ex. 6 and 7, *supra*).

4

A motion for judgment on the pleadings under F.R.C.P. 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6). *Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). The motion "tests the sufficiency of a complaint." *Id.* "To survive such a motion, the complaint must contain facts sufficient 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" *Id.* at 116 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In considering a motion for judgment on the pleadings under [Rule 12(c)], the court must view facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party." *Smith v. City of Greensboro*, 2021 WL 964888, at *3-4 (M.D.N.C. 2021) (citing *Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 748–49 (M.D.N.C. 2002)). "However, the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Green v. Smith, Debnam, Narron, Drake, Saintsing & Myers, LLP,* W.D.N.C. No. 3:21-cv-674-MOC, 2022 U.S. Dist. LEXIS 110097, at *4 (June 21, 2022).

In addressing a Rule 12(c) Motion, courts may consider "the pleadings and any attachments to the pleadings and materials referenced, *which are incorporated into the pleadings by [Fed. R. Civ. P. 10(c)]*." *Preston v. Leake*, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009) (*emphasis added*). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Fed. R. Civ. P. 10(c).* Courts may also consider "matters of public record susceptible to judicial notice." *National Quarry Services, Inc. v. First Mercury Insurance Company, Inc.*, 372 F. Supp .3d 296, 301 (M.D.N.C. 2019). In resolving the dispute, this court applies North Carolina substantive law. *Burn v. Lend Lease (US) Pub. P'ships LLC,* E.D.N.C. No. 7:20-CV-174-D, 2021 U.S. Dist. LEXIS 172963, at *9 (Sep. 13, 2021).

5

### B. Plaintiff has not stated a viable claim under N.C. Gen. Stat. § 75-50 *et seq.* or N.C. Gen. Stat. § 58-70-90, *et seq.* and all claims alleged thereunder must be dismissed.

North Carolina has enacted two separate statutes regulating debt collection practices. *Winans v. Franklin Collection Serv.,* M.D.N.C. No. 17cv659, 2018 U.S. Dist. LEXIS 138709, at *5-6 (Aug. 16, 2018). The North Carolina Collections Agencies Act, N.C. Gen. Stat. § 58-70-90 ("NCCAA") regulates collection agencies and prohibits deceptive representations or threatening or coercive conduct regarding the collection of a debt. N.C. Gen. Stat. §§ 58-70-95, 58-70-110; see also id. §§ 58-70-15, 58-70-90(1) (defining "collection agency"). The North Carolina Debt Collections Act, N.C. Gen. Stat. § 75-50, ("NCDCA") also prohibits all other persons who collect consumer debts from engaging in similar activities. N.C. Gen. Stat. §§ 75-51, 75-54; *see also id.* § 75-50(3) (defining "debt collector"). The statutes each provide illustrative examples of prohibited conduct. N.C. Gen. Stat. §§ 58-70-95; 58-70-110; 75-51; 75-54.

To state an unfair debt collection claim, a plaintiff must first allege: (1) that he/she is a "consumer," (2) that the obligation incurred is a "debt," and (3) that the party against whom the claim is brought is a "debt collector," as those terms are defined in the NCDCA. *Friscia v. Bank of Am., N.A.,* 241 N.C.App. 399, 775 S.E.2d 36 (2015). In addition, the NCDCA is part of the same chapter of the North Carolina General Statutes as the Unfair and Deceptive Trade Practices Act ("UDTPA") (chapter 75)), and accordingly "[a]n NCDCA claim also must meet the generalized requirements of UDTPA claims." *Ross v. Washington Mut. Bank*, 566 F. Supp. 2d 468, 479 (E.D.N.C. 2008). These requirements are "(1) an unfair act, (2) in or affecting commerce, (3) that has proximately caused plaintiff injury." *Id.* (*emphasis omitted*).

Assuming arguendo that Plaintiff has satisfied the first three (3) elements against Presque Defendants, Plaintiff must further demonstrate that Presque Defendants' acts were unfair. Plaintiff's Amended Complaint fails in this regard.

1. <u>Presque Defendants' acts were not unfair because they were authorized to bill Plaintiff for the Work and pursue collection efforts for Plaintiff's delinquency.</u>

A majority of Plaintiff's claims are premised on the assumption that Presque Defendants had no authority to bill Plaintiff for the Work. Plaintiff is incorrect. The Governing Documents and applicable statute(s), detailed below, expressly authorize Presque Defendants to perform maintenance and repairs of Limited Common Areas[2] and to levy assessments against the unit owners accordingly.

    a). *The By-Laws:*

Numerous sections of the Association's By-Laws expressly authorize Presque Defendants to bill Plaintiff for the Work, including the following:

ARTICLE III, Section 7:

> <u>Powers and Duties</u>. The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the condominium…The powers and duties shall include but not be limited to the following:
>
> **(a) Operation, care, upkeep and maintenance of the common areas and facilities**;
>
> **(b) Determination of the common expenses** required for the affairs of the condominium, including, but without limitation, the operation and maintenance of the property; and
>
> **(c) Levying and collection of the common charges from Unit Owners.**

(*By-Laws, Ex. 2, supra*, at Art. III, § 7, p. 5) (*emphasis added*).

---

[2] Per the Declaration, Limited Common Areas are defined as those common areas and facilities reserved for use by a certain unit or units to be to the exclusion of other units, including **any deck, porch, patio, courtyard, balcony, foyer of carriage units**…" (Declaration, Ex. 1, *supra*, at § 6, p.3) (*emphasis added*).

ARTICLE VI, Section 2:

> Payment of Common Charges. All Unit Owners **shall be obligated to pay the common charges assessed by the Board of Directors** pursuant to the provisions of Section 1 of Article VI…"³ (*emphasis added*).

ARTICLE VI, Sections 3:

> Collection and Assessments. The Board of Directors s**hall assess the common charges against the Unit Owners**. (*Emphasis added*);

ARTICLE VI, Section 5:

> Maintenance and Repair. All maintenance and repair to any unit, structural or nonstructural, ordinary or extraordinary, and maintenance of and repairs and replacements to the common areas and facilities contained therein **shall be made by the Board and charged to all Unit Owners as a common expense**. (*Emphasis added*).

(Bylaws, Ex. 2, *supra* at Art.VI, §§ 2, 3 and 5, pp. 10, 11); *See also* Handbook, (Exhibit 3) at 1 ("Payment for maintenance for 'Balconies' and 'Decks' is the responsibility of the "Owner.").

b). *N.C. Gen. Stat. § 47(C) et seq. (The North Carolina Condominium Act).*

The North Carolina Condominium Act also mandates that the cost of the Work performed on the Limited Common Areas (decks) <u>must</u> be assessed to the unit owners, including Plaintiff, as follows:

> N.C. Gen. Stat. § 47C-3-115(c)(1) states, "[a]ny common expense associated with the maintenance, repair, or replacement of a **limited common element must be assessed against the units** to which that limited common element is assigned, equally, or in any other proportion that the Declaration provides…"

\* \* \*

---

³ Article VI, Section 1 of the By-Laws, as referenced in Section 2, *supra*, is entitled "Determination of Common Expenses and Fixing of Common Charges." (Ex. 2, *supra*).

> N.C. Gen. Stat. § 47(C)-3-107 states, "… any common expense associated with the maintenance of the limited common element **must be assessed against the units** to which that limited common element is assigned."

N.C. Gen. Stat §§ 47(C)-3-107 and 47(C)-3-115(c); (*emphases added*). Again, North Carolina statute(s) confirm that not only *could* Presque Defendants assess and bill Plaintiff for the Work, but they were *required* to bill Plaintiff.

Clearly, the By-Laws, Handbook, Declarations and the North Carolina Condominium Act evidence that Presque Defendants did, in fact, have authority to perform the Work and bill the Plaintiff. Because Presque Defendants were authorized to assess and bill Plaintiff for the Work, doing so cannot be deemed "unfair or deceptive" as a matter of law, and Plaintiff's claims under NCDCA and/or NCCAA must fail. See *Lofts at Albert Hall Condominium Association, Incorporated v. Vintage Oaks II*, 2014 WL 4060049, at *354 (M.D.N.C. 2014), (holding that the declaration showed, unequivocally, that the building's owners, and not the homeowner's association, were ultimately responsible for the roof repair).

2. <u>Presque Defendants had the authority to pursue collection of Plaintiff's delinquent debt, including the imposition of collection-related fees, attorney's fees, liens, foreclosure and/or credit bureau reporting.</u>

In addition to providing authority to impose assessments for the Work, the Governing Documents also authorize Presque Defendants to seek to collect Plaintiff's defaulted debt, as follows:

a). *The By-Laws:*

ARTICLE VI, Sections 3:

Collection and Assessments. The Board of Directors **shall…take prompt action to collect any common charge due for any Unit Owner which remains unpaid for more than thirty days from the due date** (*emphasis added*);

ARTICLE VI, Section 4:

Default in Payment of Common Charges. In the event of default by any Unit Owner in paying to the Board of Directors the common charges as determined by the Board, **each Unit Owner shall be obligated to <u>pay interest</u> at the legal rate on such common charges from the date due thereof together with <u>all expenses, including attorney's fees</u> incurred by the Board** in any proceeding to collect such unpaid common charges.

(*By-Laws, Ex. 2, supra*, at Art. VI, §§ 3, 4, p. 10) (*emphases added*).

b). *The Declaration, Section 9*:

"…each owner of any unit…is deemed to covenant and agree to pay to the Association the annual assessments or common charges to be established and collected…"

\* \* \*

"The Annual and special assessments, together with interest, and costs and reasonable attorney's fees incurred in the collection thereof, shall be a charge on the unit and shall be continuing lien upon the property against which each such assessment is made. **Each such assessment, together with interest and costs and reasonable attorney's fees, incurred in the collection thereof, shall also be the personal obligation of the person (or persons) who was the owner of such property at the time when the assessment fell due**."

(*Declaration, Ex. 1, supra*, at § 9, p. 6) (*emphasis added*).

c). *The NCCAA*

North Carolina law and particularly, the NCCAA at § 3-116, authorizes Presque Defendants' collection, lien and foreclosure efforts, as follows, in pertinent part:

(a) Any assessment attributable to a unit which remains unpaid for a period of 30 days or longer **shall constitute a lien** on that unit when a claim of lien is filed... fees, charges, late charges and other charges imposed…are subject to the claim of lien under this section as well as any other sums due and payable to the association under the declaration…

(e) The association **shall be entitled to recover the reasonable attorneys' fees** and costs it incurs in connection with the collection of any sums due.

10

> (f) [T]he association, acting through the executive board, **may foreclose a claim of lien** in like manner as a mortgage or deed of trust on real estate under power of sale…if the assessment remains unpaid for 90 days or more.

N.C. Gen. Stat. § 47(C)-3-116 (*emphases added*). Plaintiff's suggestion that Presque Defendants lacked authority to pursue collection of Plaintiff's defaulted debt, including imposition of attorney's fees, collection costs, liens and foreclosure, is contrary to the Law of North Carolina, the Declaration and the By-Laws. All such claims must be dismissed, as a matter of law.

> 3. <u>Presque Defendants did not "falsely represent the alleged assessment debt" or "fail to properly notify Plaintiff" in various correspondence that [they] were debt collectors, seeking to recover a debt from Plaintiff.</u>

Under the guise of the N.C. Gen. Stat. § 75-54(2) and § 58-70-110(2), Plaintiff alleges that Presque Defendants did not disclose, within two specific emails to him, that they were debt collectors seeking to collect a debt. (Amended Compl. [Doc. # 4] at ¶¶ 54, 84, 85, 203, 214, 225]. The first letter, dated May 17, 2021 ("First Letter", Ex. 6, *supra*), simply informs Plaintiff that TPF would be dispatched to perform deck repairs in the amount of $5,200.00 and that the cost would be "added to [Plaintiff's] Account." This is not a "collection letter" as alleged by Plaintiff.

The second letter, dated August 30, 2021, ("Second Letter," Ex. 7, *supra*) informs Plaintiff that the deck repairs were finished, that the balance of $2,600 was added to his account, that once the account reached lien status, it would be forwarded to the Association's attorney for lien filing and collections, and further asks Plaintiff if he wanted to create a payment plan. Again, this letter was not an attempt to "collect a debt" as contemplated under the FDCPA.[4]

The Court in *Winans v. Franklin Collection Serv.,* M.D.N.C. No. 17cv659, 2018 U.S. Dist. LEXIS 138709, at *8-10 (Aug. 16, 2018), analyzed correspondence from FCSI, a collection

---

[4] In contrast, Presque Defendants did forward several letters to Plaintiff demanding payment; all of which were accompanied by the disclaimer that they were attempting to collect a debt. See Exhibits 8A-8F, *supra*).

11

agency, to Plaintiff relating to a debt owed. One letter in particular stated: "IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL [FCSI's phone number]." *Id*. at * 9). Plaintiff alleged that this language violated the NCCAA and NCDCA by "[t]hreatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made…" *Id.* The Court, however, granted Defendant's Motion to Dismiss the allegation, concluding, "…[t]he letter merely provided the plaintiff with his options without coercing or misleading the least sophisticated debtor into thinking that he was required to either pay or suffer dire consequences…" *Id*.

A second letter to Plaintiff in *Winans* stated:

> "WE HAVE MADE SEVERAL ATTEMPTS FOR YOU TO RESOLVE THIS MATTER VOLUNTARILY, YET IT GOES UNSATISFIED AS OF THE DATE ON THIS NOTICE. WE SELDOM RESORT TO LITIGATION IF THE ACCOUNT IS RESOLVED IN A TIMELY MANNER. AT THIS TIME, THERE HAS BEEN NO CIVIL ACTION FILED OR JUDGMENT OBTAINED. [. . .]TO BE SURE OF PROPER CREDIT AND TO STOP FURTHER PROCEDURES, RETURN THIS NOTICE WITH PAYMENT IN FULL TO FRANKLIN COLLECTION SERVICE, INC…."

*Winans,* at *12. The Court concluded that this language did not demonstrate an imminent "threat" of litigation but instead, simply stated that "if the account is not satisfied…further procedures are likely to occur." *Id*. at 16. The Court, in granting dismissal of this count as well, concluded: ""[i]t would be counterproductive to penalize a debt collector for suggesting steps which legally ***could*** be taken might in fact be taken." *Id*; see also *Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 22 (2d Cir. 2016) (holding that the dunning letter did not violate § 1692e(5) where it indicated that

12

"the debt collector '**_may_** consider additional remedies' and that the accounts were placed with an attorney for 'such action as necessary'" (*emphases added*).[5]

Likewise, in *Wilkes Natl. Bank v. Halvorsen,* 126 N.C.App. 179, 182, 484 S.E.2d 582 (1997), the Court analyzed similar letters sent by a lender/bank to a plaintiff/borrower who fell ill and had become delinquent on the loan repayment. The bank sent an initial letter to the borrower discussing the bank's attempts to assist plaintiff in collecting under her credit insurance and its attempts to work out a payment schedule. *Id*. The bank sent a second letter stating that the loan was in default and that "if it was not paid in full," collection efforts would be instituted. *Id*. The loan remained unpaid, so the bank filed an action to collect the amount due. *Id.* The plaintiff/borrower argued that the bank violated the FDCPA by not including required disclosure language in the two letters. *Id.* The bank filed a motion for summary judgment, which the trial court granted. *Id*. The court held that the first letter was not focused on collecting the debt; therefore, it was not governed by the provisions of the Act. *Id*. The court held that the second letter clearly stated that it was for the purpose of collecting a debt and was not deceptive or misleading; therefore, the second letter did not violate the Act. *Id.*

The two letters at issue are strikingly similar to those analyzed by the Court in *Winans* and *Wilkes, supra*. The First Letter simply outlines the charges for the Work. The Second Letter indicates the intent of Presque Defendants in the event that Plaintiff continues in default (while also offering a payment plan). Neither were explicit attempts to "collect a debt" or threats of "imminent" litigation; rather, they simply instruct Plaintiff of what remedies Presque Defendants may pursue in the event of continued default. Further, neither letter was at all "unfair" or

---

[5] The Court analyzed the letters initially under 15 U.S.C. § 1692c, however, the Court came to the same conclusion when subsequently analyzing the letters under North Carolina law.

13

"misleading." See *Wilkes, id*. Thus, neither letter is actionable, as a matter of law, and dismissal is proper.

    **C.**    **Plaintiff's claims against the Association and the Board for breach of fiduciary duty, constructive fraud and equitable accounting must fail as a matter of law.**

    1. Plaintiff's Breach of Fiduciary Duty Claim against the Board must fail as a matter of law.

In order to establish a claim for breach of fiduciary duty under North Carolina substantive law, the plaintiff must show that: (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached his fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff. *Adum v. Albemarle Plantation Prop. Owners Ass'n,* 2021 NCBC 4, 65, 2021 NCBC LEXIS 6, \*36, 2021 WL 197298. In the context of a homeowner's association and its board, "…in order to survive a motion to dismiss, the Complaint 'must allege, in other than conclusory terms, that the board was inattentive or uninformed, acted in bad faith, or that the board's decision was unreasonable." *Green v. Condra*, 2009 NCBC 21, at \*96, 2009 NCBC LEXIS 20 (N.C. Super. Ct. Aug. 14, 2009) (*citation omitted*). *Id.* at \*39. However, no claim for breach of fiduciary duty can survive of the very acts alleged are authored. See *Adum, supra* at 71 (holding that dismissal of plaintiff's fiduciary duty claim was proper because, *inter alia*, "…***all of the alleged breaches contained in Plaintiffs' breach of fiduciary claim appear to be actions which were specifically permitted under the governing Amended and Restated Declaration.***")(Emphasis added).

Here, Plaintiff's Amended Complaint fails to establish a viable "breach" of any fiduciary duty owed to Plaintiff. Plaintiff contends that the Association and Board's assessment and collection efforts were improper because they had no authority for such actions. (*Amended Compl,* [Doc #4] at ¶¶ 24-26; 29, 79, 82, 89, 93, 97, 108, 2110, 128, 144). However, as shown in Exhibits 1-3 hereto, the breaches alleged by Plaintiff concern actions that were specifically permitted and

14

authorized under the Governing Documents and statute(s), and dismissal is proper. (See Ex. 1-3, *supra*).

For example, the breach(es) alleged in Paragraphs 240 and 244 of the Amended Complaint—that Defendants failed to act "… in equity and good conscience, in good faith and due regard for [Plaintiff]'s interests, including protection of 'unethical assessment practices…'" by assessing Plaintiff for the Work on the deck cannot give rise to a claim for breach of fiduciary duty as a matter of law because the Defendants were authorized to bill Plaintiff for the work. *See Adum, supra;* See also Exhibits 1-3, *supra*).

Accordingly, Plaintiff's Amended Complaint fails to allege the requisite elements necessary to establish a claim for breach of fiduciary duty and as such, dismissal is proper.

2. Plaintiff's Constructive Fraud Claim must fail as a matter of law.

"In order to maintain a claim for constructive fraud, plaintiffs must show that they and defendants were in a 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). "Implicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Id*; See also *Toomer v. Branch Banking & Trust Co.,* 171 N.C.App. 58, 67, 614 S.E.2d 328 (2005).

Here, the issue of whether the parties were in a relationship of "trust and confidence" need not be decided, as there is no evidence that Presque Defendants "took advantage of" Plaintiff or that their actions benefitted Presque Defendants. See *Toomer, supra*. Plaintiff has not alleged that

Presque Defendants harmed him by making specific misrepresentations; rather, Plaintiff only alleges [*incorrectly*] that, by assessing Plaintiff the cost of the Work [without authority to do so], Presque Defendants breached a fiduciary duty. However, since Presque Defendants were so authorized, any claim that they "took advantage of" Plaintiff in this regard must be dismissed.

Further, Plaintiff has not alleged that Presque Defendants sought to benefit themselves in any way by assessing Plaintiff the cost of the Work and/or seeking collection of the delinquent debt. Plaintiff has alleged no facts tending to show that Presque Defendants gained anything by assessing Plaintiff and seeking collections for his delinquent debt. See *Barger*, at 667. Since the Defendants followed the construct of the aforementioned authority, their actions could not, as a matter of law, been "in bad faith" or "unreasonable," and Plaintiff's constructive fraud claim must be dismissed, as a matter of law.

### 3. Plaintiff's Equitable Accounting Claim against The Association and the Board fails as a matter of law.

The remedy of an equitable accounting may be available when a plaintiff has asserted a valid claim for relief in equity and an accounting is necessary to compel discovery of information regarding accounts held exclusively by the defendant." *Mkt. Choice, Inc. v. New England Coffee Co.*, 2009 U.S. Dist. LEXIS 73627 at *35-*36 (W.D.N.C. Aug. 18, 2009). Nevertheless, the Court will not grant equitable relief where a party has a full and complete remedy at law. *See Hinson v. United Fin. Servs., Inc.*, 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (1996). Plaintiff would have an adequate remedy at law on his statutory violations claims, if successful. Thus, this equitable claim/remedy fails as a matter of law.

As an initial matter, Plaintiff's bare allegations under Count XII of the Amended Complaint fail to provide any clear reason why discovery would be insufficient so as to warrant the remedy of an accounting. See *Gottfried v. Covington, 2014 NCBC 26, 35, 2014 NCBC LEXIS 26, *17*.

16

Further, since Plaintiff's Breach of Fiduciary Duty and Constructive Fraud claims both fail, as set forth above (see §§ III. C. (1), and (2), *supra*), Plaintiff cannot maintain a claim for accounting as an equitable remedy. Accordingly, dismissal of this claim is proper.

## CONCLUSION

Plaintiff bears the burden of pleading facts sufficient to demonstrate a viable cause of action. Here, Plaintiff's Amended Complaint is founded upon an incorrect assumption that Presque Defendants lacked authority to assess Plaintiff for the cost for the Work and to seek collection for Plaintiff's delinquent account. The Governing Documents and statute(s) in North Carolina confirm the Presque Defendants authority in this regard, and its position within this Motion. Such documents are fatal to Plaintiff's claim(s), and, accordingly, Plaintiff's Amended Complaint as to Presque Defendants should be dismissed as a matter of law.

Respectfully Submitted,

**DICKIE, McCAMEY & CHILCOTE, P.C.**

*/s/ Bridget Baranyai*
Bridget L. Baranyai
(NC Bar # 37588)

Michele F. Eagle, Esquire
(NC Bar # 33928)

2101 Rexford Road, Suite 250E
Charlotte, NC 28211
704-998-5184 (P) / 888-811-7144 (F)
bbaranyai@dmclaw.com
meagle@dmclaw.com

*Counsel for Defendants, Presque Isle Villas Condominium Homeowners Association, Inc., Presque Isle Villas Condominium Homeowners Association, Inc., Board of Directors, and Community Association Management, Ltd.,*

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that Defendants Presque Isle Villas Condominium Homeowners Association, Inc., Presque Isle Villas Condominium Homeowners Association, Inc., Board of Directors and Community Association Management, Ltd.'s Motion for Judgment on the Pleadings, filed concurrently with this Certificate, complies with the length and word count requirements as set forth in Local Rule 7.3(d)(1). The Motion and Brief were prepared using Microsoft Word 2016 software. According to the word processing system's word count, the Motion and Brief contain no more than 4,942 words including all text, headings and footnotes, and excluding the caption, signature blocks, certificate of service and cover page.

Respectfully Submitted,

**DICKIE, McCAMEY & CHILCOTE, P.C.**

*/s/ Bridget Baranyai*
Bridget L. Baranyai
(NC Bar # 37588)

Michele F. Eagle, Esquire
(NC Bar # 33928)

2101 Rexford Road, Suite 250E
Charlotte, NC 28211
704-998-5184 (P) / 888-811-7144 (F)
bbaranyai@dmclaw.com
meagle@dmclaw.com

*Counsel for Defendants, Presque Isle Villas Condominium Homeowners Association, Inc., Presque Isle Villas Condominium Homeowners Association, Inc., Board of Directors, and Community Association Management, Ltd.,*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Bridget Baranyai, Esq.*
Bridget Baranyai, Esq.
NC Bar # 37588
Dickie, McCamey & Chilcote, P.C.

15164982.1

19

Case 1:22-cv-00478-WO-JEP   Document 20   Filed 09/30/22   Page 19 of 19