| | |
|---|---|
| **HAYDEN SCOTT ROSE,** | |
| **Plaintiff** | **RESPONSE TO DEFENDANT'S** |
| **v.** | **MOTION FOR JUDGMENT** |
| | **ON THE PLEADINGS** |
| **PRESQUE ISLE VILLAS** | |
| **CONDOMINIUM HOMEOWNERS** | |
| **ASSOCIATION, Inc.,** *et al*., | |
| **Defendants** | |

**NOW COMES** Plaintiff, Hayden Scott Rose, by and through Counsel, and in response to the Defendants' Motion on the Pleadings (Doc. 19), respectfully shows this court the following:

The Defendants have made a Motion on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In the Defendants' Response (Doc. 22) to the Plaintiff's Request for Discovery. (Doc. 21). The Defendants responded and argued to the Court that "conversion to a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure is not warranted." *Defendants' Response*, p. 2. (Doc 22). Because the Request for Discovery has not been considered by the Court, the parties have no guidance on how the Defendants' Motion will be considered by the Court. Therefore, based on the Defendants' pleadings, Mr. Rose will respond to a motion made pursuant to Rule 12(c) and not Rule 56.

1.      **Mr. Rose does not owe the debt that the Defendant is collecting:**

From the start, the Defendants' statement of facts contains inaccuracies. For example, the Defendants allege that "Plaintiff has refused to pay for the cost of the Work performed by TPF." *Defendants' Brief*, p. 4. But the Amended Complaint shows otherwise:

70. Mr. Rose stated that he would pay the assessment under protest and ask Presque to put in writing that the payment was not voluntary, and that CAM would return the assessment if it was determined that Mr. Rose did not owe the assessment.

71. Presque would not agree that it would return the payment if it was determined that Mr. Rose did not owe the assessment.

72. This action demonstrates that Presque was intentionally collecting a debt that it knew Mr. Rose did not owe.

*Amended Complaint*, p. 8. (Doc. 4). The Defendants would not accept payment and guarantee a return of the payment if it were determined that the payment was unwarranted. Mr. Rose tried to pay the Defendants and the payment was refused.

Mr. Rose *has subsequently* refused to pay for the work cited in the Defendants' Brief because the Defendants told him they would not return the money if it were improperly collected and, more importantly, Mr. Rose does not owe that money. The Defendants should stop collecting a debt that Mr. Rose does not owe.

The Defendants then state, "Plaintiff is liable in the amount of $7,112.79 as itemized in the 'Transaction History'…" *Defendants' Brief*, p. 4. This calculation does not reflect the following payments Mr. Rose sent to the Defendants on these respective dates: $235.89, March 30, 2022; $675, May 18, 2022; $400, July 6, 2022; $400. August 9, 2022; $400, September 13, 2022; and $400 October 18, 2022.

The Defendants included the Presque Isle Villas Community Handbook (the Handbook), Dated July 18, 2018, (*Defendants' Brief*, Exhibit 3) (Doc. 20-3) in a group of documents that the brief describes as "Governing Documents" (*Defendants' Brief*, p.2), which also include the Declaration of Condominium for Presque Isle Villas (the Declaration), Orange County[1] Register Book 2233, Page 287. *Defendants' Brief,* Exhibit C. (Doc. 20-1). But the Handbook does not

---

[1] The Declaration is drafted with a Wake County caption, but it is filed with the Orange County Register.

supplant the Declaration. Pursuant to N.C. Gen. Stat. § 47C-3-102(a)(1) the power to adopt rules and regulations is derived from the Declaration and when the Declaration and the Handbook conflict, the Declaration supersedes: "<u>Unless the declaration expressly provides to the contrary</u>, the association, even if unincorporated, may * * * Adopt and amend bylaws and rules and regulations." *Id.*, (emphasis supplied). In the case *sub judice*, the Declaration expressly makes the cost of repairs an obligation of the Defendants, as explained *infra*.

The Court should note that the Defendants' Exhibit 3, the Handbook exhibit, shows only the table of contents and a letter from the Defendants' attorney. In fact, the rest of the handbook is not attached. That is because the first paragraph of the Handbook undermines the Defendants' argument. The 2018 version of the Handbook, the version Mr. Rose was given, says in relevant part:

> INTRODUCTION
> The Presque Isle Villas Community Handbook is an extension of our Articles of Incorporation, Declaration of Condominium, By-Laws and Rules and Regulations. <u>It in no way usurps their intent</u>, but seeks to clarify, expand, and simplify. In the event of a conflict between the Community Handbook and either the Declaration of Condominium or the By-Laws, <u>the Declaration and By-Laws shall govern</u>.

*Presque Isle Villas Community Handbook*, p. 2 (emphasis supplied). (Attached hereto as Exhibit A). By its own text the Handbook defers to the Declaration and should be ignored where the Declaration, statutes and Bylaws give clear guidance.

The Defendants start their argument with the final "Governing Document," the By-Laws of Presque Isle Villas Condominium Homeowners Association, Inc. (the Bylaws), Orange County Register Book 2233, Page 314. *Defendant's Brief*, Exhibit 2. (Doc. 20-2). The Defendants pick several of the articles of the Bylaws to emphasize, but none of them add up to make Mr. Rose responsible for this debt, and the By-Laws are secondary to the Declaration as well:

ARTICLE III, Section 7:

3

> Powers and Duties. The Board of Directors shall have the powers and duties
> necessary for the administration of the affairs of the condominium…The powers
> and duties shall include but not be limited to the following:
> (a) Operation, care, upkeep and maintenance of the common areas and facilities;
> (b) Determination of the common expenses required for the affairs of the
>     condominium, including, but without limitation, the operation and maintenance
>     of the property; and,
> (c) Levying and collection of the common charges from Unit Owners.

*Defendants' Brief*, p. 7. This Section clearly states that the Board should be responsible for the

maintenance of common areas. Of course, levying and collecting of the common charges must be

done in accordance with the Declaration and collection laws. Continuing further:

> ARTICLE VI, Section 2:
> Payment of Common Charges. All Unit Owners shall be obligated to pay the
> common charges assessed by the Board of Directors pursuant to the provisions of
> Section 1 of Article VI…"

*Defendants' Brief*, p. 8. This excerpt of this Section implicitly takes Article VI, Section 1 out of

context: the Common Charges have to do with yearly dues paid by *all* owners, which must be

approved by a majority of owners if the increase exceeds 10% *per annum*, and are allocated to

owners based on their "respective common interest." See *Bylaws*, Art. VI, Sec. 1 "Determination

of Common Expenses and Fixing of Common Charges." *Defendants' Brief*, Exhibit 2, p. 10 of 13.

(Doc. 20-2). This Section is inapposite to the present analysis, and if it were of any import, Article

VI, Section 1 would have been cited by the Defendants and not referenced. The Defendants

continue:

> ARTICLE VI, Sections 3:
> Collection and Assessments. The Board of Directors shall assess the common
> charges against the Unit Owners…

*Id*. This still does not undermine Mr. Rose's argument that the Declaration and relevant statutes

demonstrate that he did not owe anything that the Board should be dunning him for. This Section

only provides that the Board of Directors is the body that assesses common charges. Finally:

4

ARTICLE VI, Section 5:
Maintenance and Repair. All maintenance and repair to any unit, structural or nonstructural, ordinary or extraordinary, and maintenance of and repairs and replacements to the common areas and facilities contained therein shall be made by the Board and charged to all Unit Owners as a common expense.

*Id*. Still, the hole in the Defendant's theory is that none of the sections above define common areas and facilities. The Defendants must ignore a lot to get to that point, but Mr. Rose can assist the Court with definitions.

Pursuant to the Declaration, the "Limited Common Areas and Facilities" are defined as "those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, including any deck, porch, patio, courtyard, balcony… etc.". *See Declaration*, Section 6, p.3. (Doc. 20-1) The Declaration further states that "the cleanliness and orderliness of the Limited Common Areas and Facilities shall be the responsibility of the individual Unit Owner, but the responsibility for <u>maintenance</u>, painting, <u>repair</u> and replacement thereof, together with control over the exterior decoration of same, <u>shall be and remain with the Association</u>, but each Unit Owner shall be responsible for repair and maintenance of that Unit's HVAC unit". *Id.*, (emphasis supplied). The Declaration, which controls pursuant to statute, expressly states that the maintenance and repair of the decks are the responsibility of the Association. It even designates the HVAC repair as the owner's responsibility. If the owner had other responsibilities, such as deck repair, the Declaration would have so stated.

The Defendants assert that Chapter 47C shifts the burden of the maintenance of a Limited Common Element to the homeowner. However, this argument is misplaced. § 47C-3-107 states in relevant part:

[T]he association is responsible for causing the common elements to be maintained, repaired, and replaced when necessary and to assess the unit owners as necessary to recover the costs of such maintenance, repair, or replacement except that the cost of maintenance, repair or replacement of a limited common element shall be

5

assessed <u>as provided in G.S. 47C-3-115(b).</u> Each unit owner is responsible for maintenance, repair and replacement of his unit.

*Id.*, (emphasis supplied). This paragraph simply states that the expense of maintenance of a Limited Common Element shall be assessed in accordance with N.C. Gen. Stat. § 47C-3-115(b) which only provides that all units shall be assessed in accordance with the terms of the Declaration. *Id*. And the Declaration makes the repair expenses the obligation of the Defendants.

The Defendants misapprehend § 47C-3-115(c), which provides that the expense of the maintenance or repair of a Limited Common Element can be assessed against the owner so benefited only "to the extent required by the Declaration." *Id*. The Declaration in the instant case clearly provides that the maintenance and repair of the decks is an Association obligation. The law leads to only one conclusion: Mr. Rose never owed this debt.

This was explained in detail to the Defendants by the Plaintiff in an email dated September 8, 2021. *Defendants' Answer*, Exhibit N. (Doc. 9-14). It was explained again to Defendants by competent counsel on January 31, 2022, in a letter attached to an email. (Attached hereto as Exhibit B). Mr. Rose should never have had to file the Complaint and the responsibility for all of the damages alleged in the Complaint fall squarely on the Defendants' shoulders, as well as all of the costs and fees associated with bringing this case.

The Defendant misquoted N. C. Gen. Stat. § 47C-3-107 as stating "…any common expense associated with the maintenance of the limited common element must be assessed against the units to which that limited common element is assigned." *Defendant's Brief,* p. 8. This is actually from § 47C-3-115(c) again, which was explained above. However, N. C. Gen. Stat. § 47C-3-107(b) does state in relevant part:

> If damage, for which a unit owner is legally responsible and which is not covered by insurance provided by the association pursuant to G.S. 47C-3-113 is inflicted on any common element or limited common element, the association may direct such

6

unit owner to repair such damage or the association may itself cause the repairs to be made and recover the costs thereof from the responsible unit owner.

*Id*. The damage to the deck came from the fact that the deck was improperly built in such a way that rainwater did not run off away from the building, but instead collected against the wall of the condominium, causing water damage. This is certainly not Mr. Rose's fault, and he is not legally responsible for any damage to the deck pursuant to § 47C-3-107(b) or any other statute, rule, the Bylaws or, most importantly, the Declaration.

ARTICLE VI, Section 1 of the Bylaws requires common charges to be based on a budget, prepared at least annually, and furnished to owners. *Bylaws*, p.10. (Doc. 20-2). "Any increase in the monthly common charge that exceeds 10 % per annum will require the consent of a majority of all Unit Owners." *Id*. In their answer, the Defendants agreed that they did not have this required meeting. *Answer*, p. 5, ¶ 29. (Doc. 9). For "increases in assessments that raise the previously assessed amount by more than 25%" to take effect "67% of unit owners and a majority of eligible mortgage holders must vote to amend the Declaration" and "Any amendment must be recorded." *Declaration*, p. 13. (Doc. 20-1). This did not happen.

Finally, N.C. Gen. Stat. §47C-3-103(c) requires in relevant part:

Within 30 days after adoption of any proposed budget for the condominium, the executive board shall provide a summary of the budget to all the unit owners, and shall set a date for a meeting of the unit owners to consider ratification of the budget not less than 10 nor more than 60 days after mailing of the summary. There shall be no requirement that a quorum be present at the meeting. The budget is ratified unless at that meeting a majority of all the unit owners or any larger vote specified in the declaration rejects the budget. In the event the proposed budget is rejected, the periodic budget last ratified shall be continued until such time as the unit owners ratify a subsequent budget proposed by the executive board.

*Id*. The Defendants did not do this. Had the Defendant followed the statute, the Bylaws and the Declaration, the meeting would have taken place and the Defendants would have learned from Mr. Rose (and possibly others) that the cost of these repairs never fell on Mr. Rose and those in his

7

situation.

2. **The Defendant has no authority to collect where there is no debt.**

Certainly if Mr. Rose owed the Defendants for these repairs the Defendants would have the right to pursue the debt, because it would be owed to the Defendants. Mr. Rose does not argue that the Defendants cannot collect valid debts, and the fact that the Defendants can collect valid debts does not change anything about the legal analysis of Mr. Rose's Amended Complaint.

The Defendants have tacitly admitted in their brief that if Mr. Rose does not owe the money, their Motion should fail. The Defendants state that "Presque Defendants' acts were not unfair because they were authorized to bill Plaintiff for the Work and pursue collection efforts for Plaintiff's delinquency." *Defendant's Brief*, p. 7. (Doc. 20). The contrapositive of this is, of course, if the Defendants were *not* authorized to bill Mr. Rose and pursue him for payment, the acts *are* unfair. So far, the Defendants have not demonstrated that they had a right to dun Mr. Rose for the repairs and the Amended Complaint should not be dismissed without discovery based on the Defendants' argument.

3. **The cited dunning letters falsely represented debt and failed to notify Mr. Rose that it was a collection letter.**

The Defendants captioned an argument that they did not falsely represent the alleged assessment debt but made no argument toward that point. It is therefore a conclusory statement and needs no response other than yes, the Defendants falsely represented the alleged assessment debt because Mr. Rose did not owe the debt in the collection letter, as demonstrated *supra*. But more to the point, in 2014 the North Carolina Court of Appeals found that communications were an attempt to collect a debt given "the existence of 'a strong connection between the plaintiffs and the underlying debt' and the fact that the debt collector 'actively worked to perpetuate the plaintiffs' impression that they were legally bound by the debt'." *Green Tree Servicing LLC v. Locklear*, 236

8

N.C. App. 514, 523 (2014). The Court found that the debt collector "acted in such a manner as 'to perpetuate the plaintiffs' impression that they were legally bound by the debt'." *Id*., at 524. Because Mr. Rose did not owe the debt, the letters falsely represented that Mr. Rose owed debt.

The Defendants cited the two collection letters in their brief. (Doc. 20-9, 20-10). Neither letter discloses that the debt collector is attempting to collect a debt or that any information obtained will be used for that purpose, language required by North Carolina statutes. The letters were misleading, according to the North Carolina General Assembly, precisely because they did not contain language specifically designed not avoid unfairly misleading putative debtors. That was the reason for mandating the language and without the language meant to avoid unfairly misleading debtors, the letter is unfairly misleading. Both N.C. Gen. Stat. § 58-70-110 and N. C. Gen. Stat. § 75-54 provide that failure to include this language in a dunning letter is "Deceptive representation."

Both dunning letters state an amount that the Defendants claimed was owed by Mr. Rose and state, "The cost will be added to your account," (*Id*.), or words to that effect. That is the account that Mr. Rose must pay every month, so this makes the amount a cost that he must pay. The second letter has an invoice attached. (Doc. 20-10). If these were not collection letters which informed Mr. Rose that he owed money to the Defendants and that he was supposed to pay that money, it begs the question what else could they possibly be. It seems unlikely from the context of the letters that the Defendant did *not* want Mr. Rose to pay this money. The Defendant never sent any other letters discussing amounts of money that were not meant to be paid but would be added to Mr. Rose's account. A dunning letter that did not request payment would be rather unusual.

But the Defendants claim that "Neither were explicit attempts to 'collect a debt' or threats of 'imminent' litigation; rather, they simply instruct Plaintiff of what remedies Presque Defendants

may pursue in the event of continued default." *Defendants' Brief*, p. 13. If the letters were not confusing before, they are now. So, in the Defendants' words, the letters told Mr. Rose that he would be sued if he did not pay the money, but somehow the letters do not say that he owes money. Under what regime can the Defendants sue Mr. Rose for debt he does not owe?

The Defendant cites three cases to support their argument. The first is *Winans v. Franklin Collection Serv.*, 2018 U.S. Dist. LEXIS 138709, (M.D.N.C., 2018), which was not attached to the Brief. This was an unreported FDCPA case from a federal court and is neither binding nor very persuasive for the substantive matters of this case. *See*, *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 544 (2007). The second cited case is *Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 22 (2d Cir. 2016), another case not selected for reporting by Westlaw. According to the opinion, "RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT." *Id.*, and so it is not binding even in the 2nd Circuit where it was not published. The last case cited is *Wilkes Natl. Bank v. Halvorsen*, 126 N.C. App. 179 (1997). This is another FDCPA case and was decided a dozen years prior to the 2009 Amendments of Chapters 58 and 75, which expanded both statutes greatly, and cannot apply to the present iteration of the statute.

The North Carolina Supreme Court has guided our analysis of North Carolina statutory law:

> Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks to accomplish. The statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently.

*Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 81–82 (1986) (citations omitted). For more recent support after the 2009 amendments in the context of § 75-54, s*ee Green Tree Servicing LLC v. Locklear*, 236 N.C. App. 514, 520–21 (2014).

4. **The claims for breach of fiduciary duty survives because the debt was invalid.**

The Defendants base their entire defense for the breach of fiduciary duty claim is that their "actions that were specifically permitted and authorized under the Governing Documents and statute(s)," (*Defendants' Brief*, pp. 14-15) and "the Defendants were authorized to bill Plaintiff for the work." *Defendants' Brief*, p. 15. Since the relevant Declaration and statutes show that the Defendants could not collect the alleged debt, these defenses crumble and the claims cannot be dismissed.

5. **The claim for constructive fraud survives because the debt was invalid.**

Again, the Defendants rest much of their defense on the validity of the debt they were collecting. However, they run into hard law very quickly. First, the Defendants are somewhat correct when they say, "the issue of whether the parties were in a relationship of 'trust and confidence' need not be decided" (*Defendants' Brief*, p. 15) because pursuant to N.C. Gen. Stat. § 47C-3-103 "the officers and members of the executive board shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent persons would exercise under similar circumstances in like positions." So the Defendants were in a position of "trust and confidence" by statute.

For the next step in the analysis, the Defendants state:

Plaintiff has not alleged that Presque Defendants harmed him by making specific misrepresentations; rather, Plaintiff only alleges [incorrectly] that, by assessing Plaintiff the cost of the Work [without authority to do so], Presque Defendants breached a fiduciary duty. However, since Presque Defendants were so authorized, any claim that they "took advantage of" Plaintiff in this regard must be dismissed .

*Defendants' Brief*, pp. 15-16. However, Mr. Rose clearly alleged injury in the complaint:

254. Despite its lack of authority to assess expenses against Mr. Rose, it did so anyway.

255. Despite its fiduciary duty to Mr. Rose, Presque and the Board did not seek to protect Mr. Rose's interests.

256. In so doing, the Defendant Presque and the Board breached their fiduciary duty to Mr. Rose.

257. Defendants collected fees they were not expressly allowed to collect, pursuant to N.C. Gen. Sta. § 47C-3-116(h).

258. In so doing, the Defendant Presque and the Board breached their fiduciary duty to Mr. Rose.

*Amended Complaint*, pp.27-28 (Doc 4). Assessing unauthorized expenses, failure to protect Mr. Rose's interests, and collection of unauthorized fees were all damages alleged in the Amended Complaint.

The Defendants end this argument by claiming that "Plaintiff has alleged no facts tending to show that Presque Defendants gained anything by assessing Plaintiff and seeking collections for his delinquent debt." *Defendants' Brief*, p. 16. Yet the entire Amended Complaint is replete with allegations that the Defendants acted in this way to make Mr. Rose pay for the deck repairs rather than the Defendants. Moreover, the Amended Complaint states that, because of their actions:

257. Defendants collected fees they were not expressly allowed to collect, pursuant to N.C. Gen. Sta. § 47C-3-116(h). * * *

264. As a consequence of the collection of unlawful fees, the Defendants have taken advantage of their positions of trust with Mr. Rose to their own financial advantage."

*Amended Complaint*, p. 29. Mr. Rose incorporated all allegations in all parts of the Complaint into each section of the Amended Complaint and each claim is well supported with factual allegations. The collection of money is a monetary gain by the Defendants.

**6. The request for equitable accounting is proper because the Plaintiff made well-founded allegations in equitable law.**

Simply stated, Mr. Rose cannot be fully and completely compensated by claims at law because the statutory claims available to Mr. Rose do not compensate him for the Defendants' breach of fiduciary duty. To correct the Defendants' Brief, Mr. Rose did not make a *claim* for

12

Equitable Accounting because "It is a remedy, not an independent cause of action, and is available only if the plaintiff first shows that he lacks an adequate remedy at law and alleges facts in the complaint to that effect." *Elhulu v. Alshalabi*, 2021 WL 1708580, at *8 (N.C. Super. Apr. 29, 2021). The Court may note that Mr. Rose requested an equitable accounting. *Amended Complaint*, p. 30, ¶ 272. (Doc. 4). The Amended Complaint clearly alleged the damages at law and relief for those damages is specific to claims at law. Without reciting all of the Amended complaint and applicable law, none of the statutes upon which Mr. Rose bases his claims allow for accounting. An Equitable Accounting is specifically an equitable remedy outside the statutory law in this case.

**WHEREFORE,** the Plaintiff respectfully moves this Court to allow the Plaintiff to **DENY** the Defendant's Motion for Judgment on the Pleadings, and such other and further relief as may be necessary, just, and proper.

**TODAY** is October 31, 2022.

**COLLUM & PERRY**

By: *ls/ M. Shane Perry*
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Fax: 704-663-4178
shane@collumperry.com

13

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
File No. 1:22-CV-478

| | |
|---|---|
| HAYDEN SCOTT ROSE,<br><br>**Plaintiff**<br><br>v.<br><br>PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., *et al*.,<br><br>**Defendants** | RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically via CM/ECF with the United States District Court, Middle District of North Carolina, with notification being sent electronically to all counsel of record.

**TODAY** is October 31, 2022.

**COLLUM & PERRY**

By:     *ls/ M. Shane Perry*
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Fax:  704-663-4178
shane@collumperry.com

14