| | |
|---|---|
| **HAYDEN SCOTT ROSE,**<br><br>         **Plaintiff**<br>   v.<br><br>**PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc.,** *et al.,*<br><br>         **Defendants** | **BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**NOW COMES** Plaintiff, Hayden Scott Rose, by and through Counsel, and pursuant to F. R. Civ. P. Rule 56 and LCvR 56.1, respectfully moves this Court to enter an order granting Summary Judgment to the Plaintiff for his claims pursuant to N.C, Gen. Stat. § 58-70-90, *et seq.*, N.C. Gen. Stat. § 75-50, *et seq.*, and 15 U.S.C. § 1692 as stated herein. In support of this Motion, the Plaintiff shows this Court the following:

 The standard for a motion under Rule 56 is well established:

> Summary judgment is properly granted where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. The nonmoving party must do so by offering sufficient proof in the form of admissible evidence rather than relying solely on the allegations of her pleadings.

*Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (internal citations and punctuation omitted).

 At this point in the case the parties have exchanged most of their discovery; the Plaintiff is still waiting for the production of documents from Defendant Bagwell Holt Smith, P.A. (BHS). With the evidence provide by the Defendants, their admissions and depositions, as well as the Plaintiff's evidence, the Plaintiff will demonstrate to the Court that, on the claims discussed

*infra*, there is no genuine issue of material fact and the Plaintiff is entitled to judgment as a matter of law.

The facts of this case are set out in the Amended Complaint, which is incorporated herein by reference. This case revolves around the collection of an assessment made against the Plaintiff, Mr. Rose (a condominium owner), for repairs to the deck of his condominium. As Mr. Rose will demonstrate, the condominium owners association Presque Isle Villas Condominium Homeowner's Association, Inc. (Presque) was liable for the repairs to the deck. Instead, Presque, Presque Isle Villas Condominium Homeowner's Association, Inc., Board of Directors (Presque Board), the management company Community Association Management, Ltd. (CAM), and the law firm who advised all three, BHS, all began a concerted and unlawful effort to collect the assessment against Mr. Rose.

Mr. Rose hired two attorneys before present counsel to explain the law to the defendants, but they would not be dissuaded. Eventually, the Defendants threatened Mr. Rose with foreclosure on his home. The Defendants locked Mr. Rose out of benefits that he had paid for in an effort to collect the alleged debt. They then began a collections campaign meant to intimidate Mr. Rose into paying the unlawful assessment. Mr. Rose offered to pay the improper assessment if it would be returned should it be determined that he did not owe it. The Defendants refused.

Eventually the Plaintiff filed this lawsuit to stop the collection and to recover for damages as described in the Amended Complaint, which include causing Mr. Rose to lose money and other damages such as significant embarrassment due to unlawful publication of the alleged debt to third parties.

The filing of the lawsuit did not stop the Defendants' ongoing violations of law. For example, N.C. Gen.§ 47C-3-107.1 states that:

2

> Unless a specific procedure for the imposition of fines or suspension of condominium privileges or services is provided for in the declaration, a hearing shall be held before the executive board or an adjudicatory panel appointed by the executive board to determine if any unit owner should be fined or if condominium privileges or services should be suspended pursuant to the powers granted to the association in G.S. 47C-3-102(11).

*Id*. Regardless of whether Mr. Rose owed the alleged debt, the Defendants violated the law by cancelling his services without a hearing. This violation continues:

> Q: Did the HOA suspend Mr. Rose's access to the website services?
> A: Yes.
> Q: When was Mr. Rose's website access suspended?
> A: I believe that once an account goes to lien, the system automatically locks out any owners who reach that stage.
> Q: Was the suspension done as part of the collections campaign?
> A: Yes, part of the collection process.
> Q: Has Mr. Rose's website access been continuously suspended since it was first suspended?
> A: I believe if he's still in collections, then yes, he still does not have access.
> Q: So is it still suspended right now?
> A: To the best of my knowledge.
> Q: Was a hearing held before Mr. Rose's services were suspended?
> A: Not to my knowledge.

*Deposition of Staci Green* pp. 57:24-58:17. (Exhibit A) There was no notice or hearing provided for Mr. Rose.

The first determination this Court should make is whether Mr. Rose owed the assessment at all. If Mr. Rose did not owe the debt, every attempt to collect the debt was unlawful. Should the Court determine that Mr. Rose did owe the assessment, the Defendants all engaged in collection activity that is illegal even for a valid debt. But the law is clear, as the Court will see, and Mr. Rose should never have been assessed for the deck repairs.

## DECK REPAIR RESPONSIBILITY

3

This analysis starts with how the Declaration of Condominium for Presque Isle Villas, (the Declaration)[1] defines "Limited Common Areas and Facilities," since this is what the Defendant has assessed Mr. Rose to repair. The Declaration states that Limited Common Areas and Facilities are "those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, including any deck, porch, patio, courtyard, balcony… etc.". (Exhibit B, p.3, ¶ 6). This obviously includes Mr. Rose's deck, and this was admitted by the Defendants in deposition:

> Q: Is any deck included in the definition of the limited common areas and facilities?
> A: Yes.
> Q: Would Mr. Rose's deck be included in that?
> A: Yes.

*Deposition of Staci Green*, pp. 27:13-28:2. (Exhibit C).

The Declaration then states that "the cleanliness and orderliness of the Limited Common Areas and Facilities shall be the responsibility of the individual Unit Owner, <u>but the responsibility for</u> maintenance, painting, <u>repair</u> and replacement thereof, together with control over the exterior decoration of same, <u>shall be and remain with the Association</u>…". *Id* (emphasis supplied). This statement expressly states that the decks are the "repair" responsibility of the Association.

The Defendants have asserted to Mr. Rose that § 47C-3-107 shifts the burden of the maintenance of a Limited Common Element to the homeowner. This is inaccurate. N.C. Gen. Stat. § 47C-3-107 states only that "the cost of maintenance, repair or replacement of a limited common element shall be assessed as provided in G.S. 47C-3-115(b)." *Id*. Since Mr. Rose's deck

---

[1] The Declaration can be found on file at the Wake County Register of Deeds, Book 2233 Page 287.

is a Limited Common Element, we look to § 47C-3-115(b), but that is no help to the Defendants and only supports Mr. Rose's claim. N.C. Gen. Stat. § 47C-3-115(c)(1) states:

> Any common expense associated with the maintenance, repair, or replacement of a limited common element must be assessed against the units to which that limited common element is assigned, equally, or in any other proportion that the declaration provides;

*Id.* As we have already seen *supra*, the Declaration orders that responsibility for repair of limited common elements shall be and remain with the Association. The issue is clearly resolved and there is no room for a question. Nor do the By Laws delegate responsibility on this issue (Exhibit D) and "Q: If the By-Laws do not define common area and facilities, where would you look for a definition? A: In the Declaration." *Deposition of Staci Green*, p 31:21-23. (Exhibit C).

Still, the Defendants have proffered the rather creative argument that while the Association might be responsible for the repair of the deck as a limited common element, Mr. Rose is required to *pay* for it.

> Q: Was the Association responsible for repairing Mr. Rose's deck?
> A: Well, responsibility and payment are two different things.
> Q: So, you would say that the responsibility does not include payment?
> A: It doesn't say it there, no.
> Q: Well, I'm asking what your opinion is. Do you think that being responsible for the repair of the deck would mean that you don't pay for it?
> A: Well, that's when we rely on advice of counsel.
> Q: So, did counsel tell you that it was not your duty to pay for it?
> A: Well, it's ---

MR. RACINE:   Objection.

THE WITNESS:   It's indicated in the chart.

> Q: (Mr. Perry) Well, we're talking about the Declaration. Would you say that the Declaration controls over that chart?
> A: The chart is a summary of the language in the Declaration and state statute.
> Q: But if there was a conflict between that chart and the Declaration, which would control?

5

> MS. BARANYAI: Going to object. You're asking for a legal conclusion here.
>
> Q: (Mr. Perry) Which would you follow?
> A: Well, if we're not sure, then we rely on the advice of counsel.
> Q: Did you ask counsel about this?
> A: Yes.
> Q: And what did counsel tell you?
>
> MR. RACINE: Objection.

*Deposition of Staci Green*, 28:24-30:6. (Exhibit C). This argument is as baffling as it is evasive. The Declaration also states that "the cleanliness and orderliness of the Limited Common Areas and Facilities shall be the responsibility of the individual Unit Owner[.]" Declaration, p. 3, ¶ 6. (Exhibit B). For example, the Association does not pay for cleanliness and orderliness because that is the condominium *owner's* responsibility. The Defendants cannot alter the meaning of "responsibility" to suit their whim.

Despite the clarity of the law, the Defendants began a campaign of harassment. None of the collection activities of the Defendants were lawful because Mr. Rose never owed the debt. Moreover, their collection tactics violate collection laws even for valid debts.

Next, Mr. Rose will demonstrate that each statute common law below was violated. He will move this Court for summary judgment on the issue of the violation of law of each statute. This will leave the issue of how many times each statute was violated for a jury determination.

**VIOLATIONS of N.C. GEN. STAT. § 75-50, *et seq*. as to PRESQUE and the BOARD**

These Defendants, through their agent CAM, have violated N.C. Gen Stat. § 75-51(3) (making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt) by, for example the August 2, 2021, dunning letter sent for Presque, demanding payment to Presque, that threatens to report Mr. Rose for non-payment for a debt he did not owe. (Exhibit E).

These Defendants, through their agent BHS, have violated N.C. Gen Stat. § 75-51(6) (representing that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law) by, for example, the June 22, 2201, BHS dunning letter which threatens a lien without a right to do so. (Exhibit F).

These Defendants have violated N.C. Gen Stat. § 75-51(8) (threatening to take any action not permitted by law) by, for example, for example, the June 22, 2201, BHS dunning letter which threatens a foreclosure without a right to do so. (Exhibit F).

These Defendants have violated N.C. Gen Stat. § 75-53(2) (using any form of communication which ordinarily would be seen or heard by any person other than the consumer that displays or conveys any information about the alleged debt other than the name, address and phone number of the debt collector) by discussing Mr. Rose's debt in front of board members and other persons who were not members of the board during a Presque board meeting:

>       Q: Did the meeting minutes mention the owner?
>       A: Yes. The owner, yes.
>       Q: Of what unit?
>       A: 308.
>       Q: And that's Mr. Rose?
>       A: Yes.
>       Q: Do you know what was said at the meeting?
>       A: Whatever's listed in the minutes.
>       ...
>       Q: Is everyone there a member of the Board or the Association?
>       A: No.

*Deposition of Staci Green*, pp. 37:8-38:1. (Exhibit G). The meeting notes specifically discuss debt collections against Mr. Rose, and the Defendant admits that third parties were present at the time. (Exhibit H). Moreover, the notes were left in the conference room for months and accessible to anyone who might enter, including other condominium owners and their guests:

7

> Q: Okay. To the best of your knowledge, were you made aware that there was a binder that housed the collection of Board meetings after they had been transcribed?
> A: Yes.
> Q: Do you know where that binder was located?
> A: It was in one of the conference rooms in the clubhouse.
> Q: Okay. How do you access the clubhouse?
> A: Only owners have a key, and you have to use a key to get in.
> Q: Okay. So it's not generally open to anyone that walks into the clubhouse?
> A: It's locked.
> Q: I have a quick redirect after that. Do all of the owners have keys to the clubhouse?
> A: They should.
> Q: So any owner can access that conference room. Is that correct?
> A: Depending on if it's locked or not locked.
> Q: Do they have a key to the conference room?
> A: Owners should not. I can't speak to that. I don't know.
> Q: Do you know whether the conference room stays locked or not?
> A: I believe -- well, again, I can't speak directly to it. I don't know.

*Deposition of Staci Green*, pp. 78:21-80:14. (Exhibit I).

Mr. Rose never gave and Defendant permission to publish collection information relevant to him to any third party:

> Q: Right. But as you answer for CAM and Presque, did Mr. Rose ever give CAM or Presque written permission for information to be shared about Mr. Rose's alleged debt?
> A: Not to my knowledge.

*Deposition of Staci Green*, p. 59:21-25. (Exhibit A).

These Defendants have violated N.C. Gen Stat. § 75-54(2) (failing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt, unless the communication is made to a third-party pursuant to G.S. 75-53 for the purpose of obtaining location information about the debtor) by failing to include the required disclosures in their collection letters. (Exhibit J).

These Defendants have violated N.C. Gen Stat. § 75-54(4) (falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; * * * or

8

falsely representing the creditor's rights) by attempting to collect debt that Mr. Rose did not owe, (Exhibit J) and by representing that the Defendants could file a lien on Mr. Rose's property. (Exhibit J).

These Defendants have violated N.C. Gen Stat. § 75-54(6) (falsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges) by claiming that the Defendants could collect lean and collection fees against Mr. Rose without a legal right to do so. (Exhibit J)

These Defendants have violated N.C. Gen Stat. § 75-55(2) (attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge) by attempting to collect late fees and collection fees when the Defendants were not entitled to collect those fees. (Exhibit E).

## VIOLATIONS of N.C. GEN. STAT. § 58-70-90, *et seq*. as to CAM

CAM was a third-party debt collector as defined by N.C. Gen. Stat. § 58-70-90(1) because CAM was collecting a debt owed to the other Presque Defendants. Pursuant to N.C. Gen. Stat. § 58-70-15(a) "Collection agency" means a person directly or indirectly engaged in soliciting, from more than one person delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claim. The Defendants have admitted that CAM was collecting a debt owed to the other Presque Defendants.

> On October 20, 2020, CAM, on behalf of the Association, forwarded correspondence to all unit owners outlining the nature of the Work, projecting the cost of the Work, and suggesting a common contractor, The Pro Fixer ("TPF") to perform the Work.

*Defendants' Motion for Judgment on the Pleadings*, p. 3 (Doc. 20). The Defendants continue:

> Plaintiff is liable for the cost of the Work and the costs incurred by the

9

>    Association in their requests to collect Plaintiff's defaulted debt pursuant to §§ 47C-3-107, 47C-3-115(b), 47C-3- 115(c), and the Governing Documents.

*Id*, p.4 (Doc 20). The Defendants admit this deposition as well:

>    Q: [W]as the alleged debt originally owed by Mr. Rose to Presque or to The Pro Fixer?
>    A: So we gave owners the option to either have the Association perform the work and add the cost to the account or for the owner to do the work directly and pay the vendor directly. So in this particular instance, The Pro Fixer did work on behalf of the Association, and then we billed back Mr. Rose's limited common element expense.

*Deposition of Staci Green*, 63:11-20. (Exhibit K).

As CAM is a third-party debt collector, and N.C. Gen. Stat. § 58-70-90, *et seq*. applies to CAM, this Court should find the following:

CAM has violated N.C. Gen Stat. § 58-70-1 by its collection actions as alleged herein without securing a permit to collect debt.

CAM has violated N.C. Gen Stat. § 58-70-95(3) (making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt) by threatening Mr. Rose with the possibility of reporting the alleged debt on his credit report when the Defendants had no right to do so. (Exhibit L).

CAM has violated N.C. Gen Stat. § 58-70-95(6) (representing that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law) by threatening to place a lien on Mr. Rose's property when the Defendants had no right to do so. (Exhibit M).

CAM has violated N.C. Gen Stat. § 58-70-95(8) (threatening to take any action not permitted by law) by its actions as alleged herein. by threatening to foreclose on Mr. Rose's property when the defendants had no right to do so. (Exhibit M).

CAM has violated N.C. Gen Stat. § 58-70-105(2) (using any form of communication which ordinarily would be seen or heard by any person other than the consumer that displays or conveys any information about the alleged debt other than the name, address and phone number of the collection agency) by publicly discussing Mr. Rose's debt on a Google Review. The Defendant admitted in deposition that this was their public response:

> Q: 1. You failed to pay the Presque Isle special assessment for deck repairs as assessed by the Board of Directors to all owners with decks. 2. Deck repairs were completed throughout the community, not just your unit 3. Your account is currently with the attorney for collections pursuant to the Board of Directors Collection Policy. 4. Because you're in collections, the Association website account and payment section is unavailable to you. 5. When you bring your account current with the Association's attorney, your website access will be restored. As you see, all of your issues are related to Presque Isle's special assessment and your refusal to pay it."
> Did I read that accurately?
> A: Yes.
> Q: Who published that?
> A: The owner of our company.
> Q: And that will be CAM?
> A: Yes.
> …
> Q: So does it mention an alleged debt that Mr. Rose owes you?
> A: Yes. It says, "Special Assessment for deck repairs."

*Deposition of Staci Green*, p. 57:6-58:15. (Exhibit A).

CAM has violated N.C. Gen Stat. § 58-70-110(2) (failing to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector) by failing to make the required disclosures. (Exhibit N).

CAM has violated N.C. Gen Stat. § 58-70-110(4) (falsely representing the character, extent, or amount of a debt against a consumer * * * or falsely representing the creditor's rights or

11

intentions) by attempting to collect an alleged debt that Mr. Rose never owed and by falsely representing that the defendants could foreclose on Mr. Rose's property. (Exhibit M)

CAM has violated N.C. Gen Stat. § 58-70-110(6) (falsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges) by threatening to foreclose on Mr. Rose's property when it had no legal grounds to do so. (Exhibit M

CAM has violated N.C. Gen Stat. § 58-70-115(2) (collecting or attempting to collect from the consumer all or any part of the collection agency's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge) by attempting to collect collection fees from Mr. Rose when it had no right to do so. (Exhibit M).

CAM has violated N.C. Gen Stat. § 58-70-115(7) by failing to comply with N.C. Gen Stat. § 58-70-1.

## VIOLATIONS OF 15 U.S.C. § 1692 by BAGWELL HOLT SMITH, P.A.

The law firm that advised the Presque, Presque Board and CAM also participated in the collection of the unlawful assessment. The Defendant's own evidence and testimony demonstrates the following violations:

BHS violated 15 U.S. Code § 1692e(2) (by false representation of the character, amount, or legal status of any debt) with every collection communication wherein BHS alleged that Mr. Rose owed the debt because Mr. Rose never owed the debt. (Exhibit O).

BHS has violated 15 U.S. Code § 1692e(4) (the representation or implication that nonpayment of any debt will result in the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor

intends to take such action) by threatening foreclosure against Mr. Rose because the Defendants never had the legal right to foreclose on Mr. Rose's property. (Exhibit O

BHS has violated 15 U.S. Code § 1692e(5) (the threat to take any action that cannot legally be taken or that is not intended to be taken) when it threatened foreclosure and increased fees because it had no legal right to make such threats. (Exhibit O).

BHS has violated 15 U.S. Code § 1692f(1) the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law) by attempting to collect collection and legal fees when the Defendants were not entitled to do so.(Exhibit O).

BHS has violated 15 U.S. Code § 1692f(6) (threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest) by threatening to foreclose on Mr. Rose's property when the Defendants had no legal right to do so. (Exhibit O).

BHS has violated 15 U.S. Code § 1692g by its actions as alleged herein by failing to provide a validation letter pursuant to this statute.

## BREACH OF FIDUCIARY DUTY as to PRESQUE and the BOARD

For a breach of fiduciary duty to exist:

> [T]here must first be a fiduciary relationship between the parties. Such a relationship has been broadly defined by this Court as one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence and it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

*Dalton v. Camp*, 353 N.C. 647, 651-52 (2001) (emphasis supplied). The Defendants should have, in equity and good conscience, acted in good faith and due regard to Mr. Rose's interests which

13

included (but are not limited to) protection from unethical assessment practices.

A fiduciary relationship existed in fact between Mr. Rose and the Defendants. Pursuant to N.C. Gen. Stat. § 47C-3-103:

> the officers and members of the executive board shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent persons would exercise under similar circumstances in like positions.

*Id*. Mr. Rose is a member of the Presque condominium owners association by virtue of his ownership of the condominium.

As this Court has seen, Mr. Rose is not responsible for the repair of the deck. Pursuant to N.C. Gen. Stat. § 47C-1-103(16) "'Limited common element' means a portion of the common elements allocated by the declaration ... for the exclusive use of one or more but fewer than all of the units." N.C. Gen. Stat. § 47C-3-107 states in relevant part, "the cost of maintenance, repair or replacement of a limited common element shall be assessed as provided in G.S. 47C-3-115(b)." N.C. Gen. Stat. § 47C-3-115(b) provides that "all common expenses must be assessed against all the units in accordance with the allocations set forth in the declaration." N.C. Gen. Stat. § 47C-3-115(c) provides that the expense of the maintenance or repair of a Limited Common Element can be assessed against the owner so benefited only "to the extent required by the declaration."

Presque's Declaration of Condominium is recorded in Book 2233 at Page 287 with the Orange County North Carolina Register of Deeds. Pursuant to § 6 of Presque's Declaration, the Limited Common Areas and Facilities is defined as "those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, including any deck, porch, patio, courtyard, balcony… etc.". (Exhibit B). The Declaration further states that "the cleanliness and orderliness of the Limited Common Areas and Facilities shall be the responsibility of the individual Unit Owner, but the responsibility for maintenance, painting repair and replacement

thereof, together with control over the exterior decoration of same, shall be and remain with the Association, but each Unit Owner shall be responsible for repair and maintenance of that Unit's HVAC unit". *Id*. This statement expressly states that the decks are the "maintenance, painting, repair and replacement" responsibility of the Association. The Declaration provides that the only cost of limited common expenses that Unit Owners are to individually bear is for the repair and maintenance of their HVAC unit.

Despite its lack of authority to assess expenses against Mr. Rose, it did so anyway. Despite its fiduciary duty to Mr. Rose, Presque and the Board did not seek to protect Mr. Rose's interests. In so doing, the Defendant Presque and the Board breached their fiduciary duty to Mr. Rose.

Defendants collected fees they were not expressly allowed to collect, pursuant to N.C. Gen. Sta. § 47C-3-116(h). In so doing, the Defendant Presque and the Board breached their fiduciary duty to Mr. Rose and these Defendants are liable to Mr. Rose for the breach of their fiduciary duty.

## CONSTRUCTIVE FRAUD as to PRESQUE and the BOARD

Pursuant to N.C. Gen. Stat. § 47C-3-103 "the officers and members of the executive board shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent persons would exercise under similar circumstances in like positions." As demonstrated herein have Presque and the Board have breached that fiduciary duty with Mr. Rose.

As a consequence of the collection of unlawful fees, the Defendants have taken advantage of their positions of trust with Mr. Rose to their own financial advantage. The Defendants sought to

benefit themselves during the transaction in which they took advantage or Mr. Rose's trust, and so the Defendants are liable to Mr. Rose for this constructive fraud.

### EQUITABLE ACCOUNTING as to PRESQUE and the BOARD

Mr. Rose has asserted a valid claim for relief in equity, specifically a breach of fiduciary duty. An accounting is necessary to compel discovery of information regarding accounts held exclusively by the Defendants. Mr. Rose cannot be fully and completely compensated by claims at law because the claims available to Mr. Rose at law do not compensate him for the Defendants' breach of fiduciary duty. Wherefore, Mr. Rose's request for an equitable accounting should be granted.

**WHEREFORE,** the Plaintiff respectfully moves this Court to enter an order granting Summary Judgment to the Plaintiff which determines that the following:

1. The Declaration of Condominium and relevant statutes hold Presque liable for the cost of the repairs as described in the Amended Complaint;

2. Presque and Presque Board have violated N.C. Gen. Stat. § § 47C-3-107.1, § 75-51(3), (6), and (8), § 75-53(2), § 75-54(2), (4), and (6), and § 75-55(2);

3. Presque and Presque Board have breached a fiduciary duty to Mr. Rose, committed a constructive fraud against Mr. Rose and should provide an equitable accounting to Mr. Rose;

4. CAM was a third-party debt collector as defined by N.C. Gen. Stat. § 58-70-90(1) and has violated N.C. Gen Stat. § 58-70-1, § 58-70-50, § 58-70-95(3), (6), and (8), § 58-70-105(2), § 58-70-110(2), (4), and (6), and § 58-70-115(2) and (7);

5. BHS violated 15 U.S. Code § 1692e(2) and (4), § 1692f(1), and (6), and § 1692g; and,

6. Grant Mr. Rose such other and further relief as may be necessary, just, and proper.

**TODAY** is April 4, 2023.

**COLLUM & PERRY**

16

By: /s/ M. Shane Perry
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Fax: 704-663-4178
shane@collumperry.com

## CERTIFICATE OF WORD COUNT

Pursuant to LR 7.3(d), this brief does not exceed 6,250 words.

**TODAY** is April 4, 2023.

**COLLUM & PERRY**

By: /s/ M. Shane Perry
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Fax: 704-663-4178
shane@collumperry.com

| | |
|---|---|
| **HAYDEN SCOTT ROSE,**<br><br>         **Plaintiff**<br><br>  v.<br><br>**PRESQUE ISLE VILLAS**<br>**CONDOMINIUM HOMEOWNERS**<br>**ASSOCIATION, Inc.,** *et al.***,**<br><br>         **Defendants** | **BRIEF IN SUPPORT OF MOTION**<br>**FOR PARTIAL SUMMARY JUDGMENT** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically via CM/ECF with the United States District Court, Middle District of North Carolina, with notification being sent electronically to all counsel of record.

**TODAY** is April 4, 2023.

              **COLLUM & PERRY**

      By:  */s/ M. Shane Perry*
           Attorney for Plaintiffs
           NC Bar No. 35498
           109 W. Statesville Ave.
           Mooresville, NC 28115
           Telephone: 704-663-4187
           Fax: 704-663-4178
           shane@collumperry.com