# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION
### File No. 1:22-CV-478

| | |
|---|---|
| **HAYDEN SCOTT ROSE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., BOARD OF DIRECTORS, COMMUNITY ASSOCIATION MANAGEMENT, Ltd., and BAGWELL HOLT SMITH, P. A.,**<br><br>**Defendants.** | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**PRESQUE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

16290262.1

# TABLE OF CONTENTS

**DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION**…………………..…..................1

**MEMORANDUM**………………………………………………………….……………2

**I.      DECK REPAIR RESPONSIBILITY**………………………………………………...3

    **A. <u>Plaintiff was clearly responsible for paying for the deck repairs</u>**………………… 3

It is undisputed that the Declaration, By-Laws, and Community Handbook, in conjunction with Federal and State Statutes control Presque Isle Villas, that the Presque Community's "Limited Common Area and Facilities" shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, including any deck, and that payment for such repairs is the responsibility of Plaintiff.

       **1. The Declaration**……………………………………………………….......3

       **2. The By Laws**………………………………………………………...........4

       **3.  N.C. Gen. Stat. § 47C-1-101 *et seq*. ("NCCA"))**……………………….…5

       **4. Advice of Counsel Defense**……………………………………………….8

**II.     DEBT COLLECTION AUTHORITY**………………………………..……………10

    **A.  <u>Presque Defendants had express authority per the Governing Documents and Statutes to pursue collection and foreclosure for Plaintiff's unpaid debt</u>**…...10

The Governing Documents and Statutes expressly authorize Presque Defendants to pursue collection of Plaintiff's defaulted debt, including imposition of collection-related costs, attorney's fees, and interest.

       **1. The By Laws**……………………………………………………...............11

       **2. The Declaration**…………………………………….……………………… 11

       **3. The NCCA (N.C. Gen. Stat. § 47C-1-101, *et seq*.)**……..……………...........12

**III.    DEBT COLLECTION EFFORTS**……………………………………………..12

Plaintiff's arguments are based on the incorrect assumption that Presque Defendants lacked the authority to 1) bill Plaintiff for the maintenance and repair; and 2) lacked authority to pursue collection of the arrearage.  Further, Plaintiff fails to supports its arguments in compliance with Rule 56.

i

    **A. Debt Collection Letters**............................................................13

        1.  August 2, 2021 Letter and June 22, 2021 Letters.........................14

        2.  August 30, 2021 Letter...............................................................15

    **B. Binder of Meeting Minutes**...................................................17

    **C. Google Response**..................................................................18

**IV.  PLAINTIFF'S MOTION REGARDING CLAIM FOR BREACH OF FIDUCIARY DUTY, CONSTRUCTIVE FRAUD AND EQUITABLE ACCOUNTING MUST FAIL AS A MATTER OF LAW**...........................19

Plaintiff has failed to sufficiently support the claims with the requisite showing pursuant to Rule 56.

    **A. Breach of Fiduciary Duty Claim**.............................................19

    **B. Constructive Fraud**...............................................................20

    **C. Equitable Accounting**...........................................................21

**CONCLUSION AND CERTIFICATION**........................................22

# **TABLE OF AUTHORITIES**

*Cf. United States v. Painter*
    314 F.2d 939, 943 (4th Cir. 1963) (S.D. Ohio Aug. 16, 1991))…………………...8

*United States ex rel. Drakeford v. Tuomey*
    792 F.3d 364, 381 (4th Cir.2015).……..................................................................9

*United States v. Butler*
    211 F.3d 826, 833 (4th Cir. 2000)…… ……………………………………...……9

*United States v. Mallory*
    988 F.3d 730, 739 (4th Cir.2021)……………………….…………….………...9

*Celotex Corp. v. Catrett*
    477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)……………………..13

*Winans v. Franklin Collection Serv.*
    M.D.N.C. No. 17cv659, 2018 U.S. Dist. LEXIS 138709, at *8-10
    (Aug. 16, 2018), ………………………….…………………………………15-17

*Avila v. Riexinger & Assocs., LLC*
    644 F. App'x 19, 22 (2d Cir. 2016) …………………………………………16

*Wilkes Natl. Bank v. Halvorsen*
    126 N.C.App. 179, 182, 484 S.E.2d 582 (1997)………………….…………...17

*Adum v. Albemarle Plantation Prop. Owners Ass'n*
    021 NCBC 4, 65, 2021 NCBC LEXIS 6, *36, 2021 WL 197298…….................19

*Green v. Condra*
    2009 NCBC 21, at *96, 2009 NCBC LEXIS 20
    (N.C. Super. Ct. Aug. 14, 2009)……………………………………………19

*Barger v. McCoy Hillard & Parks*
    346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) …………………………20

*Rhodes v. Jones*
    232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950))), …………………….…20

*Mkt. Choice, Inc. v. New England Coffee Co.*
    2009 U.S. Dist. LEXIS 73627 at *35-*36 (W.D.N.C. Aug. 18, 2009)…………21

*Hinson v. United Fin. Servs., Inc.*
    123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (1996)…………………………...21

*Gottfried v. Covington*
   2014 NCBC 26, 35, 2014 NCBC LEXIS 26, \*17…………………………….…..21

**Federal Rules of Civil Procedure and Evidence**

Federal Rule of Evidence, R. 701……………..…………………………………………..8

Fed. R. Civ. P. 56...……………………………………………..……………..2, 13

**Applicable Statute(s)**

N.C. Gen. Stat. § 58-70-90 *et. seq.*, ……………………………………………..........2

N.C. Gen. Stat.. § 75-50, *et. seq*……………………………………………………2, 10

15 USC § 1692……………………………………………………………………...2, 16

N.C. Gen. Stat. §47(C)-3-115(c)……………………………………………….…5-6

N.C. Gen. Stat. § 47C-1-101 *et seq.* (North Carolina Condominium Act)……..5, 8, 12, 16

N.C. Gen. Stat.  § 47C-3-107………………………………………………..……….5

N.C. Gen. Stat. § 47C-3-115(b)……………………………………………..….…..5

N.C. Gen. Stat. § 58-70-1…………………………………………………..……...12

N.C. Gen. Stat. § 58-70-95(3) ……………………………………………….……..12

N.C. Gen. Stat. § 58-70-95(6) ……………………………………………….……..12

N.C. Gen. Stat. 58-70-95(8)……………………………………………………….....12

N.C. Gen. Stat. § 58-70-110(2)……………………………………………………12-13

N.C. Gen. Stat. § 58-70-110(4)………………………………………………..……12

N.C. Gen. Stat. § 58-70-110(6)……………………………………………………..12

N.C. Gen. Stat. § 58-70-115(2) …………………………………………………..….12

N.C. Gen. Stat. § 58-70-115(7) ……………………………………………………..12

N.C. Gen. Stat. §75-51………………………………………………………….. 13

N.C. Gen. Stat. § 75-54(2)…………………………………………………………15

**Exhibits Referenced in Memorandum:**

Exhibit 1 (Declaration of Condominium)………………………………….…....2-4, 12, 20

Exhibit 2 (By Laws of Presque Isle Villas Condominium Homeowners
        Association, Inc.…………..................... ………………………..2, 4, 5, 7, 8, 11

Exhibit 3 (Presque Isle Villas Community Handbook)…………………… ..….……2, 3, 5

Exhibit 4 (August 2, 2021 Letter)…………………………………………………..14

Exhibit 5 (June 22, 2021 Letter)…………………………………………………….14

Exhibit 6 (August 30, 2021 Letter)………………………………………………….15

Exhibits 7(A)-(F) (Collection letters)………………………………………………15

**Depositions Cited:**

Deposition of Plaintiff, Hayden Scott Rose

Deposition of Attorney Michael Ganley

Deposition of Staci Green

16289571.1

v

| | |
|---|---|
| **HAYDEN SCOTT ROSE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc., BOARD OF DIRECTORS, COMMUNITY ASSOCIATION MANAGEMENT, Ltd., and BAGWELL HOLT SMITH, P. A.,**<br><br>**Defendants.** | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## DEFENDANTS' RESPONSE AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, Presque Isle Villas Condominium Homeowners Association, Inc., Presque Isle Villas Condominium Homeowners Association, Inc., Board of Directors, Community Association Management, Ltd., ("Presque Defendants") respectfully submit this Response and Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Pl. Motion") [Doc. # 37] and Plaintiff's supporting brief ("Pl. Brief") [Doc. #38]" requesting that this Honorable Court deny Plaintiff's Motion, as Plaintiff's arguments are wholly without merit, contrary to existing law, and/or because genuine issues of material fact remain, as set forth below.

1

## MEMORANDUM

Plaintiff argues that summary judgment is appropriate on his claims under N.C. Gen. Stat. §§ 58-70-90 *et. seq.*, and 75-50, *et. seq.*, as well as 15 USC § 1692. Plaintiff's arguments are based on the following, erroneous conclusions:

(1) Presque Defendants had no authority to assess the cost of the deck maintenance and repairs to Plaintiff;

(2) Presque Defendants had no authority to pursue collection of assessment arrearages, including the imposition of collection-related fees, attorney's fees, liens, foreclosure and/or credit bureau reporting; and

(3) Presque Defendants falsely represented the alleged debt and failed to properly notify Plaintiff in various correspondence that [they] were debt collectors, seeking to recover a debt from Plaintiff.

Plaintiff generally offers more conclusory arguments than evidence and in many instances, Plaintiff simply reiterates the allegations of his Complaint. Regardless, Plaintiff fails to proffer evidence to meet his burden under Fed. R. Civ. P. 56, or to otherwise refute Presque Defendants' evidence that their actions were authorized by the documents governing this particular community ("Presque Community") (i.e. the Declaration of Condominium (Exhibit 1); Bylaws of Presque Isle Villas Condominium Homeowners Association, Inc. ("By Laws") (Exhibit 2); and Presque Isle Villas Community Handbook ("Handbook") (Exhibit 3) collectively ("Governing Documents")) as well as the applicable statutes governing condominiums in North Carolina, as set forth below; all of which point to the inescapable conclusion that Plaintiff was responsible for paying for the deck repairs; Presque Defendants were authorized to collect the debt; and Presque Defendants acted reasonably in attempting to collect such debt. Accordingly, Plaintiff's Brief [Doc. # 38] must fail and further, Plaintiff's Complaint must be dismissed.[1]

---

[1] Presque Defendants' filed a Motion for Judgment on the Pleadings on or about September 30, 2022 [Doc # 19] that remains pending with this Honorable Court.

# I. DECK REPAIR RESPONSIBILITY

## A. Plaintiff was clearly responsible for paying for the deck repairs.

*"The Association has the authority to have the work done and bill the owner.[2]*

\* \* \*

The crux of the dispute, and the bulk of Plaintiff's subject Motion and Brief centers on the inquiry of who was responsible for paying for the deck repairs to Plaintiff's Unit. It is undisputed that Plaintiff has failed to pay the deck repair assessment. (Dep. Plaintiff, at 49:15-50:1). It is also undisputed that the Declaration, By-Laws, and Community Handbook, in conjunction with Federal and State Statutes "…control Presque Isle Villas…." (Dep. Attorney Ganley, at 37:16-38:3).[3] Lastly, it is undisputed that the Presque Community's "Limited Common Area and Facilities" shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, including any deck…." which would necessarily include the deck for Plaintiff's Unit. (Declaration, Ex. 1, *supra,* at § 6); (Dep. Attorney Ganley, 30:13-31:7).

The Governing Documents and Statutes, referenced below, confirm that payment for the deck repair was, in fact, the responsibility of Plaintiff:

### 1. The Declaration:

Section 6 of the Declaration states:

"**Limited Common Areas** and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, **including any deck**, porch, patio…"

Section 9 of the Declaration states:

"…**each owner of any unit**…is deemed to **covenant and agree to pay** to the Association the annual assessments **or common charges** to be established and collected…"

---

[2] (Dep. Michael Ganley ("Attorney Ganley"), at 25:13-19).
[3] See also Declaration, By-Laws and Handbook (Ex. 1-3, supra), and N.C. Gen. Stat. §47(C)-3-115(c)(1) (North Carolina Condominium Act).

3

*(Declaration, Ex. 1, supra,* at §§ 6, 9); (*emphases added*).

**2. The By-Laws:**

ARTICLE III, Section 7:

Powers and Duties. The Board of Directors **shall have** the powers and duties necessary for the administration of the affairs of the condominium…The powers and duties **shall include** but not be limited to the following:

**(a) Operation, care, upkeep and maintenance of the common areas and facilities**;

**(b) Determination of the common expenses** required for the affairs of the condominium, including, but without limitation, the operation and maintenance of the property; and

**(c) Levying and collection of the common charges from Unit Owners.**

(*By-Laws,* Ex. 2, *supra,* at Art. III, § 7, p. 5) (*emphasis added*).

ARTICLE VI, Section 2:

Payment of Common Charges. All Unit Owners **shall be obligated to pay the common charges assessed by the Board of Directors** pursuant to the provisions of Section 1 of Article VI…"[4] (*emphasis added*).

ARTICLE VI, Sections 3:

Collection and Assessments. The Board of Directors s**hall assess the common charges against the Unit Owners**. (*Emphases added*);

ARTICLE VI, Section 5:

Maintenance and Repair. All maintenance and repair to any unit, structural or nonstructural, ordinary or extraordinary, and maintenance of and repairs and replacements to the common areas and facilities contained therein **shall be made by the Board and charged to all Unit Owners as a common expense**. (*Emphasis added*).

---

[4] Article VI, Section 1 of the By-Laws, as referenced in Section 2, *supra,* is entitled "Determination of Common Expenses and Fixing of Common Charges." (Ex. 2, *supra*).

4

(Bylaws, Ex. 2, *supra* at Art.VI, §§ 2, 3 and 5); *See also* Handbook, (Exhibit 3, *supra*, at 1) ("Payment for maintenance for 'Balconies' and 'Decks' is the responsibility of the "Owner.").

The Governing Documents could not be clearer. Maintenance and Repairs to limited common elements, such as Plaintiff's deck, are to be performed by, or on behalf of, Presque Defendants, and Presque Defendants <u>shall</u> thereafter charge such expenses to the affected unit owners.

### 3. **N.C. Gen. Stat. § 47C-1-101 *et seq.* (North Carolina Condominium Act ("NCCA")).**

The NCCA is just as clear – the costs incurred by Presque Defendants for repair to any limited common elements **must be** charged to Unit Owners. To be sure, N.C. Gen. Stat. § 47C-3-107 states,

> "… any common expense associated with the **maintenance of the limited common** element **shall be assessed** as provided in G.S. 47C-3-115(b)[5].

> \* \* \*

N.C. Gen. Stat. § 47C-3-115(c)(1) states that, to the extent required by the Declaration:

> "[a]ny common expense associated with the maintenance, repair, or replacement of a **limited common element must be assessed against the units** to which that limited common element is assigned, equally, or in any other proportion that the Declaration provides…"

N.C. Gen. Stat §§ 47C-3-107, 47C-3-115(b), and 47C-3-115(c); (*emphases added*)(See also FN 5, *supra*). Again, North Carolina statute(s) confirm, in conjunction with Sections 6 and 9 of the Declaration, that not only *could* Presque Defendants assess and bill Plaintiff for the deck repair, but they were ***required by law*** to bill Plaintiff. Thus, Plaintiff's theory that Presque Defendants were responsible for making the repairs *and* paying for them, if followed, could potentially have

---

[5] N.C. Gen. Stat § 47C-3-115(b) defers to § 47C-115(c)(1) in this instance, as the deck repair pertains to "Any common expense associated with maintenance, repair or replacement of a limited common element…"

subjected Presque Defendants to statutory violations, and fiduciary claims from other homeowners.[6]

Still, Plaintiff asserts that he is entitled to summary judgment on the issue without providing any persuasive analysis or citing any case law precedent to contradict the Governing Documents and Statutes, likely because there is none available for his benefit. To the contrary, Plaintiff actually cites § 47C-3-115(c)(1) (Pl. Brief [Doc. #38], at 5); the very statute that supports the Presque Defendants' position (i.e. maintenance of limited common elements must be assessed against the units). Presque Defendants do not disagree that they have the responsibility to perform and/or administer maintenance and repairs to the limited common elements. But they are not responsible for the payment for such maintenance and repairs, as noted in the Governing Documents and Statutes, including the clear language of § 47C-3-115(c)(1), which was, ironically, cited by Plaintiff.

Further, and again without any support, Plaintiff formulates several conclusory opinions and proffers unsupported statements, while passing them off as legal fact, where convenient. For instance, Plaintiff opines within his Brief:

> "…Nor do the Bylaws delegate responsibility [for repair of limited common elements] on this issue." (Pl. Brief [Doc. # 38], at 5).

To the extent Plaintiff is arguing that the Bylaws do not delegate responsibility for *performing* maintenance and repairs to the decks, Presque Defendants agree. However, the responsibility *for paying* for such maintenance and repairs is absolutely delegated by numerous sections of the Bylaws, including the following:

---

[6] Plaintiff further asserts that "The Declaration *orders* that responsibility for repair of limited common elements shall *be and remain* with the Association." (Pl. Brief [Doc. # 38], at 5). However, this language (e.g. "orders" "shall be" and "remain" with the Association) is not used in the Declaration.

6

ARTICLE III, Section 7:

> Powers and Duties. The Board of Directors **shall have** the powers and duties necessary for the administration of the affairs of the condominium…The powers and duties **shall include** but not be limited to the following:
>
> > **(a) Operation, care, upkeep and maintenance of the common areas and facilities**;
> >
> > **(b) Determination of the common expenses** required for the affairs of the condominium, including, but without limitation, the operation and maintenance of the property; and
> >
> > **(c) Levying and collection of the common charges from Unit Owners.**

(*By-Laws, Ex. 2, supra*, at Art. III, § 7) (*emphasis added*).

ARTICLE VI, Section 2:

> Payment of Common Charges. All Unit Owners **shall be obligated to pay the common charges assessed by the Board of Directors** pursuant to the provisions of Section 1 of Article VI…"[7]

(*By-Laws, Ex. 2, supra*, at Art.VI, § 2) (*emphasis added*).

ARTICLE VI, Sections 3:

> Collection and Assessments. The Board of Directors s**hall assess the common charges against the Unit Owners**. (*Emphasis added*);

(*By-Laws, Ex. 2, supra*, at Art.VI, § 3) (*emphasis added*).

ARTICLE VI, Section 5:

> Maintenance and Repair. All maintenance and repair to any unit, structural or nonstructural, ordinary or extraordinary, and maintenance of and repairs and replacements to the common areas and facilities contained therein **shall be made by the Board and charged to all Unit Owners as a common expense**. (*Emphasis added*).

(Bylaws, Ex. 2, *supra* at Art.VI, § 5). Clearly, Plaintiff is incorrect – the Bylaws absolutely

delegate payment for repairs and maintenance to the applicable unit owners.

---

[7] Article VI, Section 1 of the By-Laws, as referenced in Section 2, *supra*, is entitled "Determination of Common Expenses and Fixing of Common Charges." (Ex. 2, *supra*).

Lastly, Plaintiff asserts a poor analogy between making necessary repairs to the decks and simply "cleaning" the decks, the latter of which is obviously the responsibility of the unit owners. Plaintiff concludes: "The Defendants cannot alter the meaning of "responsibility" to suit their whim." (Pl. Brief [Doc. # 38], at 6). What Plaintiff misses with this ill-conceived analogy and statement is the contemporaneous nature of the Governing Documents in conjunction with the applicable Statutes, set forth above which do, in fact, delineate a difference between responsibility for making repairs and the duty to pay for them. Simply, the two are mutually exclusive.[8] Further, the analogy is inapposite insofar as the pertinent portions of the NCCA do not mention "cleanliness or orderliness" of the limited common elements at all, whereas they do specify responsibility for payment of maintenance and repair efforts. This inevitable conclusion obviates the remainder of Plaintiff's claims, and the Motion must be denied.

### 4. <u>Advice of Counsel Defense</u>

In the event Presque Defendants' interpretation of the aforementioned Governing Documents and/or Statute(s) was incorrect, they relied on the advice of counsel and are thus immune from Plaintiff's claims. A defendant may avoid liability if it can show that it acted in good faith reliance on the advice of counsel. Cf. *United States v. Painter*, 314 F.2d 939, 943 (4th Cir. 1963) (holding that "[i]f in good faith reliance upon legal advice given him by a lawyer to whom he has made full disclosure of the facts, one engages in a course of conduct later found to be illegal, the trier of fact may in appropriate circumstances conclude the conduct was innocent

---

[8] Within the Brief, Plaintiff also quoted Staci Green, the 30(b)(6) representative of CAM, Presque Defendants' Property Management Company, wherein she was asked for her "opinion" despite her not being designated as an expert witness in violation of FRE 701. Regardless, Ms. Green "opined" that "responsibility [for repairs] and payment [for repairs] are two different things" and Presque Defendants had the authority to bill the owners. (Pl. Brief [Doc. # 38], at 5); (Dep. Green, 18:1-11).

because 'the guilty mind' was absent"). *United States ex rel. Drakeford v. Tuomey,* 792 F.3d 364, 381 (4th Cir.2015).

To establish the advice-of-counsel defense, a "defendant must show the (a) full disclosure of all pertinent facts to [counsel], and (b) good faith reliance on [counsel's] advice." *Drakeford*, 792 F.3d at 381 (alterations in original) (quoting *United States v. Butler*, 211 F.3d 826, 833 (4th Cir. 2000)). *United States v. Mallory,* 988 F.3d 730, 739 (4th Cir.2021).

Here, Presque Defendants undoubtedly relied, in good faith, on the advice of Counsel, Attorney Ganley of the Bagwell Holt Smith law firm ("BHS"), which is also a named Defendant in this action. To this point, Staci Green, the Property Manager for the Presque Community, testified as follows:

> Q: "Well, I'm asking what your opinion is. Do you think that being responsible for that repair of the deck would mean that you don't pay for it?"
>
> A: "Well, that's when we rely on advice of counsel."
>
>                                    \* \* \*
>
> A: "Well, if we're not sure, then we rely on the advice of counsel."
>
> Q: "Did you ask counsel this?"
>
> A: "Yes."

(Dep., Green, at 29:6-30:5). Attorney Ganley also testified:

> A: "When I was asked [by/for Presque Defendants] whether [Plaintiff's debts] could be added to the ledger is that there's ambiguities both ways….there is a colorable argument that, yes, number one, it is a valid debt. And there is a colorable argument that, yes, it can be collected in a like manner as an assessment…" (Dep., Attorney Ganley, at 12:25-13:10).
>
>                                    \* \* \*
>
> A: "The Association has the authority to have the work done and bill the owner. $4,900 estimate [from the Pro Fixer] provided."

9

Q: "Thank you. Did CAM or Presque have the authority to do that?"

A: "I…my argument would be yes. I mean, there is colorable argument that they have that authority." (Dep. Attorney Ganley, at 25:10-19).

* * *

Q: "Okay. Did you advise…Presque that Mr. Rose would have to pay for the repairs?"

A: "…[w]hat I'd advise Presque is that there's an ambiguity in the Declaration. Typically, limited common elements are the financial responsibility of the homeowner. The Association performs the repairs, bills those limited common elements back to the homeowner. There is a colorable argument that, under the Condominium Act–that since the decks are identified as a limited common area under the declaration, that the cost for repair of those limited common areas are the responsibility of the owner." (Dep., Attorney Ganley, 40:20-41:8).

* * *

Q: "[d]id Presque follow your advice on whether or not to collect this debt?"

A: "Well, I mean, what I did is I provided the options to them here fore (*sic*)—that there is a colorable argument that these amounts can be assessed to Mr. Rose…" (Dep., Attorney Ganley, 73:22-74:8).

Clearly, Attorney Ganley believes that Presque Defendants had the authority to bill the repair cost back to Plaintiff, and he advised Presque Defendants accordingly. Thus, in the event this conclusion is incorrect, which is expressly denied, then Presque Defendants are immune for any liability for the reasonable reliance on the advice of Counsel, Attorney Ganley. At the very least, questions of fact remain for the jury on the issue of responsibility to pay for the maintenance and repairs to the decks, and Plaintiff's Motion [Doc. # 37] must be denied accordingly.

## II.    DEBT COLLECTION AUTHORITY

### A. Presque Defendants had express authority per the Governing Documents and Statutes to pursue collection and foreclosure for Plaintiff's unpaid debt.

Similarly, Plaintiff's argument that Presque Defendants violated § 75-50, *et. seq.* relating to their pursuit and collection of Plaintiff's debt is generally contradicted by the record testimony,

10

Governing Documents and Statutes; all of which expressly authorize Presque Defendants to pursue collection of Plaintiff's defaulted debt, including imposition of collection-related costs, attorney's fees, and interest. As stated by Attorney Ganley, "…Per Section 9 of the Declaration, as well as the General Statutes, the regular and special assessments constitute a lien and that the HOA can pursue a claim of lien or a foreclosure of the property…" (Dep., Attorney Ganley at 50:7-18). The applicable Governing Documents conferring such authority are set forth below:

1. **The By-Laws:**

ARTICLE VI, Sections 3:

Collection and Assessments. The Board of Directors **shall…take prompt action to collect any common charge due for any Unit Owner which remains unpaid for more than thirty days from the due date** (*emphasis added*);

ARTICLE VI, Section 4:

Default in Payment of Common Charges. In the event of default by any Unit Owner in paying to the Board of Directors the common charges as determined by the Board, **each Unit Owner shall be obligated to pay interest at the legal rate on such common charges from the date due thereof together with all expenses, including attorney's fees incurred by the Board** in any proceeding to collect such unpaid common charges.

(*By-Laws, Ex. 2, supra*, at Art. VI, §§ 3, 4, p. 10) (*emphases added*).

2. **The Declaration**

"…each owner of any unit…is deemed to covenant and agree to pay to the Association the annual assessments or common charges to be established and collected…"

\* \* \*

"The Annual and special assessments, together with interest, and costs and reasonable attorney's fees incurred in the collection thereof, shall be a charge on the unit and shall be continuing lien upon the property against which each such assessment is made. **Each such assessment, together with interest and costs and reasonable attorney's fees, incurred in the collection thereof, shall also be the personal obligation of the person (or persons) who was the owner of such property** at the time when the assessment fell due."

11

(Declaration, Ex. 1, *supra*, at § 9) (*emphases added*). Certainly, the Governing Documents vest with Presque Defendants the authority and license to seek collection of unpaid debts owed, including the debt owed by Plaintiff.

### 3. The NCCA (N.C. Gen. Stat. § 47C-1-101, *et seq.*)

As with the authority to bill Plaintiff for maintenance and repairs to his deck as set forth in § I. A, *supra*, the authority to pursue collection effort is cemented by North Carolina Statute and particularly, the NCCA (N.C. Gen. Stat. § 47C-3-116), which provides:

> (a) Any assessment attributable to a unit which remains unpaid for a period of 30 days or longer **shall constitute a lien** on that unit when a claim of lien is filed... fees, charges, late charges and other charges imposed…are subject to the claim of lien under this section as well as any other sums due and payable to the association under the declaration…
>
> (e) The association **shall be entitled to recover the reasonable attorneys' fees** and costs it incurs in connection with the collection of any sums due.
>
> (f) [T]he association, acting through the executive board, **may foreclose a claim of lien** in like manner as a mortgage or deed of trust on real estate under power of sale…if the assessment remains unpaid for 90 days or more.

N.C. Gen. Stat. § 47(C)-3-116 (*emphases added*). Plaintiff's suggestion that Presque Defendants lack authority to pursue collection of Plaintiff's defaulted debt, including imposition of attorney's fees, collection costs, liens and foreclosure, is contrary to the Law of North Carolina, the Declaration, and the By-Laws. Accordingly, Plaintiff's Motion [Doc. # 37] must be denied.

## III. DEBT COLLECTION EFFORTS

Plaintiff argues that Presque Defendants violated numerous statutes in the manner in which they pursued collection of Plaintiff's overdue and unpaid debt (e.g. N.C. Gen. Stat. § 58-70-1; § 58-70-95(3); § 58-70-95(6); 58-70-95(8); § 58-70-110(2); 58-70-110(4); § 58-70-110(6); § 58-70-115(2); and § 58-70-115(7)) – all arguments for which are based on the incorrect assumption that Presque Defendants (and/or their agents, including CAM) lacked the authority to 1) bill

12

Plaintiff for the maintenance and repair; and 2) lacked authority to pursue collection of the arrearage. (Pl. Brief, at 9-15). However, all such arguments are moot, given the fact that, per §§ I and II, *supra,* Presque Defendants clearly had such authority.

Further, Plaintiff, by and large, fails to proffer any competent evidence to support the majority of his arguments in this regard, but instead, he essentially recites the allegations of his Complaint, which do not represent the appropriate criteria for adjudication of a Fed. R. Civ. P. 56 Motion. (See F.R.C.P, Rule 56(c))(See also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Nonetheless, Presque Defendants will address below, those arguments that Plaintiff at least attempts to support within the Brief.

A.     **Debt Collection Letters**

Under the guise of the N.C. Gen. Stat. §§75-51 *et seq.,* (Prohibited Acts by Debt Collectors) and § 58-70-110(2) (Deceptive Representation), Plaintiff argues that Presque Defendants 1) made threatening or false accusations to another person, including any credit reporting agency, that a consumer has not paid, or willfully refused to pay a debt; 2) represented that non-payment of an alleged debt may result in seizure, garnishment…unless such action is in fact contemplated by the debt collector; 3) threatened to take action no permitted by law; 4) failed to disclose the attempt to collect a debt within all communications; 5) misrepresented the character, extent or amount of debt owed or ability to file a lien; 6) falsely represented that the debt can increase via attorneys' fees; and 7) attempted to collect interest on the debt. (Pl. Brief, at 6-9). However, the only "support" Plaintiff attempt to offer within the Brief for all of these claims are two collection letters forwarded

13

to Plaintiff by, or on behalf of, Presque Defendants that Plaintiff conveniently denotes as "dunning letters."

       1.     <u>August 2, 2021 Letter and June 22, 2021 Letters</u>

Plaintiff attaches to his Brief an August 2, 2021 Letter ("Letter #1") sent by CAM to Plaintiff (Ex. E to Pl. Brief; Ex. 4 hereto) and a June 22, 2021 Letter ("Letter #2") sent from BHS to Plaintiff (Ex. F to Pl. Brief; Ex. 5 hereto). Plaintiff alleges that these letters "threaten" liens, foreclosure, and credit reporting relating to a debt that "he did not owe." (Pl. Brief, at 6). Again, Plaintiff's obligation and duty to pay for the limited common elements is well established throughout this Response. As an aside, Letter #2 was authored by Attorney Ganley with BHS, not the Presque Defendants.

Regardless, the letters simply notify Plaintiff of his outstanding debt, Defendants' position in relation to the Governing Documents and Statutes, and that a lien and foreclosure may be instituted for continued non-payment. (See Ex. 4, 5). Certainly, such standard, boilerplate language could hardly be construed as a threat of any kind. Regardless, per the Governing Documents and Statutes cited hereinabove (§II. A-C, *supra*), Presque Defendants were authorized to seek recovery of the debt as outlined in Letters #1 and #2, including the institution of liens and foreclosures actions.

Further, seeking to collect a debt, and notifying Plaintiff of potential recovery efforts for continued non-payment can hardly be considered a "threat." Plaintiff further argues that Defendants had no intention to follow through with the "threat" of foreclosure (even after filing a claim of lien against Plaintiff's Property). To this, Attorney Ganley testified:

Q: "…Is that [statement made in Ex. 5] a threat of foreclosure?"

A: "I would not necessarily call it a threat. It's a statement. It is what…it says."

14

\* \* \*

Q: "So why did BHS not foreclose on the property?"

A: "We were directed by the Association to proceed with foreclosure. We had sent a pre-foreclosure letter, which is a requirement under North Carolina General Statutes prior to instituting foreclosure. That statute states that a foreclosure needs to be filed within…45 days of the date of that letter…Approximately two weeks after we sent that letter, we did Perform a title search, which is something that we do in anticipation of filing foreclosure, but a new attorney representing Mr. Rose reached out to us. …And so whenever we have an attorney, or even the individual homeowner for that matter, reach out to us, we put everything on hold and attempt to…work it out without filing foreclosure." (Dep. Ganley, 47:5-48:22; 54:22-55:14).

Presque Defendants were authored by Governing Documents and Statute to author Letter #1, and the contents of both Letters were warranted under the circumstances herein.

2. August 30, 2021 Letter

Plaintiff alleges a trivial violation of N.C. Gen. Stat. § 75-54(2) (failed to disclose that the purpose of the letter was to collect a debt) regarding an August 30, 2021 Letter from Presque Defendants to Plaintiff (Letter attached to Pl. Brief as Ex. J; attached hereto as Ex. 6). However, this letter simply informs Plaintiff that the deck repairs were finished, that the balance of $2,600 was added to his account, that once the account reached lien status, it would be forwarded to the Association's attorney for lien filing and collections, and further asks Plaintiff if he wanted to create a payment plan. (Ex. 6). This informational letter was not a direct attempt to collect a debt, as contemplated under the statute cited.[9]

The Court in *Winans v. Franklin Collection Serv.,* M.D.N.C. No. 17cv659, 2018 U.S. Dist. LEXIS 138709, at *8-10 (Aug. 16, 2018), analyzed correspondence from FCSI, a collection agency, to Plaintiff relating to a debt owed, similarly to the case at bar. One letter in particular stated: "IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, CONTACT YOUR

---

[9] In contrast, Presque Defendants did forward several letters to Plaintiff demanding payment; all of which were accompanied by the disclaimer that they were attempting to collect a debt. See Exhibits 7A-7F, attached hereto.

ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL [FCSI's phone number]." *Id.* at * 9). Plaintiff alleged that this language violated [the NCCA and NCDCA ] by "[t]hreatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made…" *Id.* The Court, however, granted Defendant's Motion to Dismiss the allegation, concluding, "…[t]he letter merely provided the plaintiff with his options without coercing or misleading the least sophisticated debtor into thinking that he was required to either pay or suffer dire consequences…" *Id.*

 A second letter to Plaintiff in *Winans* stated:

> "WE HAVE MADE SEVERAL ATTEMPTS FOR YOU TO RESOLVE THIS MATTER VOLUNTARILY, YET IT GOES UNSATISFIED AS OF THE DATE ON THIS NOTICE. WE SELDOM RESORT TO LITIGATION IF THE ACCOUNT IS RESOLVED IN A TIMELY MANNER. AT THIS TIME, THERE HAS BEEN NO CIVIL ACTION FILED OR JUDGMENT OBTAINED. [. . .]TO BE SURE OF PROPER CREDIT AND TO STOP FURTHER PROCEDURES, RETURN THIS NOTICE WITH PAYMENT IN FULL TO FRANKLIN COLLECTION SERVICE, INC.…"

*Winans,* at *12. The Court concluded that this language did not demonstrate an imminent "threat" of litigation but instead, simply stated that "if the account is not satisfied…further procedures are likely to occur." *Id*. at 16. The Court, in granting dismissal of this count as well, concluded: ""[i]t would be counterproductive to penalize a debt collector for suggesting steps which legally ***could*** be taken might in fact be taken." *Id*; see also *Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 22 (2d Cir. 2016) (holding that the dunning letter did not violate § 1692e(5) where it indicated that "the debt collector '***may*** consider additional remedies' and that the accounts were placed with an

16

attorney for 'such action as necessary'" Id.; (emphases added).[10] See also *Wilkes Natl. Bank v. Halvorsen,* 126 N.C.App. 179, 182, 484 S.E.2d 582.

The two letters at issue are strikingly similar to those analyzed by the Court in *Winans* and *Wilkes, supra*. The First Letter simply outlines the charges for the maintenance and repairs. The Second Letter indicates the intent of Presque Defendants in the event that Plaintiff continues in default (while also offering a payment plan). Neither were explicit attempts to "collect a debt" or threats of "imminent" litigation. Further, neither letter was at all "unfair" or "misleading." See *Wilkes, id*. Thus, neither letter is actionable, as a matter of law, and dismissal is proper.

### B. <u>Binder of Meeting Minutes</u>

Plaintiff asserts trivial violations of N.C. Gen. Stat. § 75-53(2) (using any form of communication which ordinarily would be seen or heard by any person other than the consumer). Specifically, Plaintiff asserts that his debt was discussed during an open Board meeting, and that a binder of the meeting minute notes was left in the conference room for months and *accessible to anyone* who might enter. (Pl. Brief [Doc. # 38], at 7).

Regarding the Board meeting, Plaintiff fails to cite the full scope of Ms. Green's testimony, instead stopping short of her reconsideration and restatement of her recollection. What Plaintiff conveniently leaves out, however, is her clarification of attendees of the Board Meeting, wherein she testified:

A. "Well actually, can I correct [the testimony regarding non Board Members at the Board Meeting]"?

A: "So when I look further down—so this is where it gets confusing. So on the results of voting, it appears Tom is a Board Member, and I was looking at the section above for roof where that person's name is Tom as well. **So let me just clarify that, yes, all of those people who voted are Board Members.**" (Dep., Green, 38:9-18); (Emphasis added).

---

[10] The Court analyzed the letters initially under 15 U.S.C. § 1692c, however, the Court came to the same conclusion when subsequently analyzing the letters under North Carolina law.

It's not surprising that Plaintiff did not include Ms. Green's clarification, but nonetheless, her continued testimony refutes Plaintiff's purported testimonial support for the otherwise fragile claim.

Further, Plaintiff's argument that the binder was left to be seen by "anyone who enters" is at best misleading, and otherwise not consistent with the actual, record testimony. To the contrary, Staci Green testified that, while uncertain, "owners should not" have a key to the conference room." (Dep. Green, 80:5-10). Plaintiff has not proffered any evidence to contradict Ms. Green's understanding in this regard.

**C.  Google Response**

Plaintiff also argues that CAM, in particular, violated § 58-70-105(2) (using communications to third parties about the alleged debt) by discussing Plaintiff's debt via Google review. (Pl. Brief, at 11). In support, Plaintiff submits testimony from Ms. Green regarding the content of the Presque's Google message. *Id.* Again, however, this posting only represents half of the story, the remainder of which Plaintiff conveniently omits from his Brief. What Plaintiff failed to include, is that it was Plaintiff, and not Presque Defendants or CAM, who initiated the Google dialogue. In fact, the matter reached Google only after Plaintiff submitted a review of Presque Defendants, prompting their response in kind. It is disingenuous, at best, for Plaintiff to allege, let alone seek summary judgment, for such communication made in response to his own initiated dialogue.

For the reasons set forth above, Presque Defendants are not liable for the alleged "prohibited acts." Further, Presque Defendants have shown Plaintiff's very thin "support" for these allegations to be inapposite, unpersuasive or misconstrued. Accordingly, Plaintiff's Motion in this regard must be denied.

# IV. PLAINTIFF'S MOTION REGARDING CLAIM FOR BREACH OF FIDUCIARY DUTY, CONSTRUCTIVE FRAUD AND EQUITABLE ACCOUNTING MUST FAIL AS A MATTER OF LAW.

## A. Breach of Fiduciary Duty

In order to establish a claim for breach of fiduciary duty under North Carolina substantive law, the plaintiff must show that: (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached his fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff. *Adum v. Albemarle Plantation Prop. Owners Ass'n*, 2021 NCBC 4, 65, 2021 NCBC LEXIS 6, \*36, 2021 WL 197298. In the context of a homeowner's association, a Plaintiff must establish that the board was inattentive or uninformed, acted in bad faith, or that the board's decision was unreasonable." *Green v. Condra*, 2009 NCBC 21, at \*96, 2009 NCBC LEXIS 20 (N.C. Super. Ct. Aug. 14, 2009) (*citation omitted*). *Id.* at \*39. However, no claim for breach of fiduciary duty can survive if the very acts alleged are authorized. See *Adum, supra* at 71 (holding that dismissal of plaintiff's fiduciary duty claim was proper because, *inter alia*, "…all of the alleged breaches contained in Plaintiffs' breach of fiduciary claim appear to be actions which were specifically permitted under the governing Amended and Restated Declaration.")(Emphasis added).

Here, Plaintiff has failed to support an alleged or viable "breach" of any fiduciary duty owed to Plaintiff. Within his Motion, Plaintiff simply reiterates the same arguments made previously (e.g. that Presque Defendants did not have authority to bill Plaintiff or collect the debt. (Pl. Brief, [Doc. # 38] at 14). Again, however, and as shown in Exhibits 1-3 hereto, the breach alleged by Plaintiff concerns actions that were specifically permitted and authorized under the Governing Documents and Statute(s), and accordingly, Plaintiff's Motion [Doc. # 37] must be denied. (See Ex. 1-3, *supra*).

19

### B. **Constructive Fraud**

"In order to maintain a claim for constructive fraud, plaintiffs must show that they and defendants were in a 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). "Implicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Id*; See also *Toomer v. Branch Banking & Trust Co.,* 171 N.C.App. 58, 67, 614 S.E.2d 328 (2005).

Here, the issue of whether the parties were in a relationship of "trust and confidence" need not be decided, as there is no evidence that Presque Defendants "took advantage of" Plaintiff or that their actions benefitted Presque Defendants. See *Toomer, supra*. Plaintiff has not alleged or argued within his Brief that Presque Defendants harmed him by making specific misrepresentations; rather, Plaintiff only alleges [*incorrectly*] that, by assessing Plaintiff the cost of the deck maintenance and repair, Presque Defendants breached a fiduciary duty. However, since Presque Defendants were so authorized, any claim that they "took advantage of" Plaintiff in this regard is unsupported by the record.

Further, Plaintiff has proffered no record evidence justiciable under Rule 56 that Presque Defendants sought to benefit themselves in any way by assessing Plaintiff the cost of the deck repair and maintenance, and/or seeking collection of the delinquent debt. Plaintiff has cited no facts tending to show that Presque Defendants gained anything by assessing Plaintiff and seeking collections for his delinquent debt. See *Barger*, at 667. Since the Defendants followed the construct

of the aforementioned statutory authority and counsel, their actions could not, as a matter of law, have been "in bad faith" or "unreasonable," and Plaintiff's Motion for Partial Summary Judgment in this regard must be denied.

## C. Equitable Accounting

The remedy of an equitable accounting may be available when a plaintiff has asserted a valid claim for relief in equity and an accounting is necessary to compel discovery of information regarding accounts held exclusively by the defendant." *Mkt. Choice, Inc. v. New England Coffee Co.*, 2009 U.S. Dist. LEXIS 73627 at *35-*36 (W.D.N.C. Aug. 18, 2009). Nevertheless, the Court will not grant equitable relief where a party has a full and complete remedy at law. *See Hinson v. United Fin. Servs., Inc.*, 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (1996). Plaintiff would have an adequate remedy at law on his statutory violations claims, if successful. Thus, this equitable claim/remedy fails as a matter of law, and Plaintiff's "arguments" must also fail.

As an initial matter, Plaintiff fails to provide even the most cursory evidential support for his motion relating to this claim, or any further argument to provide any clear reason why discovery would be insufficient so as to warrant the remedy of an accounting. See *Gottfried v. Covington,* 2014 NCBC 26, 35, 2014 NCBC LEXIS 26, *17. Further, since Plaintiff's Breach of Fiduciary Duty and Constructive Fraud claims both fail, as set forth above (see §§ III. C. (1), and (2), *supra*), Plaintiff has failed to proffer competent evidence per Rule 56 to maintain a claim for accounting as an equitable remedy, and certainly not to support his Motion in this regard. Accordingly, the Motion must be denied.

21

## CONCLUSION

Plaintiff bears the burden of establishing that no genuine issue of material fact exists, beyond mere pleadings. Here, Plaintiff's arguments are unfounded, contrary to existing law, and otherwise fail to recognize the clear language and duties set forth on the Governing Documents. As, at the very least, genuine issues of material fact exist, Plaintiff's Brief [Doc. # 38] for Partial Summary Judgment must be denied.

## CERTIFICATE OF WORD COUNT

Pursuant to LR 7.3(d), this Memorandum in opposition does not exceed 6,250 words.

Respectfully Submitted,

**DICKIE, McCAMEY & CHILCOTE, P.C.**

*/s/ Bridget Baranyai*
Bridget L. Baranyai
(NC Bar # 37588)

Michele F. Eagle, Esquire
(NC Bar # 33928)

2101 Rexford Road, Suite 250E
Charlotte, NC 28211
704-998-5184 (P) / 888-811-7144 (F)
bbaranyai@dmclaw.com
meagle@dmclaw.com

*Counsel for Defendants, Presque Isle Villas Condominium Homeowners Association, Inc., Presque Isle Villas Condominium Homeowners Association, Inc., Board of Directors, and Community Association Management, Ltd.,*

22

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Bridget Baranyai, Esq.*
Bridget Baranyai, Esq.
NC Bar # 37588
Dickie, McCamey & Chilcote, P.C.

16223506.1