NORTH CAROLINA
*9890-50-0795.114*
DECLARATION OF CONDOMINIUM
WAKE COUNTY
*9890-50-0795.101 thru .113*
*9890-50-0795.501 thru .508*

THIS DECLARATION OF CONDOMINIUM is made and entered into the 9⁻⁴ day of _____*April*_____, 2001, by ARD GROUP, INC., a North Carolina Corporation, ("Declarant"), pursuant to the provisions of Chapter 47C of the North Carolina General Statutes.

1. ESTABLISHMENT.

Declarant is the owner of real property in Orange County, North Carolina, more particularly described in Paragraph 2 below; and

Declarant intends to construct up to five multi-story buildings in two phases on said real property containing a maximum of forty-two (42) units for sale as individual units and to sell and convey the same to various purchasers subject to the covenants, conditions and restrictions hereinafter set forth, which shall run with the land and shall be binding on Declarant, its successors and assigns, and any person or entity owning an interest in the Property (hereinafter defined), and their successors, heirs and assigns; and

Declarant intends and desires by the filing of this Declaration of Condominium to submit the property described in Paragraph 2 below and improvements to be constructed thereon together with all of the appurtenances thereto to the provisions of Chapter 47C of the North Carolina General Statutes, (NORTH CAROLINA CONDOMINIUM ACT), and hereby declares the same to be known and identified as **"Presque Isle Villas, a condominium."**

2. PROPERTY DESCRIPTION.

All that certain property situated, lying and being in Orange County, North Carolina, and being more particularly described on the schedule marked Exhibit "A" attached hereto and incorporated herein by reference (the "Property"), together with the improvements to be constructed thereon as referenced in Exhibit "B", including complete descriptions and plans of the units with their respective locations and dimensions, which plans are filed in Condominium File No. *Book 87 Page 736/736* Orange County Registry, which is incorporated by reference as if fully set forth herein.

3. FORM OF ADMINISTRATION.

The property of the condominium and its business shall be managed, controlled, directed and administered by the **Presque Isle Villas** Condominium Homeowners Association, Inc. (herein the "Association") as provided in the Articles of Incorporation and By-Laws of the Association, which Articles of Incorporation and By-Laws are attached hereto as Exhibits "C" and "D" and made a part hereof. Each Unit Owner shall be member of the Association.



Return to:
ARD Group, Inc.
P.O. Box 31431
Raleigh, NC 27622

EXHIBIT
1

All powers granted in this Declaration or the By-Laws to the Association shall be exercisable by the Board of Directors, except as expressly provided in the Declaration, the By-Laws, or Chapter 47C of the North Carolina General Statutes.

Declarant shall transfer control of the Association to the Unit Owners on or before 120 days after conveyance of seventy-five percent (75%) of the units in later phases or five years from the date of the conveyance of the first unit, whichever is earlier.

4. UNIT DESIGNATION.

Declarant does hereby establish within the Property eighteen (18) units, and does hereby designate all such units for separate ownership. Each unit is identified by a specific numerical designation with a separate street address as shown on Exhibit "B". Each unit is bounded both as to horizontal and vertical boundaries by the interior surface of its perimeter walls, ceilings, and floors, which are shown on the aforesaid plans filed in the Orange County Registry. Mechanical equipment, stairways, and appurtenances located within any unit and designed to serve only that unit shall be a part of the unit.

Each Unit Owner has an unrestricted right of ingress and egress to his or her unit. This right shall be perpetual and it shall pass with the unit estate as transfers of unit ownership might occur. Any conveyance, encumbrance, judicial sale or other transfer (voluntary or involuntary) of an individual interest in the common elements will be void unless the unit to which that interest is allocated is also transferred.

In the case of any walls, flooring and ceilings that are herein described as boundaries, all lath, furring, wallboard, plasterboard, plaster, paneling, tiles, wallpaper, paint, finished flooring and any other materials constituting any part of the finished flooring, and any other materials constituting any part of the finished surfaces thereof are a part of the unit and all other portions of such walls, floors or ceilings are a part of the common elements, pursuant to GS 47C-2-102(l).

The cost of reasonable repair and maintenance of a boundary wall shall be shared by the owners who make use of the wall in proportion to such use. Notwithstanding any other provisions of this Declaration, a Unit Owner who by his negligent or willful act causes a boundary wall to be exposed to the elements shall bear the whole cost of furnishing the necessary protection against such elements.

5. COMMON AREAS AND FACILITIES.

The common areas and facilities consist of all parts of the multi-unit buildings situated on the land described above other than individual units therein as described in Paragraph 2 above, including without limitation the following:

-2-

(a)     The land on which the building is erected and all land described in Paragraph 2 above.

(b)     All foundations, columns, girders, beams, supports and other structural members.

(c)     The roof and all exterior walls and interior walls except those partition walls and all ceilings, floors, and stairways wholly within a unit.

(d)     All central appurtenant installments for operations and for services such as power, lights, telephone, security system, cable TV, elevator, cold water for common building usage, heat and air conditioning for common building usage, including pipes, ducts, wiring, cables and conduits, whether located in common areas or in units and all other central mechanical equipment spaces.

(e)     All waterlines, sewer pipes and sewer system.

(f)     All of the parts of the property and all apparatus installations existing in the building or upon the property for common use necessary or convenient to the existence, maintenance, or safety of the property.

(g)     All landscaping, other site improvements including the community center, swimming pool and bocca ball court, trash collection areas and equipment related thereto, parking areas if not a part of the Limited Common Areas and Facilities as outlined in Paragraph 6 herein, equipment rooms, lobbies and lobby closets, privacy wall, fountain and permanent signage.

6.     LIMITED COMMON AREAS AND FACILITIES.

Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units, including any deck, porch, patio, courtyard, balcony, foyer of carriage units, rear yard, driveway, HVAC unit and/or storage room appurtenant to such of the Units as are shown on the Plans, or any assigned garage or assigned storage room. Each Unit Owner is hereby granted an exclusive and irrevocable license to use and occupy such Limited Common Areas and Facilities as are associated with such Unit Owner's Unit. Storage units, garages (including those attached to each building and those that are detached) are more particularly identified on Exhibit "B1", attached hereto. No garage can be conveyed separate and independent of the unit to which it is assigned. The cleanliness and orderliness of the Limited Common Areas and Facilities shall be the responsibility of the individual Unit Owner, but the responsibility for maintenance, painting, repair and replacement thereof, together with control over the exterior decoration of same, shall be and remain with the Association, but each Unit Owner shall be responsible for repair and maintenance of that Unit's HVAC unit. The Association may adopt a policy whereby owners of detached garages which are a part of the Limited Common Areas and Facilities of the project will pay a supplemental monthly assessment in excess of the standard monthly assessment to

-3-

cover additional ownership costs related to the detached garages which are not available to or owned by all unit owners. There are no Limited Common Areas and Facilities except as provided in this Paragraph 6.

7.   PERCENTAGE OF OWNERSHIP IN COMMON AREAS.

Each unit shall have an undivided ownership interest in the common areas as shown on the attached Exhibit "B2". Except as provided in Paragraph 8, the percentage of common area per unit shall not be changed without the unanimous consent of the owners herein. As additional buildings are constructed, the percentage of common area ownership per unit will be changed pursuant to amendments to this Declaration of Condominium filed by Declarant.

Every owner of a Unit shall be a member of the Association. Membership shall be appurtenant to and may not be separated from ownership of any Unit which is subject to assessment.

Each Unit together with its undivided interests in the common areas and facilities, shall, for all purposes be, and is hereby declared to be, and to constitute a separate parcel of real property and the Unit Owner thereof shall be entitled to the exclusive ownership and possession of his unit subject only to the covenants, restrictions, and easements herein and by the By-Laws, rules, regulations and resolutions adopted pursuant thereto.

8.   RESERVATION OF DECLARANT RIGHTS.

Declarant reserves the following special declarant rights for the Property:

(a)   To complete, within five years of the date of recordation of this Declaration of Condominium, any and all improvements indicated on the plats and plans, up to a maximum of 42 Units.

(b)   To file amended or supplemental instruments to make this Declaration of Condominium applicable to the additional buildings and units to be constructed on the Property.

(c)   To change the percentage interest in the common areas and facilities allocated to each unit based upon the pro rata share of each unit's portion of the total square footage of the buildings containing units, which will be reflected on Exhibits attached to the Amendments or Supplements to this Declaration of Condominium.

(d)   To control the use of the community center for a period of three (3) years, from the date of the conveyance of the first unit or until one hundred percent (100%) of all units constructed on the Property are conveyed, whichever occurs first.

-4-

Declarant shall be entitled to use the community center as a sales office during this period of Declarant control.

9.  CREATION OF THE LIEN AND PERSONAL OBLIGATION OF ASSESSMENTS.

The Declarant, for each unit owned within the property, hereby covenants, and each owner of any unit by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association the annual assessments or common charges to be established and collected as hereinafter provided. For each phase, all units will be allocated full assessments no later than sixty days after the first unit is conveyed, except for unsold or unoccupied units owned by the Declarant, which shall be assessed at a rate of 25% of a full assessment until such time that they shall be either sold or occupied.

The annual and special assessments, together with the interest, and costs and reasonable attorney's fees incurred in the collection thereof, shall be a charge on the unit and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest and costs and reasonable attorney's fees incurred in the collection thereof, shall also be the personal obligation of the person (or persons) who was the owner of such property at the time when the assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.

The assessments levied by the Association shall be used exclusively to promote and protect the recreation, health, safety, and welfare of the residents, for the improvement and maintenance of the common area, and of the buildings and improvements situated upon the property, and to pay ad valorem taxes and public improvement assessments levied against the common areas. Assessments for water use shall be levied independent of other assessments. Each building shall have a separate meter, and each unit shall be charged for its share of the building's water bill based on the proportionate share of its square footage to the square footage of the entire building. The Association shall have the right to suspend the voting rights and right of use of any recreational facilities by an owner for any period during which any assessment against that owner's unit remains unpaid; and for a period not to exceed 60 days for any infraction of its published rules and regulations.

Any lien for delinquent common expense assessments or other charges that the Association has on a unit will be subordinate to a first mortgage on the unit, if the mortgage was recorded before the delinquent assessment was due. Any such lien for a common expense assessment will not be affected by the sale or transfer of the unit estate, unless a foreclosure of a first mortgage is involved, in which case the foreclosure will extinguish the lien for any assessments that were payable before the foreclosure sale, but will not relieve any subsequent unit owner from paying further assessments.

-5-

10.    WORKING CAPITAL FUND.

A working capital fund shall be established by the Declarant in order to meet unforeseen expenditures or to purchase any additional equipment or services. The working capital fund shall be initially funded by the Declarant in an amount equal to two months of the estimated common charges for each unit. The Declarant is expressly prohibited from using the working capital funds to defray any of its expenses, reserve contributions or construction costs or to make up any budget deficits while it is in control of the Association. Each unit's share of the working capital fund shall be collected at the time the sale of the unit is closed. Any amounts paid into this fund shall not be considered as advance payments of regular assessments. At such time that each unit's share of the working capital fund is paid in by a Unit Owner as provided herein, the Declarant shall be reimbursed out of the working capital fund for that amount previously paid by the Declarant to the working capital fund on behalf of the unit. The working capital fund shall be transferred to the Association for deposit to a segregated fund when control of the Association is transferred to the Unit Owners by the Declarant.

11.    AMOUNT OF LIEN.

The lien for each unit as described in Paragraph 9 above shall be based on the percentage share in common areas as described in Paragraph 7 and 8 above. Said lien shall be perfected upon filing in the Office of the Clerk of Superior Court, Orange County, North Carolina.

The Grantee of a unit shall be jointly and severally liable with the Grantor for all unpaid assessments against the latter for his proportionate share of the common expenses up to the time of the grant or conveyance, without prejudice to the Grantee's right to recover from the Grantor the amounts paid by the Grantee therefore. However, any such Grantee shall be entitled to a statement from the manager or Board of Directors, as the case may be, setting forth the amount of the unpaid assessments against the Grantor and such Grantee shall not be liable for, nor shall the unit conveyed be subject to a lien for, any unpaid assessment in excess of the amount therein set forth.

12.    USE OF BUILDINGS.

(a)    The building and each of the units shall be used for residential purposes only. The use of the building and units are further restricted by the By-Laws of the Association. No unit may be subdivided into smaller units or any portions thereof sold or otherwise transferred without first amending the By-Laws to show the changes in the units to be effected thereby.

(b)    No more than three persons over the age of eighteen unrelated by blood or marriage shall reside in any single unit for more than thirty consecutive days in any one calendar year.

-6-

(c)  The common areas and facilities shall be used only for the purposes for which they are intended and the furnishing of services for the enjoyment of the units.

(d)  No noxious or offensive activity shall be conducted upon any unit nor shall anything be done thereon which may be or may become an annoyance or nuisance or shall interfere with the peaceful possession of property by Unit Owners.

(e)  No animals, livestock or poultry of any kind shall be kept or maintained on any unit or in any dwelling except that dogs, cats or other household pets may be kept or maintained provided that they are not kept or maintained for commercial purposes. All household pets shall be kept on a leash at all times when outside the units.

(f)  No outside radio or television antennas, including satellite dishes or receivers, shall be erected on any common area or element unless and until permission for the same has been granted by the Association.

(g)  No signs or other advertising devices shall be displayed on or about the exterior of any Unit, or in the common areas or facilities without first receiving permission from the Association. Any owner shall have the right to display a "For Sale" or "For Rent" sign, not in excess of 2 square feet in the window of the Unit. Notwithstanding the foregoing, Declarant shall have the right to maintain upon the Property advertising signs until all units have been sold to initial purchasers.

(h)  All window coverings (i.e., curtains, blinds, draperies, shades, etc.) shall be installed and maintained in accordance with provisions of the Association.

(i)  Unit Owners shall not park or store any camper, trailer, trailer vehicle, or similar vehicle anywhere on the premises. No trucks shall be permitted except for standard 2-ton or less pickup trucks or smaller sized trucks. No vehicle shall display any commercial advertising.

(j)  Any lease or rental agreements involving the units shall be in writing and shall be subject to the requirements of the Association documents and Association rules and regulations governing same.

(k)  Each Unit Owner shall be responsible for repair and replacement of windows and doors.

13.  PERSON TO RECEIVE SERVICE OF PROCESS.

Emad Fakhoury is hereby designated to receive service of process in any action which may be brought against or in relation to this condominium. The address of such person is:

-7-

100 Presque Isle, Chapel Hill, North Carolina, 27514, which is located within Orange County, North Carolina. The person so designated to receive service of process may be changed by the Board of Directors.

14.   EASEMENTS.

Each Unit Owner shall have an easement in common with all other owners over all other units to use all pipes, wires, ducts, cables, conduits, public utilities and other common facilities located in any of the other units and serving each unit. Furthermore, the Declarant hereby conveys to each Unit Owner an easement and right of access to any and all common areas, open spaces, yards and parking areas for the common use of all owners. The Association shall have the right to establish the rules and regulations pursuant to which the owner of any unit, and family, guests and invitees may be entitled to use the common areas.

Each unit shall be subject to an easement in favor of the other owners of all other units to use the pipes, ducts, cables, wires, conduits, public utility lines and other common facilities serving other units located in such unit. The Board of Directors shall have the right of access to each unit to inspect the same, to remove violations therefrom and to repair or replace facilities contained therein or which serve other units in the building. Each Unit Owner shall specifically have an easement to maintain all components of the heating and air conditioning system serving his unit in their present location as shown in the plan attached hereto.

The Board of Directors may hereafter agree that easements for utility purposes for the benefit of the Property, including the right to install, lay, maintain, repair, and replace water lines, pipes, sewer lines, telephone wires and electrical conduits, wires over, under and along any portion of the common areas in each unit are necessary. Each Unit Owner hereby grants the Board of Directors irrevocable power of attorney to execute, acknowledge, and record for and in the name of each Unit Owner such instruments as may be necessary to effectuate the foregoing. An easement is hereby established over all common areas for the benefit of applicable governmental agencies for the setting, removing, and reading of water meters, maintaining and replacing water, drainage and drainage facilities, fire fighting, law enforcement, garbage collection and the delivering of mail.

15.   DISCLAIMER BY TOWN OF CHAPEL HILL.

Pursuant to the code of the Town of Chapel Hill, the Town of Chapel Hill refuses to be responsible for failing to provide any emergency or regular public service to this project or its occupants when such failure is due to the lack of access to certain roads or streets that are not public due to inadequate design or construction, blocking of access routes or any other factor within the control of the Declarant, Association, or occupants.

Accordingly, the Board of Directors is hereby empowered to make all efforts to assure that there is adequate access to all units and shall not allow any blocking of access or defects in access to remain uncorrected.

-8-

BOOK 2233 PAGE 295

16. PARTITIONING.

The common areas and facilities shall not be divided nor shall any right to a partition thereof exist. Nothing herein contained ever shall be deemed to prevent ownership of a condominium unit by the entireties, jointly or in common or in other form permitted by law.

17. DAMAGE, DESTRUCTION AND CONDEMNATION.

In the event of damage to or destruction of any Building as a result of fire or other casualty, the Board of Directors shall arrange for the prompt restoration and replacement of the damaged or destroyed Building unless (1) the Condominium is terminated in accordance with the provisions of North Carolina law, or (2) repair or replacement would be illegal under any state or local health or safety statute or ordinance, or (3) the Unit Owners decide not to rebuild by an eighty percent (80%) vote, including one hundred percent (100%) of Owners of Units not to be rebuilt and one hundred percent (100%) of Owners of Units to which are assigned Limited Common Elements not to be rebuilt. Unless one of the preceding conditions occurs, the Board of Directors shall arrange for the prompt repair and restoration of the damaged or destroyed Building, not including any decoration or covering for walls, ceilings, or floors, windows, doors, or furniture, furnishings, fixtures or equipment (unless the subject insurance policy covers a portion or all of such loss, in which event the Board of Directors shall repair or replace such damaged property), and the Board of Directors shall disburse the proceeds of all insurance policies to the contractors engaged in such repair and restoration in appropriate progress payments and in accordance with the provisions of Paragraph 18 of this Declaration. Any payment for repair and restoration in excess of the insurance proceeds shall constitute a Common Expense. Any reconstruction or repair shall be in accordance with the Plans. If the Unit Owners vote not to rebuild any Unit, that Unit's allocated interests are automatically reallocated upon the vote as if the Unit had been condemned under N.C.G.S. §47C-1-107(a). Any distribution of funds in connection with the termination of the project shall be made based on the relative value of each unit and in accordance with the formula that is used to determine the Unit Owner's individual interest in the common elements.

18. INSURANCE.

The insurance which shall be carried upon the property shall be governed by the following provisions:

(i) Casualty or physical damage insurance shall be carried in an amount equal to the full replacement value (i.e., 100% of full "replacement cost") of all buildings and all improvements on the Property owned either by the Association or unit owners and all personal property included within the Property described in Exhibit "A" attached hereto, except such personal property as may be owned by the unit owners with a replacement cost endorsement and an inflation guard endorsement, without deduction or allowance for depreciation (as determined annually by the Board of Directors with the assistance of the insurance company affording such coverage), such coverage to afford protection against at least the following:

-9-

a) loss or damage by fire or other hazards covered by the standard coverage endorsement together with coverage for common expenses with respect to condominium units during any period of repair or reconstruction; and

b) such other risks as from time to time customarily shall be covered with respect to buildings similar to the building in construction, location and use, including, but not limited to, vandalism, malicious mischief, windstorm and water damage, subject to such deductible amounts not in excess of One Thousand Dollars ($1,000.00) as the Board of Directors shall determine. All Casualty Insurance policies shall be purchased by the Association for the benefit of the Association, the Unit Owners and their respective mortgagees, as their interests may appear and shall provide (a) for the issuance of certificates of insurance with mortgagee endorsements to the holders of mortgages on the Units, if any, and (b) that the insurer waives its rights of subrogation against the Unit Owners, Occupants and the Unit Owners Association. All casualty insurance policies shall provide that all proceeds payable as a result of casualty losses shall be paid to the Board of Directors as trustees, for each of the Unit Owners in the percentages established in this Declaration for the purposes elsewhere stated herein, and for the benefit of the Association, the Unit Owners, and their respective mortgagees as their interests may appear.

(ii) The Association shall insure itself, the members of the Board, the Unit Owners, and the Occupants against liability for personal injury or death and for injury to or destruction of property occurring upon, in or about, or arising from or relating to the Condominium Project or any portion thereof, including, without limitation, water damage, legal liability, hired automobile, non-owned automobile and off-premises employee coverage, such insurance to afford protection in such amount and with such coverage as shall be deemed necessary by the Association. All liability insurance shall contain cross-liability endorsements to cover liabilities of the Unit Owners as a group to a Unit Owner. In the event the insurance effected by the Association on behalf of the Unit Owners and Occupants against liability for personal injury or property damage arising from or relating to this Condominium Project shall, for any reason, not fully cover any such liability, the amount of any deficit shall be a Common expense to the Unit Owners, and any Unit Owners who shall have paid all or any portion of such deficiency in an amount exceeding his proportionate share thereof based on his percentage of interest in the common areas shall have a right of contribution from the other Unit Owners according to their respective percentage of interest in the common areas.

(iii) The Board shall be required to obtain a policy of commercial general liability insurance in such limits as the Board may, from time to time, determine, covering each member of the Board, the managing agent, if any, and each Owner with respect to liability arising out of the use, ownership, maintenance, or repair of the Common Areas; provided, however, that in no event shall the limits of such policy ever be less than $1,000,000 per occurrence. The liability insurance policy shall include endorsements covering cross liability claims of one

-10-

insured against another, including the liability of the Owners as a group to a single Owner, and shall provide that it may not be canceled or substantially modified without at least thirty (30) days' prior written notice to the Association and to all insureds. The Board shall review such limits annually.

(iv)    The Board shall obtain such fidelity coverage against dishonest acts on the part of all persons responsible for handling funds belonging to or administered by the Association as it may deem necessary. Any such fidelity insurance policy must name the Association as the named insured and shall be written in an amount as may be determined by the Board, but in no event less than one-half the annual budgeted amount of Common Expenses, or the amount required by any Mortgagee, whichever is greater.

(v)    Premiums upon insurance policies purchased by the Association shall be paid by the Association at least thirty (30) days prior to the expiration date of such policies and shall be assessed as Common expenses.

(vi)    All insurance policies shall be written with a company or Companies licensed to do business in the State of North Carolina and holding a rating of "A+" or better in Best's Insurance Guide.

(vii)    Exclusive authority to negotiate losses under said policies shall be vested in the Board of Directors or its authorized representative.

(viii)    In no event shall the insurance coverage obtained and maintained pursuant to the requirements hereof be brought into contribution with insurance purchased by the Owners of the condominium units or their mortgagees, as herein permitted, and any "no other insurance" or similar clause in any policy obtained by the Unit Owners Association pursuant to the requirements hereof shall exclude such policies from consideration.

(ix)    All policies shall provide that such policies may not be canceled or substantially modified without at least thirty (30) days prior written notice to any and all insureds named thereon, including any and all mortgagees of the condominium units.

(x)    All policies of casualty insurance shall provide that, notwithstanding any provisions thereof which give the carrier the right to elect to restore damage in lieu of making a cash settlement, such option shall not be exercisable without the prior written approval of the Board of Directors (or any Insurance Trustee) or when in conflict with the provisions of this Declaration or the provisions of the North Carolina Unit Condominium Act as the same may be in force from time to time.

(xi)    All policies of insurance shall contain a waiver of subrogation by the insurer as to any and all claims against the Association, the Board of Directors thereof, the Owners of any condominium unit and/or their respective agents, employees or invitees, and any defenses based upon co-insurance or invalidity arising from the acts of the insureds.

-11-

BOOK **2233** PAGE **298**

19.    UNIT OWNERS POLICIES OF INSURANCE.

The Owner of any Condominium Unit (including the holder of any mortgage thereon) may obtain additional insurance (including a "Condominium Unit Owner's Endorsement" for improvements and betterments to the condominium unit made or acquired at the expense of the owner) at the owner's expense.

20.    UNITS SUBJECT TO DECLARATION.

All present and future owners, tenants, occupants of units and employees of owners and tenants shall be subject to, benefited by and shall comply with the provisions of this Declaration, by the By-Laws and any rules and regulations as may be adopted in accordance with the By-Laws.  In accordance herewith, the Declaration, By-Laws and rules and regulations may be amended from time to time.  The acceptance of a deed of conveyance or the entering into of a lease or the entering into occupancy of any unit shall constitute an agreement that the provisions of this Declaration, By-Laws, and any rules and regulations which may be adopted are accepted and ratified by such owner, tenant, or occupant and all of such provisions shall be deemed and taken to be covenants running with the land and shall bind any person having at any time any interest or estate in such unit as though provisions were made a part of each and every deed, conveyance or lease.  When there are unsold units in the project, the Declarant also shall enjoy the same rights and assume the same duties under this Declaration as they relate to each unsold unit but for the payment of assessments on unsold or unoccupied units (see Paragraph 9).

21.    CONSTRUCTION.

In interpreting any and all provisions of this instrument, the Exhibits attached hereto and subsequent deeds and deeds of trust covering individual units, the actual location of the unit shall be deemed conclusively to be the property intended to be conveyed, reserved or encumbered notwithstanding any minor deviations, either horizontally or vertically, from the locations indicated in Condominium File No. _____, Orange County Registry or in minor variations in the description of the unit contained herein.  To the extent that such minor deviations in location do or shall exist, a valid easement therefor and for the maintenance thereof does and shall exist.

22.    AMENDMENT.

The covenants and restrictions of this Declaration shall run with and bind the land, for a term of twenty (20) years from the date this Declaration is recorded, after which time they shall be automatically extended for successive periods of ten (10) years.  For a period no longer than twenty-four (24) months after the initial filing of this Declaration in the Orange County Registry, the Declarant may unilaterally amend this Declaration without the consent or approval of other Unit Owners or eligible mortgage holders provided such amendments shall be exclusively for the purpose of (1.) correcting clerical errors, (2.) making changes in order to comply with Federal National Mortgage Association requirements, (3.) making permanent assignments of garages or parking spaces (if any), or (4.) making permanent assignments of

-12-

storage closets (if any) or (5) changing the percentages of common area ownership per unit when construction of additional buildings is completed (up to a maximum of 42 units). Otherwise, this Declaration may be amended during the first twenty-year period by an instrument signed by not less than sixty-seven percent (67%) of the Unit Owners. Any amendment must be recorded.

Amendments of a material nature shall be agreed to by Unit Owners who represent at least 67% of the total allocated votes in the Association and by eligible mortgage holders who represent at least 51% of the votes of unit estates that are subject to mortgages held by eligible holders. Unit Owner votes may be cast in person or by proxy at a meeting held in accordance with the provisions of the By-Laws. No such amendment shall be effective until set forth in an amended declaration and duly recorded in the Office of the Register of Deeds in Orange County, North Carolina. Upon recording, all the Unit Owners and their successors and assigns, shall be bound by said amendments.

A material change shall be considered as one which changes any of the following:

- voting rights;

- increases in assessments that raise the previously assessed amount by more than 25%, assessment liens, or the priority of assessment liens;

- reductions in reserves for maintenance, repair, and replacement of common elements;

- responsibility for maintenance and repairs;

- reallocation of interests in the general or limited common elements or rights to their use (except as provided in Paragraph 8 herein);

- redefinition of any unit boundaries;

- convertibility of units into common elements or vice versa;

- expansion or contraction of the project, or the addition, annexations, or withdrawal of property to or from the project;

- hazard or fidelity insurance requirements;

- imposition of any additional restrictions on the leasing of units;

- imposition of any restrictions on a Unit Owner's right to sell or transfer his or her unit;

- a decision by the Association to establish self-management if professional management had been required previously by Association documents or by an eligible mortgage holder;

-13-

- restoration or repair of the project (after damage or partial destruction) in a manner other than that specified in the documents; or

- any provisions that expressly benefit mortgage holders, insurers or guarantors.

Implied approval by an eligible mortgage holder shall be assumed when an eligible mortgage holder fails to submit a response to any written proposal for an amendment within thirty (30) days after it receives proper notice of the proposal, provided the notice was delivered by certified mail or registered mail with a "return receipt" requested.

This Declaration may further be unilaterally amended by the Declarant for the purpose of recording (1) a verified statement of a registered architect or licensed professional engineer certifying that the plans heretofore filed or being filed simultaneously with such amendment fully depicting the layout, ceiling and floor elevations, unit numbers and dimensions of the units as built; and (2) a certificate by a registered land surveyor stating that the plats or plans accurately depict the legal boundaries and the physical of the units and other improvements relative to those boundaries.

23.    RIGHTS OF CONDOMINIUM MORTGAGE HOLDERS, INSURERS or GUARANTORS

Upon receipt of written request by a holder, insurer or guarantor of a mortgage on any unit in the project, the Association shall furnish timely written notice regarding the following:

- any condemnation or casualty loss that affects either a material portion of the project or the unit securing its mortgage;

- any 60-day delinquency in the payment of assessments or charges owed by the Unit Owner of any unit on which it holds the mortgage;

- a lapse, cancellation or material modification of any insurance policy maintained by the Association; and

- any proposed action that requires the consent of a specified percentage of eligible mortgage holders.

Any interested mortgage holder, insurer, or guarantor shall send a written request to the Association stating both its name and address and the unit number or address of the unit on which it has (or insurers or guarantees) the mortgage.

24.    SEVERABILITY.

The invalidity of any provisions of the Declaration shall not be deemed to impair or affect in any manner the validity and enforceability or effect the remainder of this Declaration,

-14-

and in such event, all of the other provisions of this Declaration shall continue in full force and effect as if such invalid provisions had never been included herein.

25. WAIVER.

No provision contained in this Declaration shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur.

26. GOVERNING LAW.

This Declaration and the By-Laws attached hereto shall be construed and controlled by and under the laws of the State of North Carolina.

27. DEFINITION.

Any terms used herein which are defined in the North Carolina Condominium Act shall have the meaning specified in the Act unless a contrary intention fairly appears.

IN WITNESS WHEREOF, the Declarant has hereunto set its hand and seal this the day and year first above written.

ARD GROUP, INC. a North Carolina Corporation

By: _____
                President

(CORPORATE SEAL)

Attest:
By: _____
                Secretary

-15-

NORTH CAROLINA

WAKE COUNTY                    BOOK 2233 PAGE 302

    I, a Notary Public of the County and State aforesaid, certify that _Emad Fakhoury_
personally came before me this day and acknowledged that _he is the Secretary of ARD
GROUP, INC., a North Carolina Corporation, and that by authority duly given and as the act
of the corporation, the foregoing instrument was signed in its name by its President sealed with
its corporate seal and attested by _Emad Fakhoury_, as its Secretary.

    WITNESS my hand and seal, this _6th_ day of _April_, 2001.

                    _Robin Hennessey Butler_
                      NOTARY PUBLIC

My commission expires:

_2-2-2004_

                    ROBIN HENNESSEY BUTLER
                     NOTARY PUBLIC
                STATE OF NORTH CAROLINA
                    DURHAM COUNTY
               MY COMMISSION EXPIRES
                      2-2-2004

g:\closings\presque\declarat.doc

State of North Carolina-Orange County
  The foregoing certificate(s) of _____
  _Robin Hennessey Butler_

A Notary (Notary) Public for the Designated Govern-
mental units is (are) certified to be correct. See filing
certificates herein.
  This the ____9th__ day of _April_ A.D. 2001.
Joyce H. Pearson
Register of Deeds By: _Priscilla O. M___/ Deputy

          FILED
09 APR 2001, at 01:59:26pm
Book 2233, Page 287 - 326
Joyce H. Pearson
Register of Deeds,
Orange County, N. C.

-16-

BOOK 2233 PAGE 303

## EXHIBIT "A"

BEGINNING at control point, said point being the intersection of the western right-of-way line of Sage Road, Chapel Hill Township, Orange County, North Carolina and the northern right-of-way line of Coleridge Drive, Chapel Hill Township, Orange County, North Carolina; running thence S 76 deg. 33 min. 51 sec. W 20.96 feet to an existing iron pipe; running thence along the northern right-of-way line of the said Coleridge Drive along a curve having a radius of 280 feet and a length of 346.17 feet to an existing iron pipe in the northern right-of-way line of Coleridge Drive; running thence N 84 deg. 09 min. 01 sec. W 48.64 feet to an existing iron pipe in the common property line with the eastern line of the property now or formerly owned by Advent Luthern Church, Inc. as described in the Deed recorded in Book 1349, Page 33, Orange County Registry; running thence with the said Advent Lutheran Church, Inc. line N 33 deg. 15 min. 14 sec. W 466.40 feet to an existing iron pipe in the southern right-of-way line of Erwin Road, Chapel Hill Township, Orange County, North Carolina; running thence along the right-of-way line of the said Erwin Road N 42 deg. 53 min. 24 sec. E 434.62 feet to an existing iron pipe; running thence N 51 deg. 06 min. 05 sec. E 40.42 feet to an existing iron pipe; running thence S 88 deg. 02 min. 38 sec. E 29.43 feet to an existing iron pipe; running thence S 45 deg. 39 min. 13 sec. E 40.98 feet to an existing iron pipe; running thence along the western right-of-way line of the said Sage Road along a curve having a radius of 655.00 feet and a length of 324.06 feet to a control point in the western right-of-way line of Sage Road; running thence along the right-of-way line of Sage Road, S 13 deg. 02 min. 01 sec. E 239.04 feet to a control point, said point being the point and place of beginning; all as shown on the map entitled "Presque Isle", prepared by The John R. McAdams Company, Inc., dated September 1, 1998 and recorded in Plat Book 83, Page 162, Orange County Registry.

BOOK 2233 PAGE 304

Declaration of Condominium
Exhibit B

Description of Building and Units

Initially, there will be 2 two-story buildings consisting of four (4) residential condominium units of approximately 2156 square feet each, ten (10) units consisting of approximately 1740 square feet each and four (4) units consisting of approximately 1160 square feet, for a total of 18 units. Construction is wood-frame on crawl space with foundation. The exterior will be fiber cement, cultured stone veneer, brick and wood. The roof will be fiber glass shingle. Each unit includes a one-car garage attached to the Building.

Unit Designation and Address

101 Presque Isle Lane, Chapel Hill, North Carolina 27514
102 Presque Isle Lane, Chapel Hill, North Carolina 27514
103 Presque Isle Lane, Chapel Hill, North Carolina 27514
104 Presque Isle Lane, Chapel Hill, North Carolina 27514
105 Presque Isle Lane, Chapel Hill, North Carolina 27514
106 Presque Isle Lane, Chapel Hill, North Carolina 27514
107 Presque Isle Lane, Chapel Hill, North Carolina 27514
108 Presque Isle Lane, Chapel Hill, North Carolina 27514
109 Presque Isle Lane, Chapel Hill, North Carolina 27514
110 Presque Isle Lane, Chapel Hill, North Carolina 27514
501 Presque Isle Lane, Chapel Hill, North Carolina 27514
502 Presque Isle Lane, Chapel Hill, North Carolina 27514
503 Presque Isle Lane, Chapel Hill, North Carolina 27514
504 Presque Isle Lane, Chapel Hill, North Carolina 27514
505 Presque Isle Lane, Chapel Hill, North Carolina 27514
506 Presque Isle Lane, Chapel Hill, North Carolina 27514
507 Presque Isle Lane, Chapel Hill, North Carolina 27514
508 Presque Isle Lane, Chapel Hill, North Carolina 27514

g:\closings\presque\exh-B.CLN



BOOK 2233 PAGE 305

Declaration of Condominium
Exhibit B1
(Page 1 of 2)

BOOK 2233 PAGE 306

Declaration of Condominium
Exhibit B1
(Page 2 0f 2)

- Additional detached garages/storage units will be assigned
  at a later date.

Declaration of Condominium
Exhibit B2

| Unit Address | Ownersip Interest in Common Areas & Facilities | Estimated Monthly Assessment |
|---|---|---|
| 101 Presque Isle Lane | 3.7829% | $125.00 |
| 102 Presque Isle Lane | 7.0310% | $175.00 |
| 103 Presque Isle Lane | 5.6744% | $150.00 |
| 104 Presque Isle Lane | 5.6744% | $150.00 |
| 105 Presque Isle Lane | 5.6744% | $150.00 |
| 106 Presque Isle Lane | 5.6744% | $150.00 |
| 107 Presque Isle Lane | 5.6744% | $150.00 |
| 108 Presque Isle Lane | 5.6744% | $150.00 |
| 109 Presque Isle Lane | 7.0310% | $175.00 |
| 110 Presque Isle Lane | 3.7829% | $125.00 |
| | | |
| 501 Presque Isle Lane | 3.7829% | $125.00 |
| 502 Presque Isle Lane | 7.0310% | $175.00 |
| 503 Presque Isle Lane | 5.6744% | $150.00 |
| 504 Presque Isle Lane | 5.6744% | $150.00 |
| 505 Presque Isle Lane | 5.6744% | $150.00 |
| 506 Presque Isle Lane | 5.6744% | $150.00 |
| 507 Presque Isle Lane | 7.0310% | $175.00 |
| 508 Presque Isle Lane | 3.7829% | $125.00 |

FILED
08 AUG 2002, at 11:51:32am
Book 2670, Page 258 - 266
Joyce H. Pearson
Register of Deeds,
Orange County, N. C.

BOOK 2670 PAGE 258

_Return to:_ ( ARD Group, Inc.
P.O. Box 31431
Raleigh, NC 27622 )

FIRST AMENDMENT TO
DECLARATION OF CONDOMINIUM
FOR PRESQUE ISLE VILLAS

THIS DECLARATION AMENDMENT, made this 7th day of August, 2002, by ARD GROUP, INC., hereinafter defined as "Declarant", acting pursuant to the provisions of Chapter 47C of the North Carolina General Statutes, as amended (North Carolina Condominium Act); and

WHEREAS, Declarant has previously filed a Declaration of Condominium (the "Declaration") on April 9, 2001, in the Office of the Register of Deeds of Orange County, North Carolina and recorded in Book 2233, Page 287, and in Condominium Book No. 87, Pages 168-186; and

WHEREAS, as reserved and authorized by Sections 1, 8 and 22 of the Declaration, Declarant desires to amend the Declaration as hereinafter set forth so as to (1) add three buildings containing 24 units to the condominium (2) assign an identifying number to each new Unit created; and (3) reallocate the allocated interests among the Units;

NOW, THEREFORE, the Declarant hereby declares that the Declaration be and hereby is amended as follows:

1.    Twenty-four (24) new Units are hereby created, and are located as shown on map in Condominium Book No. 87, Pages 168-186 and Book _90_, Page(s) _186_, Orange County Registry.

2.    Attached hereto and by this reference made a part hereof are Supplements to Exhibits B and B2, said Supplements consisting of an amendment to the Description of Building and Units and Unit Designation and Address (Exhibit B), an amendment to page 1 of Exhibit B1 showing additional garages and an amendment to the allocated ownership interest in the common areas and facilities (Exhibit B2). Any reference in the Declaration to Exhibits B, B1 and B2 shall be deemed to refer to Exhibits B, B1 and B2 as amended herein.

FOR MULTIPLE PIN SHEET
SEE BOOK _2670_ PAGE _262 268_

IN WITNESS WHEREOF, Declarant has executed this instrument the day and year first above written.

_____

ARD GROUP, INC., a North Carolina Corporation

By: Alan Fakhoury

as President

STATE OF NORTH CAROLINA
COUNTY OF WAKE

I, the undersigned, a Notary Public in and for the County and State aforesaid, hereby certify that Alan Fakhoury_____, did personally appear before me this day and acknowledged that he is President_____ of ARD GROUP, INC., a North Carolina Corporation, and that he, as President_____, being authorized to do so, executed the foregoing on behalf of the corporation.

Witness my hand and official stamp or seal, this 7th day of August, 2002.

_____
Notary Public

My Commission Expires: 10|4|02

CARLA FINLEY
NOTARY
PUBLIC
WAKE COUNTY, N.C.

g:\closings\presque\amenddoc.doc



Joyce H. Pearson
Register of Deeds
Orange County
North Carolina

State of North Carolina, County of Orange

The foregoing certificate/s of  Carla Finley, Notary/Notaries Public for the Designated
Governmental units is/are certified to be correct.  See filing certificate herein.
This day      August 8, 2002

JOYCE H. PEARSON, REGISTER OF DEEDS By:  _Hewlett Benadum_
                                              Deputy/Assistant Register of Deeds

Supplement to Exhibit B of Original Declaration of Condominium for Presque Isle
Villas (1ˢᵗ Amendment)

Description of Building and Units

Three new two-story buildings will be added to the initial 2 two-story buildings as
described in the original Declaration of Condominiums. As such, there will be a total of 5
two-story buildings consisting of: two (2) residential condominium units of
approximately 1,320 square feet each; two (2) units consisting of approximately 1,275
square feet each; four (4) units consisting of approximately 2,156 square feet each; four
(4) units consisting of approximately 1,704 square feet each; four (4) units consisting of
approximately 1,740 square feet each; six (6) units consisting of approximately 1,343
square feet each; six (6) units consisting of approximately 2,308 square feet each; six (6)
units consisting of approximately 1,789 square feet each; and, six (6) units consisting of
approximately 1,813 square feet each; for a total of 42 units. Construction is wood-frame
on crawl space with foundation. The exterior will be fiber cement, cultured stone veneer,
brick and wood. The roof will be fiber glass shingle. Each unit includes a one-car garage
attached to the building.

Unit Designation and Address

101 Presque Isle Lane, Chapel Hill, North Carolina 27514
102 Presque Isle Lane, Chapel Hill, North Carolina 27514
103 Presque Isle Lane, Chapel Hill, North Carolina 27514
104 Presque Isle Lane, Chapel Hill, North Carolina 27514
105 Presque Isle Lane, Chapel Hill, North Carolina 27514
106 Presque Isle Lane, Chapel Hill, North Carolina 27514
107 Presque Isle Lane, Chapel Hill, North Carolina 27514
108 Presque Isle Lane, Chapel Hill, North Carolina 27514
109 Presque Isle Lane, Chapel Hill, North Carolina 27514
110 Presque Isle Lane, Chapel Hill, North Carolina 27514
201 Presque Isle Lane, Chapel Hill, North Carolina 27514
202 Presque Isle Lane, Chapel Hill, North Carolina 27514
203 Presque Isle Lane, Chapel Hill, North Carolina 27514
204 Presque Isle Lane, Chapel Hill, North Carolina 27514
205 Presque Isle Lane, Chapel Hill, North Carolina 27514
206 Presque Isle Lane, Chapel Hill, North Carolina 27514
207 Presque Isle Lane, Chapel Hill, North Carolina 27514
208 Presque Isle Lane, Chapel Hill, North Carolina 27514
301 Presque Isle Lane, Chapel Hill, North Carolina 27514
302 Presque Isle Lane, Chapel Hill, North Carolina 27514
303 Presque Isle Lane, Chapel Hill, North Carolina 27514          (continued on next page)

304 Presque Isle Lane, Chapel Hill, North Carolina 27514
305 Presque Isle Lane, Chapel Hill, North Carolina 27514
306 Presque Isle Lane, Chapel Hill, North Carolina 27514
307 Presque Isle Lane, Chapel Hill, North Carolina 27514
308 Presque Isle Lane, Chapel Hill, North Carolina 27514
401 Presque Isle Lane, Chapel Hill, North Carolina 27514
402 Presque Isle Lane, Chapel Hill, North Carolina 27514
403 Presque Isle Lane, Chapel Hill, North Carolina 27514
404 Presque Isle Lane, Chapel Hill, North Carolina 27514
405 Presque Isle Lane, Chapel Hill, North Carolina 27514
406 Presque Isle Lane, Chapel Hill, North Carolina 27514
407 Presque Isle Lane, Chapel Hill, North Carolina 27514
408 Presque Isle Lane, Chapel Hill, North Carolina 27514
501 Presque Isle Lane, Chapel Hill, North Carolina 27514
502 Presque Isle Lane, Chapel Hill, North Carolina 27514
503 Presque Isle Lane, Chapel Hill, North Carolina 27514
504 Presque Isle Lane, Chapel Hill, North Carolina 27514
505 Presque Isle Lane, Chapel Hill, North Carolina 27514
506 Presque Isle Lane, Chapel Hill, North Carolina 27514
507 Presque Isle Lane, Chapel Hill, North Carolina 27514
508 Presque Isle Lane, Chapel Hill, North Carolina 27514

Amendment to
Declaration of Condominium
Exhibit B1
(Page 1 of 2)



Amendment to
Declaration of Condominium
Exhibit B1
(Page 1 of 2)



R (indicates)
each garage
assigned to
selected unit #

**Supplement to Exhibit B2 of Original Declaration of Condominium for Presque Isle Villas (1st Amendment)**

| Unit Address | Ownership Interest in Common Areas & Facilities |
|---|---|
| 101 Presque Isle Lane | 1.7686% |
| 102 Presque Isle Lane | 2.8888% |
| 103 Presque Isle Lane | 2.2832% |
| 104 Presque Isle Lane | 2.3314% |
| 105 Presque Isle Lane | 2.3314% |
| 106 Presque Isle Lane | 2.3314% |
| 107 Presque Isle Lane | 2.3314% |
| 108 Presque Isle Lane | 2.2832% |
| 109 Presque Isle Lane | 2.8888% |
| 110 Presque Isle Lane | 1.7083% |
| | |
| 201 Presque Isle Lane | 1.7995% |
| 202 Presque Isle Lane | 3.0925% |
| 203 Presque Isle Lane | 2.3971% |
| 204 Presque Isle Lane | 2.4292% |
| 205 Presque Isle Lane | 2.4292% |
| 206 Presque Isle Lane | 2.3971% |
| 207 Presque Isle Lane | 3.0925% |
| 208 Presque Isle Lane | 1.7995% |
| | |
| 301 Presque Isle Lane | 1.7995% |
| 302 Presque Isle Lane | 3.0925% |
| 303 Presque Isle Lane | 2.3971% |
| 304 Presque Isle Lane | 2.4292% |
| 305 Presque Isle Lane | 2.4292% |
| 306 Presque Isle Lane | 2.3971% |
| 307 Presque Isle Lane | 3.0925% |
| 308 Presque Isle Lane | 1.7995% |
| | |
| 401 Presque Isle Lane | 1.8598% |
| 402 Presque Isle Lane | 3.0925% |
| 403 Presque Isle Lane | 2.3971% |
| 404 Presque Isle Lane | 2.4292% |
| 405 Presque Isle Lane | 2.4292% |
| 406 Presque Isle Lane | 2.3971% |
| 407 Presque Isle Lane | 3.0925% |
| 408 Presque Isle Lane | 1.7995% |

(continued on next page)

| Unit Address | Ownership Interest in Common Areas & Facilities |
|---|---|
| 501 Presque Isle Lane | 1.7686% |
| 502 Presque Isle Lane | 2.8888% |
| 503 Presque Isle Lane | 2.2832% |
| 504 Presque Isle Lane | 2.3314% |
| 505 Presque Isle Lane | 2.3314% |
| 506 Presque Isle Lane | 2.2832% |
| 507 Presque Isle Lane | 2.8888% |
| 508 Presque Isle Lane | 1.7083% |

BOOK 2233 PAGE 314



EXHIBIT "O"
TO PUBLIC OFFERING STATEMENT

BY-LAWS
OF

PRESQUE ISLE VILLAS CONDOMINIUM
HOMEOWNERS ASSOCIATION, INC.

ARTICLE I

Offices

Article 1. Plan of Unit Ownership. The property located in Orange County, North Carolina, and more particularly described in the Declaration to which By-Laws are attached (hereinafter "Declaration") has been submitted to the provisions of Chapter 47C of the North Carolina General Statutes entitled "North Carolina Condominium Act." The Declaration is being recorded in the Office of the Register of Deeds of Orange County, North Carolina.

Section 2. Applicability of By-Laws. The provisions of these By-Laws are applicable to the property of the condominium and to the use and occupancy thereof. The term "property" as herein used shall include the land, the building and all other improvements and structures thereon and all easements, rights and appurtenances belonging thereto, all of which are intended to be submitted to the provisions of Chapter 47C of the North Carolina General Statutes.

Section 3. Application. All present and future owners, mortgagees, lessees, occupants of units and employees of owners and tenants and their families and any other persons who may use the facilities of the property in any manner are subject to the Declaration, these By-Laws and rules and regulations made pursuant hereto and any amendment to these By-Laws upon same being passed and duly set forth in Amended Declaration, duly recorded.

The acceptance of a deed of conveyance or the entering into of a lease or the act of occupancy of a unit shall constitute an agreement that these By-Laws and provisions of the Declaration as they may be amended from time to time, are accepted, ratified, and will be complied with.

ARTICLE II

Unit Owners

Section 1. Organizational Meeting. The initial meeting of the Association shall be held on the date and time designated by Declarant.

Section 2. Annual Meetings. The annual meeting of the Unit Owners for the election of directors and for the transaction of such other business as may properly come before the meeting shall be held in December in each year, commencing with the year 2001. Unless otherwise scheduled, the Unit Owners shall vote at each annual meeting to ratify the proposed annual budget for the Association for the following year.



EXHIBIT
2

Section 3. Substitute Annual Meeting. If the annual meeting shall not be held when designated by these By-Laws, a substitute annual meeting may be called in the manner provided for the call of a special meeting in accordance with the provisions of Section 4 of this Article II and a substitute annual meeting so called shall be designated as and shall be treated, for all purposes, as the annual meeting.

Section 4. Special Meetings. Special meetings of the Unit Owners may be called at any time by the President, a majority of the members of the Board of Directors, or upon the written request of Unit Owners having at least 30% of the votes in the Association.

Section 5. Place of Meetings. All meetings of Unit Owners shall be held at Chapel Hill, North Carolina at such place within the Town of Chapel Hill as may be designated in the Notice of Meeting.

Section 6. Notice of Meetings. Written or printed notices stating the time and place of a meeting of Unit Owners and the items on the agenda shall be delivered or mailed not less than ten (10) or more than thirty (30) days prior to the date of such meeting to each person entitled to vote at such meeting.

In case of a substitute annual meeting, notice of the meeting need not specifically state the business to be transacted thereat unless it is a matter other than the election of the Board of Directors on which the vote of the Unit Owners is expressly required by the provisions of the North Carolina Condominium Act. In the case of a special meeting, the notice of meeting shall specifically state the purpose or purposes for which the meeting is called.

Section 7. Quorum. A quorum shall be deemed present throughout any meeting of the Unit Owners until adjourned if the Unit Owners, in person or by proxy, entitled to cast more than one-quarter of the votes are present at the beginning of such meeting.

Section 8. Voting Rights. There shall be one person with respect of each Unit who shall be entitled to vote at any meeting of the Unit Owners. Such person shall be known and hereafter referred to as a "Voting Member". Such Voting Member may be the Unit Owner or some other person designated by such Unit Owner to act as proxy on his or their behalf and who need not be a Unit Owner. Such designation shall be made in writing to the Board and shall be revocable at any time by actual notice to the Board of the death or judicially declared incompetence of any designator, or by written notice to the Board by the Unit Owner or Owners. The total number of votes of all Voting Members shall be equal to the total number of units completed at the date of such meeting and the Unit Owner of each Unit shall possess one vote. An owner of more than one Unit shall possess one vote for each Unit owned.

Section 9. Unit Owners. "Unit Owners" shall mean and refer to those persons who own units in the property subject to the Declaration and are entitled to membership as provided in the Declaration.

-2-

Section 10. Voting. In all elections for members of the Board of Directors, each Voting Member shall be entitled to vote on a non-cumulative voting basis and the candidates receiving the highest number of votes with respect to the offices to be filled shall be deemed to be elected.

Section 11. Proxies. The votes pertaining to any condominium unit may (and shall in the case of any Unit Owner not a natural person or persons) be cast pursuant to a proxy or proxies duly executed by or on behalf of the Unit Owner, or in cases where the Unit Owner is more than one person, by or on behalf of all such persons. No such proxy shall be revocable except as written notice delivered to the Association by the Unit Owner or by any other such person. Any proxy shall be void if it is not dated or if it purports to be revocable without notice as aforesaid.

Section 12. Presiding Officer. The President, or in his absence, the Vice-President, shall serve as a chairman of every Unit Owner's meeting unless some other person is elected to serve as Chairman by a majority vote of the votes represented at the meeting. The Chairman shall appoint such persons as he deems required to assist with the meeting.

Section 13. Adjournments. Any meeting of the Unit owners, whether or not a quorum is present, may be adjourned by the holders of a majority of the votes represented at the meeting to reconvene at a specified time or place. It shall not be necessary to give any notice of the reconvened meeting or of the business to be transacted, if the time and place of the reconvened meeting are announced at the meeting which was adjourned. At any such reconvened meeting at which a quorum is represented or present, any business may be transacted which could have been transacted at the meeting which was adjourned.

Section 14. Action of Unit Owners Without a Meeting. Any action which may be taken at a meeting of the Unit Owners may be taken without a meeting if written approval and consent, setting forth the action authorized, shall be signed by a majority of the Unit Owners entitled to vote on the date on which the last Unit Owners signed such approval and upon the filing of such approval and consent with the Secretary of the Association. Such approval and consent so filed shall have the same effect as a unanimous vote of the Unit Owners at a special meeting called for the purpose of considering the action authorized, except in those specific matters for which a vote greater than a majority vote is required by the North Carolina Condominium Act.

Section 15. Availability of Project Documents. The Association shall assure that current copies of the Declaration, Articles of Incorporation, By-Laws, and other rules concerning the project as well as its own books, records, and financial statements are readily available for inspection by Unit Owners or by holders, insurers, and guarantors of first mortgages that are secured by units in the project. These documents will be available during normal business hours.

Section 16. Availability of Audited Financial Statements. Once the Association has been established for a minimum of one full fiscal year, the Association shall provide for the

-3-

availability of an audited statement for the preceding fiscal year to the holder, insurer, or guarantor of any first mortgage that is secured by a unit in the project on submission of a written request for it, at the expense of the entity making the request.

Section 17. Termination of Legal Status. Following substantial destruction or condemnation of the property, any action by the Association to terminate the legal status of the project shall be agreed to by Unit Owners who represent at least 80% of the total allocated votes in the Association and by eligible mortgage holders who represent at least 51% of the votes of unit estates that are subject to mortgages held by eligible holders.

Any action by the Association to terminate the legal status of the project for reasons other than substantial destruction or condemnation of the property shall be agreed to by Unit Owners who represent at least 80% of the total allocated votes in the Association and by eligible mortgage holders who represent at least 51% of the votes of unit estates that are subject to mortgages held by eligible holders.

Implied approval by an eligible mortgage holder shall be assumed when an eligible mortgage holder fails to submit a response to any written proposal for an amendment within thirty (30) days after it receives proper notice of the proposal, provided the notice was delivered by certified mail or registered mail with a "return receipt" requested.

Section 18. Rights of Action. The Association, and any aggrieved Unit Owner, shall have the right of action against Unit Owners who fail to comply with the provisions of the project Declaration, By-Laws, Articles of Incorporation and other rules properly enacted by the Association. Unit estate owners shall also be granted similar rights of action against the Association.

Section 19. Rights of Condominium Mortgage Holders, Insurers or Guarantors. Upon receipt of written request by a holder, insurer or guarantor of a mortgage on any unit in the project, the Association shall furnish timely written notice regarding the following:

- any condemnation or casualty loss that affects either a material portion of the project or the unit securing its mortgage;

- any 60-day delinquency in the payment of assessments or charges owed by the Unit Owner of any unit on which it holds the mortgage;

- a lapse, cancellation or material modification of any insurance policy maintained by the Association; and

- any proposed action that requires the consent of a specified percentage of eligible mortgage holders.

-4-

BOOK 2233 PAGE 318

Any interested mortgage holder, insurer, or guarantor shall send a written request to the Association stating both its name and address and the unit number or address of the unit on which it has (or insurers or guarantees) the mortgage.

ARTICLE III

Board of Directors

Section 1. General Powers. The property, affairs and business of the Association shall be managed by the Board of Directors.

Section 2. Number, Term of Office and Qualifications. The number of directors shall be no more than five (5) nor less than three (3), to be elected by the Unit Owners at their initial meeting. Each director shall hold office for one year or until his death, resignation, retirement, removal or disqualification or his successor is elected and qualifies.

Section 3. Election of Directors. Except as provided in Section 2 of this Article, the directors shall be elected at the annual meeting of Unit Owners and the persons who shall receive the highest number of votes shall be the elected directors.

Section 4. Removal of Directors. The Board of Directors or any individual director may be removed from office with or without cause by a vote of 67% of the Unit Owners present and entitled to vote at a meeting in which a quorum is present. If any such directors are so removed, new directors may be elected at the same meeting.

Section 5. Vacancies. A vacancy in the Board of Directors created by reason of the removal of a director may be filled for the unexpired term, and until the Unit Owners shall have elected a successor, by affirmative vote of a majority of the directors remaining in office.

Section 6. Compensation of Directors. Directors shall not receive compensation for their services as directors. A director may serve the Association in a capacity other than that of director and receive compensation as determined by the Board of Directors for services rendered in that other capacity.

Section 7. Powers and Duties. The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the condominium and may do all such acts and things except such acts as by law or by the Declaration or by these By-Laws may not be delegated to the Board of Directors. The powers and duties shall include but not be limited to the following:

(a) Operation, care, upkeep and maintenance of the common areas and facilities.

-5-

(b) Determination of the common expenses required for the affairs of the condominium, including without limitation, the operation and maintenance of the property.

(c) Levying and collection of the common charges from Unit Owners.

(d) Employment and dismissal of the personnel necessary for the maintenance and operation of the common areas and facilities.

(e) The adoption and amendment of such reasonable rules and regulations as it may deem advisable for the maintenance, conservation and beautification of the property, and for the health, comfort, safety and general welfare of the owners and occupants of the property. Written notice of such rules and regulations shall be given to all owners and occupants and the entire property shall at all times be maintained subject to such rules and regulations.

(f) Opening of bank accounts on behalf of the Association and designated signatories required therefore.

(g) Making of repairs, additions, improvements to or alterations to the property and repairs to and restoration of the property in accordance with the other provisions of these By-Laws and the Declaration, after damage or destruction by fire or other casualty, or as a result of condemnation or eminent domain proceedings.

(h) Procure insurance as required by the Declaration.

(i) Pay ad valorem taxes and public assessments levied against the common areas and facilities.

Section 8. Managing Agent. The Board of Directors for the Association may engage the services of any person, firm, or corporation to act as managing agent at compensation established by the Board, to perform such duties and services as the Board of Directors shall authorize. The Board may delegate to the Managing Agent all of the powers granted to the Board of Directors by these By-Laws other than the powers in Section 7(d) and Section 7(e) of this Article.

ARTICLE IV

Meetings of Directors

Section 1. Regular Meeting. A regular meeting of the Board of Directors may be held immediately after the annual meeting of Unit Owners and if not then shall be held within a reasonable time thereafter.

-6-

**Section 2. Special Meetings.** Special meetings of the Board of Directors may be called by or at the request of the President or any two (2) directors.

**Section 3. Place of Meetings.** All meetings of the Board of Directors shall be held at any place within Orange County, North Carolina as the Board of Directors may from time to time be established for regular meetings or as set forth in a duly executed waiver of notice of such meeting or as may be otherwise agreed upon in advance of the meeting by a majority of the directors.

**Section 4. Notice of Meetings.** Regular meetings of the Board of Directors may be held without notice. Special meetings shall be called on not less than five (5) days prior notice. Notice of a special meeting need not state the purpose thereof and such notice shall be directed to each director at his residence or usual place of business by mail, cable, telegram, facsimile or may be delivered personally. The presence of a director at a meeting shall constitute a waiver of notice of that meeting except only when such director attends the meeting solely for the purpose of objecting to the transaction of any business thereat, on the ground that the meeting has not been lawfully called, and does not otherwise participate in such meeting.

**Section 5. Quorum and Manner of Acting.** A quorum shall be deemed present throughout any meeting of the Board of Directors if persons entitled to cast one-half of the votes in that body are present at the beginning of the meeting.

**Section 6. Vote Required for Action.** Except as otherwise provided in this section, the act of a majority of the directors present at the meeting at which a quorum is present at the time shall be the act of the Board of Directors. Vacancies in the Board of Directors may be filled as required in Article III, Section 5 of these By-Laws.

**Section 7. Action by Directors Without Meeting.** Any action required or permitted to be taken at a meeting of the Board of Directors may be taken without a meeting if a written consent thereto shall be signed by all the directors and such written consent is filed with the minutes of the proceedings of the Board. Such consent shall have the same force and effect as a unanimous vote of the Board of Directors.

**Section 8. Adjournments.** A meeting of the Board of Directors without a quorum present may be adjourned by majority of the directors present to reconvene at a specific time and place. It shall not be necessary to give notice of the reconvened meeting or of the business to be transacted, other than by announcement at the meeting which was adjourned. At any such reconvened meeting at which a quorum is present, any business may be transacted which could have been transacted at the meeting which was adjourned.

**Section 9. Minutes.** The Board shall keep written minutes of its proceedings.

**Section 10. Liability.** The members of the Board of Directors shall not be liable to the Unit Owners for any mistake of judgment, negligence, or otherwise except for their own

-7-

individual willful misconduct or bad faith. It is intended that the members of the Board of Directors shall have no personal liability with respect to any contract made by them on behalf of the Association, except to the extent they are Unit Owners. It is also intended that the liability of any Unit Owner arising out of any contract made by the Board of Directors or out of the aforesaid indemnity in favor of the members of the Board shall be limited to such proportion of the total liability thereunder as his interest in the common areas and facilities. Every agreement made by the Board or by the managing agent on behalf of the Association shall incorporate by reference all of the terms and provisions of the said Declaration and these By-Laws. Each Unit Owner's liability thereunder shall be limited to such proportion of the total liability thereunder as his interest in the common areas and facilities bears to the interest of all Unit Owners in the common areas and facilities.

## ARTICLE V

### Officers

**Section 1. Number of Officers.** The Association's officers shall be a President, Vice-President, Secretary-Treasurer, and such other officers as may be appointed in accordance with the provisions of Section 3 of this Article V. Any two (2) offices or more may be held by one (1) person, except the offices of President and Secretary, but no officer shall sign or execute any document in more than one (1) capacity.

**Section 2. Election, Term of Office and Qualifications.** Each officer shall be chosen by the Board of Directors and shall hold office at the will of the Board of Directors until their successors have been elected and have been qualified or until their earlier death, resignation, removal, retirement or disqualification. The officers need not be Unit Owners.

**Section 3. Removal.** Any officer may be removed, either with or without cause, by vote of a majority of the whole Board of Directors at any meeting with respect to which notice of such purpose has been given to the members thereof.

**Section 4. Resignations.** Any officer may resign at any time by giving written notice to the Board of Directors or to the Association's President or Secretary. Any such resignation shall take effect upon its being accepted by the Board of Directors.

**Section 5. Vacancies.** A vacancy in any office because of death, resignation, removal or disqualification, or any other cause, shall be filled for the unexpired portion of the term in the manner prescribed by these By-Laws for regular appointments or elections to such offices.

**Section 6. President.** The President shall be the chief executive officer and subject to the instructions of the Board of Directors, shall have general charge of the Association's business, affairs and property and control over its other officers, agents and employees. He shall preside at all meetings of the Unit Owners and of the Board of Directors at which he may

-8-

be present. The President shall do and perform such other duties as from time to time may be assigned to him by the Board of Directors.

Section 7. Vice President. At the request of the President, or in his absence or disability, the Vice President shall perform all the duties of the President and when so acting shall have all the powers of and be subject to all restrictions upon the President. The Vice President shall perform such other duties and have such other authority as from time to time may be assigned to him by the Board of Directors.

Section 8. Secretary. The Secretary shall keep the minutes of the meetings of Unit Owners and the Board of Directors, and shall see that all notices are duly given in accordance with the provisions of these By-Laws or as required by the provisions of N.C. G. S. Chapter 47C. He shall be custodian of the Association's records, books, reports, statements, certificates and other documents and of the Association's seal, and see that the seal is affixed to all documents requiring such seal. He shall prepare, execute, certify, and record amendments to the Declaration on behalf of the Association. In general, he shall perform all duties and possess all authority incident to the office of Secretary, and he shall perform such other duties and have such other authority as from time to time may be assigned to him by the Board of Directors.

Section 9. Assistant Secretary. The Assistant Secretary, if such an officer is appointed by the Board of Directors, shall be authorized to attest to all documents on behalf of the Association and affix the Association's seal thereto. His duties shall be ministerial only and limited to executing all documents in proper corporate form as from time to time may be necessary.

Section 10. Treasurer. The Treasurer shall have supervision over the Association's funds, receipts and disbursements of the Association. He shall keep full and accurate accounts of the Association's finances in accordance with generally accepted accounting principles and in accordance with the provisions of N.C.G.S. Chapter 47C. The Treasurer shall make reports of same to the Board of Directors. The Treasurer shall perform all duties that may be assigned to him from time to time by the Board of Directors. The reports and records of the Association shall be available for inspection by the Unit Owners and duly authorized agents or attorneys of Unit Owners at convenient hours of working days. The Treasurer shall require that an outside audit be conducted at least once a year on the books and records of the Association.

Section 11. Duties of Officers May Be Delegated. In case of the absence of any officer of the Association or for any other reason that the Board may deem sufficient, the Board may delegate the powers or duties of such officer to any other officer or to any director for the time being provided a majority of the entire Board of Directors concurs therein.

Section 12. Salaries of Officers. Officers shall not be compensated on a regular basis for the usual and ordinary services rendered to the Association incident to the offices held by such officers.

-9-

Section 13. Indemnification. To the extent permitted by the North Carolina Nonprofit Corporation Act in effect at the applicable times, each officer is hereby indemnified by the Association with respect to any liability and expense of litigation arising out of activities as an officer.

ARTICLE VI

Fiscal Management

Section 1. Determination of Common Expenses and Fixing of Common Charges. The Board of Directors shall, from time to time and at least annually, prepare a budget for the Association and determine the amount of the common charges payable by the Unit Owners to meet common expenses of the condominium and allocate and assess such common charges among the Unit Owners according to their respective common interests. A common expense shall include among other things, the cost of all insurance premiums and all policies of insurance required to be or which have been obtained by the Board of Directors, ad valorem taxes, sewer charges, and assessments for public improvements. The common expenses may also include such amounts as the Board of Directors may deem proper for the operation and maintenance of the property, for the condominium, and for a general operating reserve, for reserve fund replacements, and to make up any deficit in the common expenses for any prior year. Any increase in the monthly common charge that exceeds 10% per annum will require the consent of a majority of all Unit Owners, within thirty (30) days of the adoption thereof.

The Board of Directors shall advise all Unit Owners promptly in writing of the amount of common charges payable by each of them respectively as determined by the Board of Directors and shall furnish copies of each budget on which such common charges are based- to all Unit Owners.

Section 2. Payment of Common Charges. All Unit Owners shall be obligated to pay the common charges assessed by the Board of Directors pursuant to the provisions of Section 1 of Article VI at such time or times as the Board shall determine.

Section 3. Collection of Assessments. The Board of Directors shall assess the common charges against the Unit Owners from time to time and shall take prompt action to collect any common charge due for any Unit Owner which remains unpaid for more than thirty days from the date due.

Section 4. Default in Payment of Common Charges. In the event of default by any Unit Owner in paying to the Board of Directors the common charges as determined by the Board, each Unit Owner shall be obligated to pay interest at the legal rate on such common charges from the date due thereof together with all expenses, including attorney's fees incurred by the Board in any proceeding to collect such unpaid common charges.

-10-

BOOK 2233 PAGE 324

In any action brought by the Board to foreclose on a unit because of unpaid common charges, the Unit Owner shall be required to pay a reasonable rental for the use of such unit and the plaintiff in such foreclosure shall be entitled to the appointment of a receiver to collect the same. The Board acting on behalf of all Unit Owners, or on behalf of one or more individual owners, shall have the power to purchase such unit at the foreclosure sale and to acquire, hold, lease, mortgage, convey or otherwise deal with same, subject to applicable restrictions of record,

Section 5. Maintenance and Repair. All maintenance and repair to any unit, structural or nonstructural, ordinary or extraordinary, and maintenance of and repairs and replacements to the common areas and facilities contained therein shall be made by the Board and charged to all Unit Owners as a common expense.

Section 6. Utility Expense. The Board shall own and be responsible for the repair, maintenance, and upkeep of all equipment such as heating and air conditioning equipment which serve the common areas. Unit Owners shall be individually responsible for the repair, maintenance and upkeep of all equipment such as hot water heaters and heating and air conditioning equipment which exclusively serves their unit.

Section 7. Additions and Alterations. No Unit Owner shall make any structural addition, alteration or improvement in or to his unit without the prior written consent by the Board. The Board shall have the obligation to answer any written request by a Unit Owner for consideration of a proposed structural addition, alteration or improvement brought by a Unit Owner. Failure to do so within forty-five days from the day on which the written request shall first have been made to the Board shall constitute a consent by the Board to the proposed addition, alteration or improvement.

Section 8. Right of Access. All Unit Owners shall grant a right of access to his unit to the Board or their designee for the purpose of making inspections or for the purpose of correcting any condition originating in his unit and threatening another unit or common area or facility, or for the purpose of performing installations, alterations, replacement, or repairs to common areas and facilities in the unit or elsewhere in the building. In case of emergencies such right of entry shall be immediate whether the Unit Owner is present at the time or not.

Section 9. Rules of Conduct. Rules and regulations concerning the use of the units and the common areas and facilities may be promulgated by and amended by the Board from time to time. Copies of such rules and regulations shall be furnished by the Board to each Unit Owner on request.

Section 10. Working Capital Fund. The Association shall establish a working capital fund to meet unforeseen expenditures or to purchase any additional equipment or services. The working capital fund shall be funded initially by the payment by each Unit Owner of an initial payment to the Association of two months estimated monthly assessment for each unit. Any amounts paid into this fund shall not be considered advance payments of regular assessments.

-11-

# ARTICLE VII

## Amendment of By-Laws

Section 1. For a period no longer than twenty four (24) months after the initial filing of these By-laws in the Orange County Registry, the Declarant may unilaterally amend these By-Laws without the consent or approval of other Unit Owners or eligible mortgage holders provided such amendment shall be exclusively for the purpose of correcting clerical errors or making changes other than material changes, as defined below, to these By-Laws. Otherwise, these By-Laws may be amended by a vote of Unit Owners owning in the aggregate at least a 75% undivided interest in the Common areas and facilities cast in person or by proxy at a meeting held in accordance with the provisions of the By-Laws. No such amendment shall be effective until set forth in an amended declaration and duly recorded in the Office of the Register of Deeds in Orange County, North Carolina. Upon recording, all the Unit Owners and their successors and assigns, shall be bound by said amendments.

Section 2. Amendments of a Material Nature to By-Laws. Amendments of a material nature shall be agreed to by Unit Owners who represent at least two-thirds of the total allocated votes in the Association and by eligible mortgage holders who represent at least 51% of the votes of unit estates that are subject to mortgages held by eligible holders. Unit Owner votes may be cast in person or by proxy at a meeting held in accordance with the provisions of the By-Laws. No such amendment shall be effective until set forth in an amended declaration and duly recorded in the Office of the Register of Deeds in Orange County, North Carolina. Upon recording, all the Unit Owners and their successors and assigns, shall be bound by said amendments.

A material change shall be considered as one defined in Paragraph 21 of the Declaration:

Implied approval by an eligible mortgage holder shall be assumed when an eligible mortgage holder fails to submit a response to any written proposal for an amendment within thirty (30) days after it receives proper notice of the proposal, provided the notice was delivered by certified mail or registered mail with a "return receipt' requested.

# ARTICLE VIII

## Compliance

Section 1. These By-Laws are set forth to comply with the requirements of the Unit Ownership Act, Chapter 47C of the General Statutes of the State of North Carolina. In the event that any of these By-Laws conflict with the provisions of said statute, it is hereby agreed and accepted that the provisions of the statute will apply.

-12-

The foregoing were adopted as the By-Laws of PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION at the first meeting of the Board of Directors on _____April 9_____, 2000.

### ARTICLE IX

#### Miscellaneous

Section 1. Severability. Invalidation of any provision of these By-Laws shall not affect the validity of the remaining portions thereof, which shall remain in full force and effect.

APPROVED:

_____
President

_____
Secretary

g:\closings\presqueltbylaws.CLN

-13-

# PRESQUE ISLE VILLAS COMMUNITY HANDBOOK

## TABLE of CONTENTS
July 10, 2018

| | |
|---|---|
| INTRODUCTION | 2 |
| BACKGROUND | 2 |
| PRESQUE ISLE VILLAS MANAGEMENT | 2 |
| ADMINISTRATION | 3 |
| GENERAL | 3 |
|     Monthly Assessments aka "Condo Fees" or "Dues" | |
|     Occupancy | |
|     Traffic | |
|     Road Usage and Maintenance | |
|     Parking | |
|     Security and Safety | |
|     Noise | |
| POOL | 5 |
| CLUB HOUSE | 5 |
|     Guidelines for Club House Use | |
|     Club House Grill | |
|     Reservations and Parties | |
|     Reservation Procedure | |
|     Parties | |
|     Clean-up after Parties | |
| PETS | 6 |
| TRASH AND RECYCLING | 6 |
| RENTALS | 7 |
| PRESQUE ISLE MAINTENANCE AND REPAIR | 7 |
|     Insurance-HOA and Unit Owners | |
|     Responsibilities of Homeowners Association | |
|     Responsibilities of the Individual Homeowner | |
| LANDSCAPING | 9 |
| BUILDING EXTERIOR | 9 |
| PORCHES | 9 |
| SIGNS, FLAGS, AND TEMPORARY DISPLAYS | 10 |
| REQUESTS FOR ARCHITECTURAL AND/OR LANDSCAPING EXCEPTIONS | 10 |
| ENFORCEMENT OF ARCHITECTURAL AND LANDSCAPING STANDARDS | 10 |
| RESIDENTIAL WATER USE | 11 |
| MAINTENANCE RESPONSIBILITY CHART | 12 |



EXHIBIT
3

BAGWELL HOLT SMITH P.A.
ATTORNEYS AT LAW
111 CLOISTER COURT, SUITE 200
CHAPEL HILL, NORTH CAROLINA 27514
TELEPHONE: (919) 401-0062
FACSIMILE: (919) 403-0063
www.bhspa.com

THOMAS R. HOLT
NATHANIEL C. SMITH
JEFFREY A. JONES
CHRISTOPHER A. CROWSON
JOHN G. MISKEY IV
CHARLES H. THIBAUT
MICHAEL R. GANLEY*

*Also Licensed in South Carolina

ASSOCIATE ATTORNEYS
LAUREN R. NANCE
JENNY R. JOECKEL
ANDREW S. BULLARD
BRITTANY N. JONES
ASHLEY O. BOONE
LAURA E. KASTNER

OF COUNSEL
O. KENNETH BAGWELL, JR.

**June 12, 2018**
Via Electronic Mail

Presque Isle Villas Condominium Homeowners Association, Inc.
Attn: Board of Directors
c/o Community Association Management, Limited
P.O. Box 79032
Charlotte, NC 28271-0030

Re:     **Presque Isle Villas COA – Maintenance Responsibilities**

To Whom It May Concern:

My name is Michael Ganley, and I am the attorney for Presque Isle Villas Condominium Homeowners Owners Association, Inc. (the "HOA").  The purpose of this letter is to give some background and clarity to the issue of the scope and extent of the maintenance responsibilities of the HOA. Your property manager, Community Association Management, requested that I prepare a maintenance responsibility chart to ensure that it mirrors the North Carolina Condominium Act as codified in N.C.G.S. § 47-C, and the provisions contained within the Declaration of Condominium of record at Book 2233, Page 287, Orange County Registry (the "Declaration"), along with all subsequent amendments, if any, and other governing documents of the subdivision.

Below is the reviewed and approved Maintenance Responsibility Chart for the COA:

| ITEM | COA | OWNER | PAYMENT | AUTHORITY | NOTES |
|---|---|---|---|---|---|
| Awnings | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Balconies | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...balconies..." |
| Ceilings | | x | | Section 4 | "Each unit is bounded both as to horizontal and vertical boundaries by the interior surface of its perimeter walls, ceilings, and floors." |
| Chimney | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Common Areas | x | | COA | Section 5(b) | "The common areas and facilities consist of...the community center, swimming pool and pocca ball court, trash collection areas and equipment related thereto, parking areas...equipment rooms, lobbies and lobby closets, privacy wall, fountain and permanent signage..." |
| Courtyards | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...courtyards..." |
| Decks | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...any deck..." |
| Doorbell | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Doors - Exterior | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...doors." |
| Doors - Frames | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...doors." |

| ITEM | COA | OWNER | PAYMENT | AUTHORITY | NOTES |
|---|---|---|---|---|---|
| Doors - Glass | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...doors." |
| Doors – Interior | | x | | Section 4 | "...appurtenances located within any unit and designed to serve only that unit shall be a part of the unit." |
| Doors – Painting | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...doors." |
| Doors - Screen | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Driveways | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include..driveways..." |
| Drywall/Sheetrock (not part of wall between units) | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Exteriors/Siding | x | | COA | Section 5(c) | "Common Areas and Facilities shall mean and include...all exterior walls..." |
| Fascia | x | | COA | Section 5(c) | "Common Areas and Facilities shall mean and include...all exterior walls..." |
| Foyers (Carriage Units) | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...foyer of carriage units..." |
| Fences | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Flooring | | x | | Section 4 | "Each unit is bounded both as to horizontal and vertical boundaries by the interior surface of its perimeter walls, ceilings, and floors." |
| Foundations and Structure | x | | COA | Section 5(b) | "The common areas and facilities consist of...all foundations..." |
| Foundation Vents | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Garages - attached | | x | | Section 4 | "Each unit is bounded both as to horizontal and vertical boundaries by the interior surface of its perimeter walls, ceilings, and floors." |
| Garages - assigned | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...assigned garage..." |
| Garages – exterior drainage | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Garage – opener (assigned) | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...assigned garage..." |
| Garage – opener (attached) | | x | | Section 4 | "Each unit is bounded both as to horizontal and vertical boundaries by the interior surface of its perimeter walls, ceilings, and floors." |
| Garage – doors | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...assigned garage..." |
| Garage – frame | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...assigned garage..." |
| Gutters, downspouts, extenders & splash pans | x | | COA | Section 5(g) | "The common areas and facilities consist of...all parts of the property...for common use necessary or convenient to the existence, maintenance or safety of the property..." |
| Interiors | | x | | Section 4 | "Each unit is bounded both as to horizontal and vertical boundaries by the interior surface of its perimeter walls, ceilings, and floors." |
| Landscaping (except for rear yards) | x | | COA | Section 5(g) | "The common areas and facilities consist of...all landscaping..." |
| Landscaping (rear yards) | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...rear yard..." |
| Lights – common area | x | | COA | Section 5(g) | "The common areas and facilities consist of...all site improvements..." |

2000 AERIAL CENTER PARKWAY • SUITE 110 BC • MORRISVILLE, NC 27560 • PHONE: (919) 460-2920 • FAX: (919) 465-3342
400 MARKET STREET • SUITE 103 • CHAPEL HILL, NC 27516 • PHONE: (919) 932-2225 • FAX: (919) 932-2212
7 CORPORATE CENTER COURT • SUITE B • GREENSBORO, NC 27408 • PHONE: (336) 369-2191 • FAX: (336) 282-3797
33 MARKET POINT DRIVE • GREENVILLE, SC 29607 • PHONE: (864) 527-0444 • FAX: (864) 288-4608

| ITEM | COA | OWNER | PAYMENT | AUTHORITY | NOTES |
|---|---|---|---|---|---|
| Lights – unit exterior | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Mail Kiosk | x | | COA | Section 5(g) | "The common areas and facilities consist of...all site improvements..." |
| Mail Kiosk – individual boxes | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Mail Kiosk - keys | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Parking Areas | x | | COA | Section 5(c) | "The common areas and facilities consist of...parking areas..." |
| Party Walls | | x | | Section 4 | "The cost of reasonable repair and maintenance of a boundary wall shall be shared by the owners who make use of the wall in proportion to such use." |
| Patios | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...patios..." |
| Pest Inspection, Control & Treatment – Common Area | x | | COA | Section 5(g) | "The common areas and facilities consist of...all parts of the property...for common use necessary or convenient to the existence, maintenance or safety of the property..." |
| Pest Inspection, Control & Treatment - Units | | x | | § 47C-3-107 | "Each unit owner is responsible for maintenance, repair and replacement of his unit." |
| Pipes, Valves, Spigots and Drains – outside unit | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Porches | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...porches..." |
| Porches - ceilings | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...porches..." |
| Porches - railings | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...porches..." |
| Roof | x | | COA | Section 5(c) | "The common areas and facilities consist of...the roof..." |
| Roof – Boots | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Roof – Sheathing | x | | COA | Section 5(c) | "The common areas and facilities consist of...the roof..." |
| Roof - Vents | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Sheetrock | | | | | |
| Soffit | x | | COA | Section 5(c) | "Common Areas and Facilities shall mean and include...soffit..." |
| Sprinkler Heads | | x | | § 47C-3-107 | "Each unit owner is responsible for maintenance, repair and replacement of his unit." |
| Sprinkler System | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Steps (Front and Rear Brick) | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Storage Rooms | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include...storage room appurtenant to such of the Units..." |
| Utility Lines – in unit | | x | | Section 4 | "Mechanical equipment located within any unit and designed to serve only that unit shall be a part of the unit" |

2000 AERIAL CENTER PARKWAY • SUITE 110 BC • MORRISVILLE, NC 27560 • PHONE· (919) 460·2920 • FAX: (919) 465·3342
400 MARKET STREET • SUITE 103 • CHAPEL HILL, NC 27516 • PHONE: (919) 932·2225 • FAX: (919) 932·2212
7 CORPORATE CENTER COURT • SUITE B • GREENSBORO, NC 27408 • PHONE: (336) 369·2191 • FAX: (336) 282·3797
33 MARKET POINT DRIVE • GREENVILLE, SC 29607 • PHONE: (864) 527·0444 • FAX: (864) 288·4608

| ITEM | COA | OWNER | PAYMENT | AUTHORITY | NOTES |
|---|---|---|---|---|---|
| Utility Lines - shared | x | | COA | Section 5(d) | "The common areas and facilities consist of...all central appurtenant installments for operations and for services such as power, lights, telephone, security system, cable TV, elevator, cold water for common building usage, heat and air conditioning for common building usage..." |
| Utility Meters | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Vents – Attic | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Vents - Dryer | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Vents - Fireplace | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Walks/ Walkways – Community | x | | COA | Section 5(g) | "The common areas and facilities consist of... all site improvements..." |
| Walks/ Walkways – Units | x | | OWNER | Section 6 | "Limited Common Areas and Facilities shall mean and include those common areas and facilities reserved for use by a certain Unit or Units to the exclusion of other Units." |
| Walls – interior (bearing) | x | | COA | Section 5(c) | "Common Areas and Facilities shall mean and include...interior walls..." |
| Walls – interior (partition) | | x | | Section 5(c) | "Limited Common Areas and Facilities shall mean and include...interior walls except those partition walls..." |
| Windows | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...windows." |
| Windows - Frames | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...windows." |
| Windows - Glass | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...windows." |
| Windows - Painting | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...windows." |
| Windows - Screens | | x | | Section 12(k) | "Each Unit Owner shall be responsible for repair and replacement of...windows." |

Thank you for allowing me to assist you in this complex process, and you can feel free to contact me if you have any further questions.

Sincerely,

Michael R. Ganley
Attorney at Law

2000 AERIAL CENTER PARKWAY • SUITE 110 BC • MORRISVILLE, NC 27560 • PHONE: (919) 460-2920 • FAX: (919) 465-3342
400 MARKET STREET • SUITE 103 • CHAPEL HILL, NC 27516 • PHONE: (919) 932-2225 • FAX: (919) 932-2212
7 CORPORATE CENTER COURT • SUITE B • GREENSBORO, NC 27408 • PHONE: (336) 369-2191 • FAX: (336) 282-3797
33 MARKET POINT DRIVE • GREENVILLE, SC 29607 • PHONE: (864) 527-0444 • FAX: (864) 288-4608



**Community**
Association Management

P.O. Box 79032 • Charlotte, NC 28271-0030 • (919) 741-5285 • Fax (919) 948-3631
www.PresqueIsleVillas.org

August 2, 2021

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514

00000496-C-PIL308

Re: Account #: PIL308 - Address: 308 Presque Isle Lane

The COVID 19 pandemic has affected almost all of us, in one way or another. We want to ensure that you are aware of your HOA payment options, to avoid any additional charges. If your job, your wages, or your family income situation has been impacted by the COVID19 pandemic, please call us to discuss your account right away. We're here to help.

Dear : Hayden Scott Rose:

Although we have contacted you about the outstanding balance on your account, we still have not heard from you. You have an outstanding balance of $2642.16, which contains additional late charges or fees.

If you have already sent payment in full, we ask that you call and let us know. Otherwise, please call us to discuss what you plan to do to settle your account.

If you would like to discuss payment arrangements or an installment plan, please contact our office either by phone or by mail.

Thank you for your prompt attention to this matter.

Sincerely,
Community Association Management
For The Board of Directors for Presque Isle Villas Condominium Homeowners Association, Inc.

*PLEASE MAKE ALL CHECKS PAYABLE TO: Presque Isle Villas Condominium Homeowners Association, Inc.*
*Include Your Account Number: PIL308*
*Payment Mailing Address: Payment Processing Center*
*P.O. Box 848*
*Commerce, GA 30529*

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR, AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. (FDCPA - 15 U.S.C. 1692)**



EXHIBIT
4

EXHIBIT F

ZACHARY J. WILSON, ATTORNEY
ZWILSON@BHSPA.COM

**BAGWELL HOLT SMITH P.A.**
ATTORNEYS AT LAW
111 CLOISTER COURT, SUITE 200
CHAPEL HILL, NORTH CAROLINA 27514
TELEPHONE: (919) 401-0062
FACSIMILE: (919) 403-0063
www.bhspa.com

June 22, 2021
Via First Class and Certified Mail

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514

Re:  **Presque Isle Villas – Deck Repairs**

Ms. Rose:

This office represents Presque Isle Villas Condominium Homeowners Association, Inc. (the "HOA") with regard to the needed deck maintenance on your unit. Similar deck repair work was deemed necessary by the HOA and was performed by Pro Fixer, the HOA's contractor, on five (5) other units in the community, and each of those unit owners either paid for this repair work directly to the vendor, or had the maintenance costs assessed to their accounts. Since you elected not to pay Pro Fixer directly, the HOA has assessed such cost to your account.

As stated in our prior correspondence, pursuant to Section 6 of the Declaration of Condominium for Presque Isle Villas, as recorded in Book 2233 Page 287, Orange County Register of Deeds (the "Declaration") the HOA is responsible for the maintenance, painting, repair and replacement of Limited Common Areas and Facilities. In lieu of an unambiguous statement in the Declaration, N.C.G.S. §47C-3-107 provides that the maintenance of a limited common element shall be assessed as provided in N.C.G.S. §47C-3-115(b). N.C.G.S. §47C-3-115(b) provides that except for assessments under 47C-3-115(c), all assessments must be assessed against the units based on the percentages. N.C.G.S. §47C-3-115(c) provides that any common expense associated with the maintenance of a limited common element must be assessed against the units to which that limited common element is assigned.

While it is understood that your personal reading of the applicable law and covenant provisions varies from that of the Board and that of this firm, the Board's position in this regard is supported by legal precedent. The Board intends to pursue collection of any assessments to your unit, in the event such assessments are not paid in a timely fashion. Per Section 9 of the Declaration, as well as the N.C. Gen. Stat. § 47C-3-116, the regular and special assessments of the HOA constitute a lien on your property, and the HOA can pursue a claim of lien or a foreclosure of the property to secure any debt that is owed. If you wish to avoid the HOA's claiming of a lien on your property and/or the foreclosure process, you may submit payment of the amount owed to the HOA, whether you maintain a protest regarding such an interpretation or not. The Board will have Pro Fixer contact you to schedule work on your unit. Thank you.

Sincerely,

Zachary J. Wilson
Attorney at Law

cc:  Staci Green, Community Association Management, Ltd.
Board of Directors, Presque Isle Villas Condominium Homeowners Association, Inc.

EXHIBIT 5

Chapel Hill · Southern Village · Research ... orest · High Point · Columbia

ROSE - 071



1    A    Yeah.

2    Q    Do you see the first dot under that where it

3 says, "CAM to send a letter from the attorney to the

4 owner"?

5    A    Yes.

6    Q    Do you want to revise your answer?

7    A    **It still doesn't state the name of Mr. Rose.**

8    Q    Did the meeting minutes mention the owner?

9    A    **Yes.  The owner, yes.**

10   Q    Of what unit?

11   A    **308.**

12   Q    And that's Mr. Rose?

13   A    **Yes.**

14   Q    Do you know what was said at the meeting?

15   A    **Whatever's listed in the minutes.**

16   Q    And that's all you're aware of?

17   A    **That's all I can speak to.  I wasn't there.**

18   Q    Okay.  Who are the attendees at that meeting?

19   A    **The names listed at the top.**

20   Q    Okay.  Who are they?

21   A    **Carl, Caroline, David, Jen, Sylvia, Tom.**

22   Q    Do you know who these people are?

23   A    **Yes.**

24   Q    Is everyone there a member of the Board or the

25 Association?

## Presque Isle Villas Condominium Homeowners Association, Inc.

P.O. Box 79032 • Charlotte, NC 28271-0030 • (919) 741-5285 • Fax (919) 948-3631
www.PresqueIsleVillas.org

August 30, 2021

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514



00000496-G-PIL308

Dear Hayden Scott Rose,

The deck repairs have been completed. The final invoice has been received. See attached. We have added the $2600 balance due to your account.

If you need to create a payment plan, please contact our Resident Services Department asap at csr@communityassociationmanagement.com or 919-741-5285.

Once an account reaches the lien stage, it will be forwarded to the HOA attorney for lien filing and collections. Additional legal fees and collection fees may accrue at that time.

Thank you for your payment.

Sincerely,

Community Association Management
For the Board of Directors for Presque Isle Villas Condominium Homeowners Association, Inc.



EXHIBIT
6

# Invoice #337



Scan this code to pay:
Or go to kck.sw/pay
and enter this code:
**MS4W-ZRYO**



| Billing Address | Service Address | Send Payment To | | |
|---|---|---|---|---|
| Unit 308 Owner | Unit 308 Owner | The Pro Fixer | **Invoice Date** | 08/25/21 |
| 308 Presque Isle Lane | 308 Presque Isle Lane | P.O. Box 40175 | **Sent On** | 08/25/21 |
| Chapel Hill NC 27514 | Chapel Hill NC 27514 | Raleigh NC 27629 | **Total** | $5,200.00 |
| info@theprofixer.com | info@theprofixer.com | (919) 901-2209 | **Payments** | $2,600.00 |
| +1 704 565 5009 | +1 704 565 5009 | wepking@theprofixer.com | **Balance** | $2,600.00 |
| +1 919 901 2209 | +1 919 901 2209 | | | |

## Scope of Work

Due to the pitch of the tile, water is pooling/running back into the building. The wrong grout was used and is soaking of moisture. By installing this decking we are redirecting water away from building and foundation to help prevent future water issues.

## Charges

| Item | Description | Unit Cost | Tax | Quantity | Line Total |
|---|---|---|---|---|---|
| Jake Wepking | Jake Wepking<br>President/Owner<br>The Pro Fixer<br>Cell: (919) 901-2209<br>wepking@theprofixer.com | $0.00 | ✔ | 1.0 | $0.00 |
| Workscope | We will perform the following work:<br><br>We will be reworking the deck/porch over the entry where the tiles are failing apart.<br><br>1. Remove all of the tiles, Cement backer, and railing system. This is due to the fact the wrong tiles, grout, and backer were used to allow water in. As well as the railing system being sunken into the tiles that allow water to pool in the space.<br><br>2. Reseal the old roof surface that is there. (that is if we are able to do that if we cannot there will be an additional cost)<br><br>3. Install strips to pitch the Greenbay Duxbak way from the house. We will be shooting for a half inch drop from the high point to the low point.<br><br>4. Cut siding to allow for flashing to cover over the decking.<br><br>5. Install Capped DuxxBak with optima colors with Stainless steel screws.<br><br>6. Install the flashing around the siding.<br><br>7. Reinstall the railing system on top of the decking and then apply a coat of black paint.<br><br>8. Install gutter to divert the water away from the entry of the home.<br><br>This bid doesn't cover any unforeseen problems. | $5,200.00 | ✘ | 1.0 | $5,200.00 |
| Deck Build/Resurface Payment Terms | Payment Terms:<br>Down Payment: 50% down to order materials: $2,600<br>Final Payment: 50% once the job is complete: $2,600 | $0.00 | ✘ | 1.0 | $0.00 |

| | | |
|---|---|---|
| | Subtotal | $5,200.00 |
| | Tax | $0.00 |
| | **Total** | **$5,200.00** |



**Community**
Association Management

P.O. Box 79032 • Charlotte, NC 28271-0030 • (919) 741-5285 • Fax (919) 948-3631
www.PresqueIsleVillas.org

July 2, 2021

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514

00000496-C-PIL308



Re: Account #: PIL308 - Address: 308 Presque Isle Lane

Dear Hayden Scott Rose,

Have you forgotten us? This is just a friendly reminder that your account with Presque Isle Villas Condominium Homeowners Association, Inc. is past due. Our records indicate you have an overdue amount of $2944.89.

Considering your excellent payment history, we're certain this is just an oversight. I'm sure we will receive your check within the next few days.

If you have any questions about the amount you owe, or problems bringing your account current, please give us a call and we'll be happy to discuss it. If you've already sent your payment, please disregard this reminder.

If you are setup for eStatements, and did not receive your statement in your email box, please log into www.PresqueIsleVillas.org and verify/update your email address.

Sincerely,
Community Association Management
For The Board of Directors for Presque Isle Villas Condominium Homeowners Association, Inc.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

The following disclosure is given to you in compliance with 15 U.S.C. § 1692(g):
Unless you dispute the validity of this debt, or any portion thereof in writing, within thirty days after receipt of this letter, we will assume that the debt is valid. If you notify us in writing within that period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment entered against you (if any) and mail a copy of such verification or judgment to you. Upon your written request within the thirty day period mentioned above, we will provide you with the name and address of the original creditor, if different from the current creditor. This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

---

*Please detach and return this portion with payment. Do not staple or fold.*

Presque Isle Villas Condominium Homeowners Association, Inc.
P.O. Box 79032
Charlotte, NC 28271-0030

PIL308
2944.89
07/02/2021
07/1/2021

Re: 308 Presque Isle Lane

Make checks payable to your association

Presque Isle Villas Condominium Homeowners Association, Inc.
Payment Processing Center
P.O. Box 848
To:   Commerce, GA 30529-0016



0581  000       8 9 00294489 00294489 8





**Community**
Association Management

P.O. Box 79032 • Charlotte, NC 28271-0030 • (919) 741-5285 • Fax (919) 948-3631
www.PresqueIsleVillas.org

July 2, 2021

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514


00000496-C-PIL308

Re: Account #: PIL308 - Address: 308 Presque Isle Lane

Dear Hayden Scott Rose,

Have you forgotten us? This is just a friendly reminder that your account with Presque Isle Villas Condominium Homeowners Association, Inc. is past due. Our records indicate you have an overdue amount of $2944.89.

Considering your excellent payment history, we're certain this is just an oversight. I'm sure we will receive your check within the next few days.

If you have any questions about the amount you owe, or problems bringing your account current, please give us a call and we'll be happy to discuss it. If you've already sent your payment, please disregard this reminder.

If you are setup for eStatements, and did not receive your statement in your email box, please log into www.PresqueIsleVillas.org and verify/update your email address.

Sincerely,
Community Association Management
For The Board of Directors for Presque Isle Villas Condominium Homeowners Association, Inc.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

The following disclosure is given to you in compliance with 15 U.S.C. § 1692(g):
Unless you dispute the validity of this debt, or any portion thereof in writing, within thirty days after receipt of this letter, we will assume that the debt is valid. If you notify us in writing within that period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment entered against you (if any) and mail a copy of such verification or judgment to you. Upon your written request within the thirty day period mentioned above, we will provide you with the name and address of the original creditor, if different from the current creditor. This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

**EXHIBIT**
**I**
ALL-STATE LEGAL®

---

Please detach and return this portion with payment. Do not staple or fold.

Presque Isle Villas Condominium Homeowners Association, Inc.
P.O. Box 79032
Charlotte, NC 28271-0030


PIL308
2944.89
07/02/2021
07/1/2021

Re: 308 Presque Isle Lane

Make checks payable to your association

Presque Isle Villas Condominium Homeowners Association, Inc.
Payment Processing Center
P.O. Box 848
To:   Commerce, GA 30529-0016

**EXHIBIT**
**7B**
tabbies®

0581        PIL308 9 00294489 00294489 8


**Community**
Association Management

P.O. Box 79032 • Charlotte, NC 28271-0030 • (919) 741-5285 • Fax (919) 948-3631
www.PresqueIsleVillas.org

August 2, 2021

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514

00000496-C-PIL308

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Re: Account #: PIL308 - Address: 308 Presque Isle Lane

**The COVID 19 pandemic has affected almost all of us, in one way or another. We want to ensure that you are aware of your HOA payment options, to avoid any additional charges. If your job, your wages, or your family income situation has been impacted by the COVID19 pandemic, please call us to discuss your account right away. We're here to help.**

Dear : Hayden Scott Rose:

Although we have contacted you about the outstanding balance on your account, we still have not heard from you. You have an outstanding balance of $2642.16, which contains additional late charges or fees.

If you have already sent payment in full, we ask that you call and let us know. Otherwise, please call us to discuss what you plan to do to settle your account.

**If you would like to discuss payment arrangements or an installment plan, please contact our office either by phone or by mail.**

Thank you for your prompt attention to this matter.

Sincerely,
Community Association Management
For The Board of Directors for Presque Isle Villas Condominium Homeowners Association, Inc.

---

*PLEASE MAKE ALL CHECKS PAYABLE TO: Presque Isle Villas Condominium Homeowners Association, Inc.*
*Include Your Account Number: PIL308*
*Payment Mailing Address: Payment Processing Center*
*P.O. Box 848*
*Commerce, GA 30529*

---

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR, AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. (FDCPA - 15 U.S.C. 1692)**



EXHIBIT
7C



P.O. Box 79032 • Charlotte, NC 28271-0030 • (919) 741-5285 • Fax (919) 948-3631
www.PresqueIsleVillas.org

September 1, 2021

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514


00000496-C-PIL308

Re: Account #: PIL308 - Address: 308 Presque Isle Lane

**The COVID 19 pandemic has affected almost all of us, in one way or another. We want to ensure that you are aware of your HOA payment options, to avoid any additional charges. If your job, your wages, or your family income situation has been impacted by the COVID19 pandemic, please call us to discuss your account right away. We're here to help.**

Dear Hayden Scott Rose:

According to our records, your account is now (90) days or more past due for payment of Assessments owed to Presque Isle Villas Condominium Homeowners Association, Inc.. The total amount due as of September 1, 2021 is $5552.72. This amount includes all Assessments, fines and fees currently due on this account.

Several statements and reminder notices have previously been sent informing you of the balance due on the account. We must now request that you take immediate action to bring your account current. If there is a reason that you are witholding payment or if you are experiencing some financial hardship, please contact our office in order to discuss this matter.

The recorded legal documents governing Presque Isle Villas Condominium Homeowners Association, Inc. require prompt payment of Assessments in order that the Association may meet its obligations for common property maintenance and administration of community affairs.

**If you do not make immediate payment or contact our office within 30 days to setup a payment plan, the Association may pursue alternative collection methods, including legal action\* in order to recover the delinquent balance.**

*\*Legal action to collect the delinquent balance may include filing of a Claim of Lien upon your property to secure the amount owed, and if the debt remains unpaid, Foreclose on the Claim of Lien. If the Association incurs attorney fees to collect this debt, you will be charged the attorney fees and costs of collection.*

Thank you,
Community Association Management
for the board of Presque Isle Villas Condominium Homeowners Association, Inc..

---

**PLEASE MAKE ALL CHECKS PAYABLE TO:** *Presque Isle Villas Condominium Homeowners Association, Inc.*
*Include Your Account Number: PIL308*
*Payment Mailing Address: Payment Processing Center*
*P.O. Box 848*
*Commerce, GA 30529*

---

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR, AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. (FDCPA - 15 U.S.C. 1692)**



EXHIBIT

7D

 **Community**
Association Management

Esta es una carta importante con respecto a una deuda
pendiente. Si no puede leer Inglés, por favor, encontra alguien
que puede interpretar esta carta para usted. Si no se resuelve,
este asunto será referido a un abogado para las colecciones.

P.O. Box 79032 • Charlotte, NC 28271-0030
(919) 741-5285 • Fax (919) 948-3631
www.PresqueIsleVillas.org

October 5, 2021

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514

00000496-C-PIL308



**THIS COMMUNICATION IS FROM A DEBT COLLECTOR, AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

RE: Account: PIL308
HOA: Presque Isle Villas Condominium Homeowners Association, Inc.
Property : 308 Presque Isle Lane

Dear : Hayden Scott Rose

**IT HAS BEEN BROUGHT TO THE ATTENTION OF THE BOARD OF DIRECTORS THAT YOUR ASSOCIATION ACCOUNT IS IN ARREARS.**

**PLEASE TAKE NOTICE** That regular and special assessments duly levied by Presque Isle Villas Condominium Homeowners Association, Inc. against your property located at 308 Presque Isle Lane, are delinquent. A Delinquent balance of $5335.00 is due on your account. Please disregard this letter if your payment and this letter have crossed in the mail.

**BE ADVISED THAT PURSUANT TO NORTH CAROLINA LAW YOU HAVE THE RIGHT TO PAY THIS BALANCE IN FULL WITHIN FIFTEEN (15) DAYS OF THE DATE OF THIS LETTER WITHOUT INCURRING ATTORNEY'S FEES AND COSTS ASSOCIATED WITH COLLECTION OF THIS DEBT.** If the balance due is not paid in full within 15 days of the date of this letter, the Association will turn your account over to the Association's law firm, and the Association intends to seek payment from you of all attorney's fees, costs and expenses incurred in collection of this debt. Presque Isle Villas Condominium Homeowners Association, Inc. reserves the right to report this delinquency to the credit bureau(s). The balance due does not include any other monies due the association including, but not limited to, current or future assessments, late charges, or interest, which will increase the balance due, stated above.

*Please contact Frank Clerk at (919) 741-5285 Ext. 5983 within fifteen (15) days of the date of this notice to make payment arrangements or make your check payable to above named association and address.* Neither you nor the Association is obligated to offer or accept a payment schedule.

You will receive NO further notices before the institution of formal action to collect the outstanding balance, including attorney's fees. Your Account will be turned over to the Associations attorney if payment is not received within 15 days. From that point in time forward, all communications will be between you and the Associations attorney, *not* Community Association Management or the Board of Directors. We hope this will not be necessary.

Sincerely,
Frank Clerk – for the Board of Directors for Presque Isle Villas Condominium Homeowners Association, Inc.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. This collection letter supersedes any account statements or other correspondence from the Association or Community Association Management related to your account balance and when the payment is due, including any account statements bearing the same date as this letter. The balance shown on this letter is the current amount due as of close of business on 10/05/2021.

Enclosures: Copy of Account History
Notice Required by the Fair Debt Collection Practices Act (15 U.S.C 1692)

CERTIFIED MAIL- RETURN RECEIPT REQUESTED
FIRST CLASS MAIL (Copy)



EXHIBIT

7E

Presque Isle Villas Condominium Homeowners
Association, Inc.
P.O. Box 79032 • Charlotte, NC 28271-0030



Esta es una carta importante con respecto a una deuda pendiente.
Si no puede leer Inglés, por favor, encontra alguien que puede
interpretar esta carta para usted. Usted está en riesgo de perder
su casa en una ejecución hipotecaria debido a su falta de pagar
las evaluaciones de la asociación de propietarios.

## NOTICE OF DUES DELINQUENCY
## FINAL FORECLOSURE WARNING

December 10, 2021

Hayden Scott Rose
308 Presque Isle Lane
Chapel Hill, NC 27514

00000496-C-PIL308

RE: Account: PIL308
HOA: Presque Isle Villas Condominium Homeowners Association, Inc.
Property : 308 Presque Isle Lane

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR, AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Dear : Hayden Scott Rose:

Pursuant to N.C.G.S. ß 45-21.16 (c) (5a), we are providing you with the following information regarding amounts owed by you to the Association as of the date of this letter:

**Delinquent Balance Due: $6242.89**

The above balance includes the Attorney Fee for Lien filing and the Lien Filing Fee. The balance DOES NOT include an 8% interest Charge from the date of your lien or the Attorney's foreclosure filing fee.

As you should be aware from previous correspondence, a lien was filed against your residence. At this time, your account is being referred back to our attorney to proceed with foreclosure of the lien. The amounts above are those, which the Association claims in good faith are owed as of the date of this letter. Foreclosure will be filed within 15 days unless the balance is paid in full. Those amounts will change after the date of this letter as assessments and other amounts due under the terms of the governing documents accrue and remain unpaid and as other expenses are incurred. Please contact the law firm listed below to obtain an updated statement:

> **Bagwell Holt Smith P.A.**
> **111 Cloister Court**
> **Suite 200**
> **Chapel Hill, NC 27514**
> **(919) 401-0062**

This communication is from a debt collector. It is being sent to you as the record owner of the above referenced property as required by the above referenced statute.

Sincerely,

The Board of Directors for the Presque Isle Villas Condominium Homeowners Association, Inc.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. This collection letter supersedes any account statements or other correspondence from the Association or Community Association Management related to your account balance and when the payment is due, including any account statements bearing the same date as this letter. The balance shown on this letter is the current amount due as of close of business on 12/10/2021.

Notice Required by the Fair Debt Collection Practices
Act
(15 U.S.C. 1692)

MAIL- RETURN RECEIPT REQUESTED (Original)
FIRST CLASS MAIL (Copy)



EXHIBIT

tabbies

7F