UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
File No. 1:22-CV-478

| | |
|---|---|
| **HAYDEN SCOTT ROSE,**<br><br>                                        **Plaintiff**<br><br>v.<br><br>**PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc.,** *et al.,*<br><br>                                        **Defendants** | **REPLY TO RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**NOW COMES** Plaintiff, Hayden Scott Rose, by and through Counsel, and in reply to the Response by Presque Isle Villas Condominium Homeowners Association, Inc., Presque Isle Villas Condominium Homeowners Association, Inc., Board of Directors, Community Association Management, Ltd., (Presque) to the Plaintiff's Motion for Summary Judgment, the Plaintiff shows this Court the following:

### PRESQUE IS RESPONSIBLE FOR PAYING THE DECK REPAIRS

From the outset the Defendants in this case are attempting to muddy the water because the facts and the law are against them. This case is clear. All of the Governing Documents and agreements between Mr. Rose and the Defendants show that the repairs to his deck were the responsibility of the Association.

The Parties have submitted all the documents the Court needs to determine who was responsible for paying for the deck repairs. The State Statute, the Declaration of Condominium and the Bylaws (the "Governing Documents" referred to on page 2 of Presque's *Response in Opposition*) are before the Court, and all parties agree that these control. Mr. Rose will rely on the argument in his Motion for the long explanation as to why he is not responsible for paying the deck repair assessment.

In short, the Defendant has assessed Mr. Rose for repair of an element of the "Limited Common Areas and Facilities" (LCAF). The Declaration states that the cleanliness and orderliness of the LCAF shall be the responsibility of the individual Unit Owner (Mr. Rose), But that the responsibility for maintenance, painting, **repair** and replacement" of the LCAF "shall be and remain with the Association…" Declaration of Condominium. p.3-4, ¶ 6 (emphasis supplied). (Exhibit A). The decks are the "repair" responsibility of the Association.

N.C. Gen. Stat. § 47C-3-107(a) states that "the cost of maintenance, repair or replacement of a limited common element shall be assessed as provided in G.S. 47C-3-115(b)." *Id.* Since Mr. Rose's deck is a Limited Common Element, we look to § 47C-3-115(b), which directs our attention to 115(c)(1). The Presque brief ignores this section because it sends the analysis back to the Declaration, which makes the deck repairs the Association's responsibility. N.C. Gen. Stat. § 47C-3-115(c)(1) states:

> Any common expense associated with the maintenance, **repair**, or replacement of a limited common element must be assessed against the units to which that limited common element is assigned, equally, or **in any other proportion that the declaration provides**;

*Id.*, (emphasis supplied). As we have already seen *supra*, the Declaration orders that responsibility for repair of limited common elements shall be and remain with the Association. It makes sense because these elements are common to all owners. According to the Declaration, Presque is responsible.

The Presque Response in Opposition strings together some statements in the Declaration that purport to say that the Board of Directors of the Association must repair common areas and collect assessments to pay for those repairs. But this ignores the very clear language that sets deck repairs apart as a cost paid by Presque. The Governing Documents allow for assessments when proper, to be sure, but the assessments have to be legitimate and costs the owners agreed to pay. The Board

2

had no authority to assess the deck repairs against Mr. Rose, and the Defendants have failed to show otherwise. The Presque Defendants also violated the law by cancelling his services without a hearing pursuant to N.C. Gen.§ 47C-3-107.1. This violation continues and should be part of the Court's order granting summary judgment on liability.

In the *Response in Opposition*, in the footnote on p. 6, the Defendant states:

> Plaintiff further asserts that "The Declaration orders that responsibility for repair of limited common elements shall be and remain with the Association." (Pl. Brief [Doc. # 38], at 5). However, this language (e.g. "orders" "shall be" and "remain" with the Association) is not used in the Declaration.

*Id*. First, Mr. Rose does not imply that the word "order" is in the declaration. However, the other phrases *are* in the Declaration:

> The cleanliness and orderliness of the Limited Common Areas and Facilities shall be the responsibility of the individual Unit Owner, but the responsibility for maintenance, painting, repair and replacement thereof, together with control over the exterior decoration of same, **shall be and remain** with the Association, but each Unit Owner shall be responsible for repair and maintenance of that Unit's HVAC unit.

*Declaration of Condominium*, p. 3-4, ¶ 6 (emphasis supplied). (Exhibit A). It is unclear why this was raised by the Defendants, but the language is there, and it proves up Mr. Rose's argument definitively. In fact, it may be the most important point in the analysis. What else could it possibly mean that the responsibility for repairs remains with Presque? The responsibility remains with Presque until the repairs are done and Mr. Rose is not responsible for the repairs because responsibility does not transfer to him. If he is not responsible, he does not have to pay. This is just common sense.

The Defendants' explanation of the Bylaws is equally confused. Presque quotes the Bylaws, Article VI, § 5:

> <u>Maintenance and Repair</u>. All maintenance and repair to any unit, structural or nonstructural, ordinary or extraordinary, and maintenance of and repairs and

3

replacements to the common areas and facilities contained therein shall be made by the Board and charged to all Unit Owners as a common expense.

*Response in Opposition*, p. 4. But this supports the idea that Mr. Rose should not be individually charged for the repair, but that the cost should be spread among the Association as a common expense. Certainly, the Bylaws demand maintenance of the common areas, and they allow levying assessments for common area maintenance. But *all* assessments must be allowed under *all* of the Governing Documents together. The Bylaws, as cited by the Defendants, cover common expenses, not what the Defendants are attempting to assess against Mr. Rose. Presque wants to ignore that the Declaration and the Statute controls the Bylaws, though the Defendants have admitted this in deposition, as demonstrated in Mr. Rose's Motion for Summary Judgment.

Presque questions the example in the Motion for Summary Judgment Memorandum. If a party that has a *responsibility* for an act does not have to pay as part of that responsibility, then the allocations of responsibility make no sense. And nowhere in any Governing Document does it say that this distinction exists.

Presque also does not understand the role of the § 30(b)(6) witness:

> Within the Brief, Plaintiff also quoted Staci Green, the 30(b)(6) representative of CAM, Presque Defendants' Property Management Company, wherein she was asked for her "opinion" despite her not being designated as an expert witness in violation of FRE 701. Regardless, Ms. Green "opined" that "responsibility [for repairs] and payment [for repairs] are two different things" and Presque Defendants had the authority to bill the owners.

*Response in Opposition*, p. 8, n. 8. But Presque is incorrect. "Moreover, the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996). *See, e.g., Kendall v. United Air Lines, Inc.*, 9 F.R.D. 702 (S.D.N.Y.1949). *See also, 4 J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice* ¶ 26.56[3], at 142–43 (2d ed. 1984). It is unclear

why Presque raises this issue, especially given that the 30(b)(6) witness was asked about this specific matter:

> Q: Now, are you aware that you can give opinions for your company? I can ask you opinion questions, and you can tell the opinion of the company and the way the company thinks about a thing -- about its actions. Do you know that?
> A: Okay.
> Q: I don't know if that's an answer. Does that mean, yes, you understand that or no?
> A: Yes.

*Deposition of Stacy Green*, 10:17-25. (Exhibit B). There was no objection from any Defense counsel. But again, Presque makes it clear that it thinks that responsibility for the repairs and paying for the repairs are different, despite what the law and common sense tells anyone and despite this idea conflicting with every other part of the Governing Documents that designate responsibility.

## ADVICE OF COUNSEL

Presque throws its attorney under the bus with this defense, but it does not work. First, this defense does not often apply to civil law. The cases cited by Presque are all criminal cases. The defenses for a crime are vastly different from the defenses of a tort or a collection law claim because of the Constitutional protections involved.

Moreover, this issue was never raised until the end of discovery, and Mr. Rose has been limited in his ability to get information because of this. During the Presque deposition on February 16, 2023, Presque relied on confidentiality and instructed the deponent not to answer, but during the BHS deposition the next day, that confidentiality was waived. Still the Defendants did not respond with complete open candor at deposition. Every example given by Presque where the 30(b)(6) deponent mentions counsel's advice, she was giving a reason for not answering the question at hand. Mr. Rose has been hamstrung by this defense and Presque never supplemented the Deponent's answers after waiving privilege.

5

But most importantly, Presque cannot meet the requirements of an advice of counsel defense:

> To establish an advice-of-counsel defense, Defendants "must show the (a) full disclosure of all pertinent facts to counsel, and (b) good faith reliance on counsel's advice." *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 381 (4th Cir. 2015) (internal quotation marks and alterations omitted). Unwritten but understood is the assumption that counsel's advice will have in some way related to the underlying actions or activities at issue. Here, Defendant's attorney provided no such advice.

*United States v. Berkeley Heartlab, Inc.*, 225 F. Supp. 3d 460, 468 (D.S.C. 2016). Presque provided no such disclosure or demonstration of reliance, so the advice of counsel defense attempted by Presque was not properly developed. Consider the more complete transcript:

> Q: Well, I'm asking what your opinion is. Do you think that being responsible for the repair of the deck would mean that you don't pay for it?
> A: Well, that's when we rely on advice of counsel.
> Q: So did counsel tell you that it was not your duty to pay for it?
> A: Well, it's ---
> MR. RACINE:· Objection.
> THE WITNESS:· It's indicated in the chart.

*Deposition of Stacy Green*, 29:6-15. (Exhibit C). The Deponent refused to share the information needed to establish an advice of counsel defense.

> Q: (Mr. Perry) Well, we're talking about the Declaration. Would you say that the Declaration controls over that chart?
> A: The chart is a summary of the language in the Declaration and state statute.
> Q: But if there was a conflict between that chart and the Declaration, which would control?
> MS. BARANYAI: Going to object. You're asking for a legal conclusion here.
> Q: (Mr. Perry)· Which would you follow?
> A: Well, if we're not sure, then we rely on the advice of counsel.
> Q: Did you ask counsel about this?
> A: Yes.
> Q: And what did counsel tell you?
> MR. RACINE: Objection.
> MR. PERRY: You can answer.
> MS. BARANYAI: I would say that one's privileged communication between attorney/client.
> MR. PERRY: Sure. Okay. I think that when she says that she relied on advice of counsel, I think she's waiving privilege on that. But -- so we'll ask for a supplement later if we work that out.
> MS. BARANYAI: Sounds good. Thank you.

*Id.*, 29:17-30:19. (Exhibit C). No supplement was ever provided. The deponent did not say if she was unsure (which is the condition that would trigger counsel's advice), nor what counsel advised her, nor why she relied on counsel's advice. So there is nothing that supports an advice of counsel defense.

Mr. Ganley's testimony is equally unavailing of this defense. Notice the more complete transcript and what Presque left out:

> Q: So with that understanding, did you advise Presque that the debt was valid and could be collected?
> A: I do not believe I received the question from Presque in that exact manner, whether it was valid and could be collected. My standard response, when I was asked whether the amounts could be added to the ledger, is that there's ambiguities both ways. That it could be collected -- a judge could find it collectible. A judge could also find it not collectible. But there is a colorable argument that, yes, number one, it is a valid debt. And there is a colorable argument that, yes, it can be collected in a like manner as an assessment.

*Deposition of Michael Ganley*, 12:23-13:10. (Exhibit D). Presque's attorney clearly states that he was not asked if the debt was valid and collectible. Then he basically said it was up to Presque to decide. It is entirely unreasonable to rely on this non-advice and claim reliance on advice of counsel to defend their violations of the law. Presque then presents the following testimony:

> Q: Thank you. Did CAM or Presque have the authority to do that?
> A: I -- my argument would be yes. I mean, there is a colorable argument that they have that authority.

*Id.*, 25:16-19. (Exhibit E). That was a hypothetical response given at the deposition; that was not advice that was previously presented to Presque, so Presque could not have relied on it. More than that, it is completely ambiguous, as was the next testimony:

> Q: Okay. Did you advise Mr. -- did you advise Presque that Mr. Rose would have to pay for the repairs?
> A: It's -- what I'd advise Presque is that there's an ambiguity in the Declaration…

*Id*., 40:20-24. (Exhibit F). This is also hypothetical conjecture, not past advice when he was asked specifically what advice he gave to Presque on this issue. Mr. Ganley even tells Presque the answer is ambiguous. Even if this were past advice (which it is not), this certainly does not tell Presque that they were free and clear to assess this debt or later collect it. And nowhere is there any advice by counsel to cut off Mr. Rose's services, so there is no advice of counsel defense for that unlawful act. And finally, Mr. Ganley's more complete testimony shows that even he admits that he did not advise Presque how to proceed, despite his attorney's attempt to stop him from answering:

> Q: I just have one redirect. Did Presque follow your advice in this case?
> MR. RACINE: Objection.
> MR. PERRY: They waived privilege. I don't know if that's a privilege objection or what the objection is.
> MR. RACINE: I mean, over the years, he must have given a lot of advice. I think you maybe need to narrow ---
> MR. PERRY: Are you answering for him?
> MR. RACINE: No, but you asked about my objection, so.
> Q: (Mr. Perry) All right. So let me ask you this: did Presque follow your advice on whether or not to collect this debt?
> A: Well, I mean, what I did is I provided the options to them where for -- that there is a colorable argument that these amounts can be assessed to Mr. Rose, but there is a risk with that and there could be potential liability down the line. So, it was less about following a directive. I'll put it like this: **<u>I did not provide a directive.</u>** There wasn't an option there that was provided along with certain color as to potential benefits and consequence of that option.

*Id*., 73:10-74:8. (Exhibit G). If there was no directive, there was no advice and Presque has no advice of counsel defense. Moreover, none of the statutes at play allow for this defense in the statute.

**DEBT COLLECTION AUTHORITY**

First, any authority granted by the Governing Documents and related laws can only allow for the collection of valid debts. It is beyond the pale of reason that Presque or BHS could collect a debt that was not valid. This is a baffling defense. Mr. Rose does not argue that those documents

8

and laws do not give authority to collect a valid debt, but they do not allow the collection of an invalid debt, because an invalid debt does not exist. In fact, the statutes speak directly against this.

As for evidence for the Court to consider, there are scores of document exhibits and testimony from the witnesses before the Court on this motion. But, contrary to its position, Presque then begins to discuss the evidence that this Court will consider. At one point Presque deflects liability with this rejoinder:

> Regardless, the letters simply notify Plaintiff of his outstanding debt, Defendants' position in relation to the Governing Documents and Statutes, and that a lien and foreclosure may be instituted for continued non-payment. (See Ex. 4, 5). Certainly, such standard, boilerplate language could hardly be construed as a threat of any kind.

*Response in Opposition to Motion*, p. 14. To explain: telling a person that he will lose his home to foreclosure is the type of threat that makes the debtor afraid that he will lose his home. That seems to be a significant threat in any reasonable person's view. Calling it "boilerplate" does not remove its effect on the debtor who reads it, nor the Defendants' liability for making the threat. The threat of foreclosure was the entire purpose of the letter.

**WHEREFORE,** the Plaintiff respectfully moves this Court to enter an order granting Summary Judgment to the Plaintiff as requested in the Motion for Summary Judgment and such other and further relief as may be necessary, just, and proper.

**TODAY** is May 18, 2023.

                                **COLLUM & PERRY**

By:    */s/ M. Shane Perry*
         Attorney for Plaintiffs
         NC Bar No. 35498
         109 W. Statesville Ave.
         Mooresville, NC 28115
         Telephone: 704-663-4187
         Fax: 704-663-4178
         shane@collumperry.com

## CERTIFICATE OF WORD COUNT

Pursuant to LR 7.3(d), this brief does not exceed 3,125 words.

**TODAY** is May 18, 2023.

                         **COLLUM & PERRY**

By:    */s/ M. Shane Perry*
           Attorney for Plaintiffs
           NC Bar No. 35498
           109 W. Statesville Ave.
           Mooresville, NC 28115
           Telephone: 704-663-4187
           Fax: 704-663-4178
           shane@collumperry.com

| | |
|---|---|
| **HAYDEN SCOTT ROSE,**<br><br>                              **Plaintiff**<br><br>v.<br><br>**PRESQUE ISLE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, Inc.,** *et al.*,<br><br>                              **Defendants** | **BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically via CM/ECF with the United States District Court, Middle District of North Carolina, with notification being sent electronically to all counsel of record.

**TODAY** is May 18, 2023.

                                              **COLLUM & PERRY**

                    By:    */s/ M. Shane Perry*
                              Attorney for Plaintiffs
                              NC Bar No. 35498
                              109 W. Statesville Ave.
                              Mooresville, NC 28115
                              Telephone: 704-663-4187
                              Fax:  704-663-4178
                              shane@collumperry.com